

A/R

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GENE C. BENCKINI<br>T/A BENCKINI NURSERIES<br><br>             PLAINTIFF:<br>VS.<br><br>UPPERSAUCON TOWNSHIP,et,al.<br>COOPERSBURG BOROUGH,ET,AL.<br>POLICE OFFICERS: # AND DETECTIVE<br>BRIAN HAWK        (LEROY OSWALD)<br>STEPHEN KUEBLER  # DANIEL TREXLER<br>AMEY GETZ        # DEPUTY DA.<br>EDWARD HARTMAN   AMANDA LOVETT<br>THOMAS J. NICOLETTI CHARLES WYCKOFF<br>DANIEL STONEHOUSE, JASON LEIDECKER & K-9 GRIM.<br>                   BORO.MANAGER.<br>ROBERT COYLE CHIEF<br>BRIAN MC LAUGHLIN    DEFENDANTS:<br>WILLIAM C. NAHRGANG       COMPLAINT | CIVIL ACTION<br><br>JURY TRIAL DEMANDED<br><br>07-CV-3580<br><br>FILED<br>AUG 2 8 2007<br>MICHAEL E. KUNZ, Clerk<br>By_____Dep. Clerk |

DETECTIVES, ANDY MEDELLIN &
     SCOTT PARRY

(1) THE PLAINTIFF, GENE C. BENCKINI IS AN ADULT INDIVIDUAL RESIDING AT 612 LOCUST ST., COOPERSBURG,PA. 18036, OF LEHIGH COUNTY PENNSYLVANIA, TRADING AS BENCKINI NURSERIES.

(2) THE DEFENDANTS, ARE ADULT EMPLOYEES OF UPPERSAUCON TOWNSHIP, MUNICIPALITY WITH AN ADDRESS OF 5500 CAMPMEETING RD.,CENTER VALLEY,PA. 18034, LEHIGH COUNTY, PENNSYLVANIA, WHO AT ALL TIMES RELEVANT TIMES WERE ACTING WITHIN THE SCOPE OF UPPER SAUCON TOWNSHIP AS EMPLOYEES.

(3) THE DEFENDANTS, ARE ADULT EMPLOYEES OF THE LEHIGH COUNTY DISTRICT ATTORNEY'S OFFICE LOCATED AT THE LEHIGH COUNTY COURT HOUSE 455 HAMILTON ST.,ALLENTOWN, PA. 18101, WHO AT ALL TIMES THAT WERE RELEVANT TO THE ACTS WERE WITHIN THE SCOPE OF EMPLOYMENT.

AUG 28 2007

(4) THE DEFENDANTS, ARE ADULT EMPLOYEES OF THE COOPERSBURG BOROUGH A MUNICIPALITY WITH AN ADDRESS OF 5 NORTH MAIN ST., COOPERSBURG,PA.18036, LEHIGH COUNTY, WHO AT ALL TIMES RELEVANT WERE ACTING IN THE SCOPE OF OF THEIR EMPLOYMENT.

THIS HONORABLE COURT HAS JURISDICTION OVER THIS MATTER PURSUANT TO,28 USA.,1343,42,1983 AND THE FOURTH AND THE FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

(5) THE ALLEGATIONS OF PARAGRAPHS (1) THROUGH (4) INCLUSIVE ARE INCORPORATED HEREIN AS IF FULLY SET FORTH AT LENGTH.

(6) UNDER RULE 2302 OF FEDERAL AND STATE CONSTITUTIONS A PERSON IS PROTECTED AS A (WHISTLE BLOWER ) INVOLVING THE VIOLATIONS OF THE DEPARTMENT OF ENVIRONMENTAL PROTECTION AND VIOLATIONS OF CONTAMINATING THE FRESH WATERWAYS OF LEHIGH COUNTY.

(7) THE UPPER SAUCON TOWNSHIP AND COOPERSBURG BOROUGH HAS FOR (26) YEAR HISTORY OF MALICE, MALICIOUS SLANDER AND ABUSE OF ILLEGAL AND BOGUS CRIMINAL CHARGES AND ARRESTS AGAINST THE PLAINTIFF FOR BLOWING THE WHISTLE ON THEIR ILLEGAL MALFUNCTIONING AND ILLEGALLY DISCHARGING CONTAMINATED SEWAGE SLUDGE UNTO THE PLAINTIFF'S BUSINESS ADJACENT TO THE TREATMENT PLANT ON PRESTON LANE, CENTER VALLEY,PA. 18034, AND POLLUTING THE SAUCON CREEK KILLING FISH AND TURTLES.

(8) AFTER THE MAY 20,1980 OFFICAL COMPLAINT BY THE PLAINTIFF TO MR.LEE OBERDICK, HEAD OF THE PENNSYLVANIA DEPARTMENT OF THE ENVIRONMENTAL PROTECTION IN HARRISBURG,PA. THAT EVENTUALLY FORCED THE UPPER SAUCON TOWNSHIP SEWAGE TREATMENT PLANT TO CLOSE DUE TO THE MANY POLLUTION VIOLATIONS AND ILLEGALLY DISCHARGING UNTO THE PLAINTIFF'S BUSINESS PROPERTY AND INTO FRESH WATER OF SAUCON CREEK  FISHERY.

(9) DURING AND AFTER THE OFFICAL CLOSING OF THE TREATMENT PLANT THE UPPER SAUCON TOWNSHIP AND COOPERSBURG BOROUGH OFFICALS THREATENED THE PLAINTIFF NOT TO MAKE TROUBLE OR THEY WILL SHUT HIM DOWN, THE PLAINTIFF OUT OF FEAR FOR HIS FAMILY BUSINESS AND FUTURE INCOME FOR HIS (5) CHILDREN, THE PLAINTIFF TRYED VERY HARD TO WORK WITH AND PLEAD WITH THE TOWNSHIP TO COME OVER TO THE PLAINTIFF'S PROPERTY AND HELP CLEAN UP THE ILLEGAL DISCHARGES UNTO THE PLAINTIFF'S PROPERTY WHICH WAS BAD FOR BUSINESS, IT STINKED OF AMMONIA AND GENERAL STENCH.

THE PLAINTIFF'S PLEADS WERE ON BLIND EYES AND DEAF EARS, INSTEAD THE TOWNSHIP AND COOPERSBURG BOROUGH,

(10) THE DEFENDANTS RETAILIATORY ACTIONS AGAINST THE PLAINTIFF AND HIS BUSINESS FOR (BLOWING THE WHISTLE) OF THEIR SEWAGE PLANT VIOLATIONS AND POLLUTION OF FRESH WATER STREAMS.

THE CLOSING OF THE UPPER SAUCON TOWNSHIP AND COOPERSBURG BOROUGH CAUSED DAMAGES TO THE PLAINTIFF'S PROPERTY AND HIS BUSINESS INCOME. THE DEFENDANTS RETALIATED BY FILLING THE SEWAGE LINE RUNNING ACROSS THE PLAINTIFF'S PROPERTY WITH CONCRETE TO PREVENT HIS HOOKUP TO THE SEWAGE LINE. AND THEN EXCAVATING SWALES DIRECTED TO THE PLAINTIFF'S BUSINESS PROPERTY AND CUTTING OF AN UPPER STREAM OF WATER AND DIRECTED THE FLOW OF WATER TO THE PLAINTIFF'S PROPERTY WHICH AT TIMES IN HEAVY RAIN FALL IS (2/3' DEEP) WASHING OUT THOUSANDS OF CONTAINIZED NURSERY STOCK AND IRRIGATION LINES, FLOODING OF PLAINTIFF'S WORK SHOP AND OFFICE DAMAGING LANDSCAPE MATERIAL.

The court held that abuse of process will support a claim under § 1983 in Cook v. Sheldon.[3]

## § 2:16 Retaliatory prosecution

Retaliatory prosecutions may be subject to remedy under § 1983. In order to establish a prima facie case of First Amendment retaliation, a plaintiff must demonstrate that (1) the plaintiff's conduct was constitutionally protected; and (2) the plaintiff's conduct was a "substantial factor" or "motivating factor" in the defendant's challenged actions.[1] Where an officer attempts to punish a person for the exercise of First Amendment rights by filing a criminal charge against him, there is a potential cause of action under the Fourth and First Amendments.[2]

In *Hartman v. Moore*,[3] the Supreme Court held that a plaintiff in a retaliatory prosecution claim must plead and prove the absence of probable cause for the prosecution in order to have a cause of action. Justice Souter's opinion for the Court argued that it is difficult to prove that retaliatory animus caused a criminal charge to be brought, because the charge is actually filed by a prosecutor, not the officer who is alleged to be engaged in retaliation. The absence of any probable cause may help prove the link between the retaliatory animus of the officer and the filing of the charge by the prosecutor, and so the Court held it is a required element of a prima facie case. Justice Souter reached this conclusion even though he acknowledged that the presence or absence of probable cause is actually not dispositive of whether a prosecution was initiated for the purpose of retaliation. He

---

an abuse of process, where officers actually sought to have plaintiff convicted of criminal charges).

[2]Jennings v. Shuman, 567 F.2d 1213, 1219 (3d Cir. 1977).

[3]Cook v. Sheldon, 41 F.3d 73 (2d Cir. 1994).

[Section 2:16]

[1]Abrams v. Walker, 307 F.3d 650, 654 (7th Cir. 2002) (abrogated on other grounds by, Spiegla v. Hull, 371 F.3d 928, 21 I.E.R. Cas. (BNA) 577, 150 Lab Cas. (CCH) P 59878 (7th Cir. 2004)), citing Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 471, 1 I.E.R. Cas

PAGE ( 5 )

( PLEASE BEAR WITH ME HERE)

(12) ON SEPTEMBER 3,1999, The PLAINTIFF GENE C. BENCKINI WAS A WITNESS IN COOPERSBURG,PA. TO A HOMICIDE HIT & RUN ACCIDENT ON RT.#309, THE PLAINTIFF PURSUED THE RUN AWAY DARK BLUE PICKUP TRUCK HEADING NORTH ON RT# 309, AS THE TRUCK RAN A RED LIGHT PASSING OTHER VEHICLES ON THE SHOULDER AND DRIVING OVER THE CONCRETE CURB AT AROUND 8:30 P.M. LEAVING TIRE MARKS THE PLAINTIFF QUICKLY WROTE DOWN THE REGISTRATION PLATE NUMBER.

ON SEPT,4,1999 PLAINTIFF DROVE TO THE COOPERSBURG POLICE DEPARTMENT TO MAKE A STATEMENT CONCERNING THE SEPT.3,1999 HIT AND RUN ACCIDENT, PATRICA BRESZNE HAND THE PLAINTIFF A POLICE VOLUNTARY STATEMENT TO WRITE OUT, AT THAT POINT THE OFFICER DANIEL TREXLER INTRODUCDED HIMSELF AND ASKED IF THE PLAINTIFF GOT A GOOD DESCRIPTION OF THE HIT AND RUN VEHICLE ,THE PLAINTIFF PROVIDED A REGISTRATION PLATE NUMBER AND A LIST OF TRUCK MAKE MODEL, COLOR TYPE, THE OFFICER REQUESTED THE PLAINTIFF TO FINISH WRITING OUT THE VOLUNTARY STATEMENT AND GAVE THE PLAINTIFF A COPY OF THAT ORIGINAL STATEMENT.

ON AROUND SEPT.15,1999 THE PLAINTIFF RETURNED TO THE POLICE DEPARTMENT TO QUESTION OFFICER TREXLER ABOUT THE STATEMENT AND THE HIT & RUN ACCIDENT, OFFICER TREXLER INFORMED THE PLAINTIFF THAT THE REGISTRATION PLATE NUMBER THAT HE HAD PROVIDED WAS WRONG BECAUSE, THE OFFICER CHECKED THE DEPART--MENT OF TRANSPORTATION AND THAT AS OFFICER TREXLER STATED HE HAD DID A PLATE NUMBER SEARCH AND THAT THERE WAS NO RECORD OF THAT PLATE NUMBER IN HARRISBURG TRANSPORTATION DEPARTMENT OFFICER TREXLER FALSIFIED THAT INFORMATION TO PROTECT A CLOSE FRIEND OF HIS A GIRL HE DATED BY THE NAME OF HEATHER BERGER OF COOPERSBURG,PA..

ON AROUND SEPT,15,2004 THE PLAINTIFF FILED AN APPLICATION FOR REGISTRATION IDENIFICATION OF PLATE NUMBER(PA.PZ111H) AT TOM'S AUTO TAG SERVICE IN ALLENTOWN,PA.AND PAID A FEE FOR THE IDENIFICATION OF THAT REGISTRATION PLATE IN HARRIS--BURG TRANSPORTATION DEPARTMENT.

(13) ON OCTOBER, 6,2004 THE PLAINTIFF RECEIVED A CERTIFIED COPY OF THE AUTHENTIC IDENTIFICATION OF THE HOMICIDE HIT AND RUN VEHICLE REGISTRATION PLATE NUMBER ( PA.PZ111H ) BELONGING TO HEATHER LLOYD, 355 NEMETH RD., COOPERSBURG, PA. 18036. WHO JUST HAPPENED TO BE POLICE CHIEF DANIEL TREXLER'S EXGIRL--FRIEND, WHO THE PLAINTIFF SEEN TOGETHER MANY TIMES AT THE DRIFTWOOD DINNER IN COOPERSBURG,PA.

POLICE OFFICER DANIEL TREXLER AND HEATHER LLOYD WERE AFRAID THAT THE PLAINTIFF, GENE C. BENCKINI AS THE ONLY EYE WITNESS TO THE SEPT,3,1999 HOMICIDE HIT AND RUN ACCIDENT AND ONLY THE ONE WHO COULD EXPOSE THEM TO PROSECUTION. THEY BOTH FORMED A CONSPIRACY TO GET RID OF THE PLAINTIFF STARTING ON OCT,20,1999 ON THROUGH MAR.8,2000, MAR.9,2000, JUNE 15,2001,SEPT,27,200 AND OCT. 12,2001, ALL THESE BOGUS CHARGES WERE MANIFESTED BY POLICE CHIEF DANIEL TREXLER OF THE COOPERSBURG POLICE DEPARTMENT, TREXLER CREATED THIS EGOTISTICAL AND MENTAL AIR ABOUT HIMSELF AND THOUGHT HE WAS ABOVE THE LAWS OF THE COMM--WEALTH OF PENNSYLVANIA AND RULER OF COOPERSBURG,PA. POLICE CHIEF DANIEL TREXLER DESTROYED THE ORIGINAL VOLUNTARY STATE-MENT THAT THE PLAINTIFF PROVIDED TO HIM ON SEPT,4,1999 SO THERE WOULD BE NO EVIDENCE TO PROSECUTE HIM OR HEATHER LLOYD.

(14) ON MARCH 16,2006 THE PLAINTIFF KNEW SINCE THE HOMICIDE HIT AND RUN ACCIDENT WAS NEVER SOLVED AND NEVER WOULD BE UNLESS THE PLAINTIFF FORCED THE HAND OF POLICE CHIEF DANIEL TREXLER SO THE PLAINTIFF WAITED UNTILL AROUND 6;30P.M. ON MARCH 16,- 2006 AND CALLED 911 EMERGENCY IN LEHIGH COUNTY TO REPORT AGAIN THE COLD CASE HOMICIDE HIT AND RUN ACCIDENT, THE LEHIGH COUNTY 911 DISPATCH INTURN CALLED THE COOPERSBURG POLICE DEPARTMENT TO INVESTIGATE THE CASE. POLICE OFFICER WILLIAM C. NAHRGANG RESPONDED TO THE PLAINTIFF'S HOME AT 612 LOCUST STREET, COOPERSBURG,PA. THE PLAINTIFF HAD WRITTEN OUT A SECOND ORIGINAL VOLUNTARY STATEMENT LISTING POLICE OFFICER DANIEL TREXLER AGAIN AND ON THE BOTTOM WROTE THE OFFICER WILLIAM C. NAHRGANG TO LOCK IN THE MARCH 16,2006 DATE AND THE PLAINTIFF EXPLAINED THE CHAIN OF EVENTS THAT TOOK PLACE ON SEPT,3,1999 AND SEPT,4,1999, THE PLAINTIFF ALSO HANDED OFFICER NAHRGANG (3) OTHER DOCUMENTS     A COPY OF THE COPY OF A BUILDERS CHECK THAT THE PLAINTIFF

HAD QUICKLY WRITTEN DOWN THE LICENSE PLATE NUMBER WHILE CHASING THE SEPT,3,1999 HIT AND RUN DRIVER (2) SECOND DOCUMENT WAS A PHOTO--GRAPH OF THE CONCRETE CURB WITH BLCK TIRE MARKS WHERE THE HIT & RUN PICKUP TRUCK DROVE OVER WHILE RUNNING THE RED LIGHT, (3) THIRD THE COPY OF THE CERTIFIED REGISTRATION PLATE NUMBER AND OWNER ON THE PENNSYLVANIA DEPARTMENT OF TRANSPORTATION IN HARRISBURG,PA. ALL THIS INFORMATION WAS PRESENTED TO OFFICER WILLIAM C. NAHRGANG AND THE PLAINTIFF DEMANDED THAT THE OFFICER INVESTIGATE THE ACCIDENT AND BY THE LAWS OF THE COMMONWEALTH OF PENNSYLVANIA PROSECUTE THE REAL DRIVER.

(15) NOW ON MAY 9,2006 ALMOST (2) MONTHS AFTER THE PLAINTIFF FILED A SECOND ORIGINAL VOLUNTARY STATEMENT WITH OFFICER NAHRGANG OF THE UNSOLVED HOMICIDE HIT AND RUN ACCIDENT. THE PLAINTIFF KNEW THAT POLICE CHIEF DANIEL TREXLER AND OFFICER NAHRAGANG WERE SQUIRMING WITH QUALM IN THEIR SEATS TRYING TO FIGURE OUT HOW THEY WERE GOING TO GET AROUND THIS PROBLEM AND DEAL WITH IT. SO ON MAY 9,2006 AFTER THEY HAD NO CHOICE BUT TO FORM A CONSPIRACY WITH THE LEHIGH COUNTY DISTRICT ATTORNEY JAMES B. MARTIN AND LEHIGH COUNTY DETECTIVE LEROY OSWALD AND MANUFACTURE EVIDENCE ALONG WITH THE PERJURED TESTIMONY ,FORGED DOCUMENTS IN ORDER TO GET RID OF THIS GENE C. BENCKINI THIS PLAINTIFF SO THE COOPERSBURG POLICE DEPARTMENT AND OFFICERS TREXLER AND NAHRGANG WOULD BE SAFE AND SOUND FROM THIS PLAINTIFF, AFTER ALL WHO DOES THIS PLAINTIFF THINK HE IS INTERFERING WITH POLICE CORRUPTION IN THE FIRST PLACE THE GROUP OF CONSPIRATORS PLANNED A SCHEME TO NOT ONLY SUPPRESSING EXCULPATORY EVIDENCE AND MANUFACTURE DOCUMENTS AND WITH POLICE CHIEF TREXLER AND OFFICER NAHRGANG OFFERING PERJURED TESTIMONY AT THE PRELIMINARY HEARING AND THE JURY TRIAL UNDER OATH THE PLAINTIFF WAS WALKING INTO A TRAP WHERE HE WOULD DEPRIVED OF HIS CONSTITUTIONAL RIGHTS AND DUE PROCESS OF LAW ALONG WITH HIS LIBERTY.

(16) ON MAY 9,2006 OFFICER WILLIAM C. NAHRGANG FOLLOWED THE PLAINTIFF AFTER HE DROVE AWAY FROM HIS HOME IN COOPERSBURG,PA. OFFICER NAHR--GANG HAD A RESON NOT TO ARREST THE PLAINTIFF AT HIS HOME, BECAUSE OFFICER WANTED TO SEARCH THE PLAINTIFF'S VEHICLE. THE PLAINTIFF DROVE INTO THE SHELL SERVICE CENTER IN COOPERSBURG AND OFFICER NAHRGANG PULLED IN FRONT OF THE PLAINTIFF BLOCKING HIM FROM DRIVING OFF,

PAGE ( 8 )

OFFICER NAHRGANG NEVER READ THE PLAINTIFF HIS RIGHTS BEFORE ARRESTING HIM, THE TOW TRUCK WAS ALREADY THERE TO HAUL THE PLAINTIFF'S VEHICLE AWAY, THE PLAINTIFF'S VEHICLE WAS RAN SACKED AND RIPPED APART WITHOUT A SEARCH WARRANT, THEY FOUND NO DRUGS OBSCENE PHOTO-GRAPHS. OFFICER NAHRGANG PLACE THE PLAINTIFF UNDER ARREST AND DROVE THE PLAINTIFF TO THE DISTRICT JUSTICE AND PLACED ON $20,000.00 BAIL.

(17) THE DISTRICT ATTORNEY JAMES B. MARTIN CHARGED THE PLAINTIFF WITH UNSWORN FALSIFICATION TO AUTHORTIES, 4904, AND FALSE SWEARING 4903. THE THE DISTRICT ATTORNEY MARTIN AND PROSECUTOR AMANDA LOVETT ALONG WITH POLICE CHIEF DANIEL TREXLER AND OFFICER NAHRGANG NOT ONLY MANUFACTURED EVIDENCE AND FALSIFIED CHARGES AND ALSO NOT PROVIDING THE PLAINTIFF WITH A COPY OF THE ORIGINAL VOLUNTARY STATEMENT OF MARCH 16,2006 UNDER RULE #573 OF DISCLOSURE AND DUE PROCESS OF LAW. THE CHARGES CLEARLY STATE THAT THE PLAINTIFF HAD PRESENTED THE OFFICER NAHRGANG WITH A COPY OF THE ORIGINAL OF THE FIRST VOLUNTARY STATEMENT. THIS IN IT SELF IS TOTALLY FALSE BECAUSE THE ORIGINAL VOLUNTARY STATEMENT OF MARCH 16,2006 WAS REFILED ON

ON MARCH 16,2006 AGAIN BECAUSE THE CASE WAS NEVER SOLVED AND SINCE THERE IS NO STATUTE OF LIMITATIONS ON HOMICIDE. DEPUTY DA. WEINTRAUB PRESENTED THE SECOND ORIGINAL VOLUNTARY STATEMENT OF MARCH 16,2006 AT THE PRELIMINARY HEARING, BUT THE PLAINTIFF NEVER SEEN IT AGAIN BOTH CHARGES IN CASE NO.CP-39-CR-2240/06 WERE TOTALLY FALSIFIED BY THE GROUP OF CONSPIRATORS TO PROTECT THE POLICE OFFICERS OF THE CRIMINAL COVERUP ON SEPT,3,1999 HIT AND RUN ACCIDENT.

( 18)  POLICE OFFICER WILLIAM C. NAHRGANG HAD NO PROBABLE CAUSE TO ARREST THE PLAINTIFF, OFFICER NAHRGANG CLEARLY STATED IN HIS PROBABLE CAUSE FOR ARREST THAT THE PLAINTIFF HAD PRESENTED A COPY OF THE FIRST ORIGINAL, THIS IN IT SELF WAS TOTALLY FALSE, BECAUSE THE PLAINTIFF PRESENTED A SECOND ORIGINAL VOLUNTARY STATEMENT AND WROTE THE OFFICERS NAME ON VERY BOTTOM WITH THE MARCH 16,2006 DATE TO LOCK IT IN. WHEN THE PLAINTIFF READ THE CHARGES, HE KNEW THAT POLICE CHIEF DANIEL TREXLER DID IN FACT HAVE IN HIS FILES THE FIRST ORIGINAL VOLUNTARY STATEMENT OF SEPT,4,1999 OR HOW WOULD HE HAVE KNOW

ABOUT THE FIRST ORIGINAL VOLUNTARY STATEMENT AND ALSO DENIED UNDER OATH THAT HE NEVER RECEIVED ANY STATEMENT FROM THE PLAINTIFF ON SEPT,4,1999 OF THE HOMICIDE HIT AND RUN ACCIDENT.

(19) **Illustrative specific violations—Probable cause for arrest**

A police officer may not arrest a person without an arrest warrant unless he has probable cause to believe that a crime has been committed and that the person in question has committed that crime. Probable cause exists if the facts and circumstances known to the officer, and of which he had reasonably trustworthy information, are sufficient to warrant a prudent person in believing that the suspect probably has committed a crime. A mere possibility that the person has committed a crime is not enough. The hunch, guess, conjecture, or surmise of an officer is not enough, and there must be enough actual evidence to reasonably lead to the conclusion that the suspect has committed a crime. If you find that the defendant arrested the plaintiff without probable cause, you must find the defendant liable for a violation of the plaintiff's constitutional rights.[1]

The burden of proof on a claim of false arrest is on the defendant officer to demonstrate that there was probable cause for the arrest and detention. That is to say that since the plaintiff was deprived of her liberty interest, the defendants must justify their

---

[2]Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

[3]Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); Adams v. Williams, 407 U.S. 143, 145-48 (1972); Minnesota v. Dickerson, 508 U.S. 366, 372-76, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993); Smith v. Ohio, 494 U.S. 541, 542, 110 S. Ct. 1288, 108 L. Ed. 2d 464 (1990); Bond v. U.S., 529 U.S. 334, 337, 120 S. Ct. 1462, 146 L. Ed. 2d 365 (2000).

[Section 12:13]

[1]Dunaway v. New York, 442 U.S. 200 (1979); Brown v. Texas, 443 U.S. 47 (1979); Henry v. United States, 361 U.S. 98 (1959); Brinegar v. United States, 338 U.S. 160, 175–76 (1949). See generally §§ 2:3, 2:8.

(19-A) THE ALLEGATIONS OF PARAGRAPHS (6) THROUGH (19) INCLUSIVE ARE INCORPORATED HEREIN AS IF FULLY SET FORTH AT LENGTH.

(20) POLICE OFFICER WILLIAM C. NAHRGANG SWITCHED DOCUMENTS IN ORDER TO AVOID PROSECUTING THE SECOND ORIGINAL VOLUNTARY STATEMENT OF MARCH 16,2006, this IN IT SELF IS DERELICTION OF DUTY AND AIDDING AND ABETTING A CRIMINAL IN A COVERUP.

(OFFICER WILLIAM C. NAHRGANG MANUFACTURED EVIDENCE)

## Manufacturing Evidence

Where a person has been deprived of liberty as a result of false evidence that is manufactured by law enforcement officers, there is a deprivation of liberty without due process of law. "Evidence" refers not only to physical evidence, but also to testimony by witnesses. Mooney v. Holohan, 294 U.S. 103, 112, 55 S. Ct. 340, 79 L. Ed. 791, 98 A.L.R. 406 (1935); Napue v. People of State of Ill., 360 U.S. 264, 269, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959); Miller v. Pate, 386 U.S. 1, 6, 87 S. Ct. 785, 17 L. Ed. 2d 690 (1967); Kingsland v. City Of Miami, 369 F.3d 1210 (11th Cir. 2004), opinion withdrawn and superseded, 2004 WL 1925602 (11th Cir. 2004) and cert. denied, 2004 WL 2068362 (U.S. 2004); Limone v. Condon, 372 F.3d 39 (1st Cir. 2004); Rowe v. City of Fort Lauderdale, 279 F.3d 1271 (11th Cir. 2002); Devereaux v. Abbey, 263 F.3d 1070, 1074-1075 (9th Cir. 2001).

(21) POLICE CHIEF TREXLER AND OFFICER WILLIAM C. NAHRGANG KNEW THAT THE PLAINTIFF WAS INOCENT OF THESE CHARGES, BUT HAD TO ARREST THE PLAINTIFF TO CONCEAL THE TRUTH.

## Suppressing Exculpatory Information

Exculpatory evidence is evidence which tends to suggest the innocence of a person suspected of or charged with a crime. It includes evidence which tends to prove that the defendant did not commit the crime, evidence which suggests that the crime might have been committed by someone else, and evidence which might be used to impeach witnesses who would testify against the person accused. A defendant has a constitutional right in a criminal case to be furnished with material exculpatory evidence in the hands of the prosecution and the police. Exculpatory evidence is "<u>material</u>" when it would undermine confidence in a conclusion that the defendant was guilty of the crime. Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963);

(22) POLICE CHIEF DANIEL TREXLER AND OFFICER WILLIAM C. NAHRGANG FORMED A CONSPIRACY WITH THE OTHER DEFENDANTS FRAME THE PLAINTIFF WITH MANUFACTURED EVIDENCE SUPPRESSING EXCULPATOR EVIDENCE AND BRIBING OR COERCE (2) OF THE PLAINTIFF'S WITNE TO ACTUALLY FORCE THEM TO TESTIFY AGAINST THE PLAINTIFF IN A CRIMINAL CASE AND BOTH COMMIT PERJURY UNDER OATH. CHRIS ENGDAHL SR. AND REBECCA GUILIAN WERE FRIENDS OF THE PLAINTI WHO WROTE OUT AND SIGNED (2) PAGES OF A VOLUNTARY STATEMENT ON FEB.1,2001 AS WITNESSES AGAINST THE POLICE CHIEF DANIEL TREXLER. THE PLAINTIFF WITNESSES THEM LEGITIMATELY WRITE OU AND SIGN THE (2) PAGE VOLUNTARY STATEMENTS.

(23) CHIEF TREXLER AND OFFICER KNEW THEY HAD TO BUILD A CASE AGAINST THE PLAINTIFF.

ON SEPT,28,2005 PRELIMINARY HEARING, CASES NO.3729/2005 & CASE NO. 2240/2006. CHRIS ENGDAHL SR. AND REBECCA GUILIAN TESTIFIED THAT THE FEB.1,2001 VOLUNTARY STATEMENTS WERE ALL FORGERIES IN WRITING AND SIGNATURES AND ALSO STATED THAT TH PLAINTIFF WANTED THEM TO WRITE THE STATEMENTS OUT, BUT REFU TO DO SO. OF COURSE THIS WAS PERJURYED TESTIMONY. BOTH OF THESE (2) PEOPLE, CHRIS ENGDAHL SR. AND REBECCA GUILIAN ALS AGAIN PRESENTED PERJURYED TESTIMONY AT THE DEC.2006 JURY TRIAL. THIS WAS ALL PART OF THE PLAN TO CONVICT THE PLAINTI

(24) ON DEC.15,2006 THE JURY IN CASE 3729/2005 FOUND THE PLAINTI NOT GUILTY ON COUNT # (3) OF FORGERY OF THE CHRIS ENGDAHL SR. AND REBECCA GUILIANS (2) PAGE VOLUNTARY STATEMENTS AND THE JURY NEVER REACHED A VERDICT ON COUNT# (6) WHICH WAS THE SECOND CHARGE ON THE (2) PAGES OF THE STATEMENTS.

THE JURY ON COUNT#6 DIDN'T REACH A VERDICT BECAUSE THAT VOLUNTARY STATEMENT WAS PRESENTED TO A BUCKS COUNTY POLICE OFFICER BRIAN Mc LAUGHLIN NOT A LEHIGH COUNTY POLICE OFFICE THE PROSECUTING OFFICER LEROY OSWALD, A LEHIGH COUNTY DETEC ALSO IN ON THE CONSPIRACY FALSELY CHARGED THE PLAINTIFF IN COUNT #6 TO | FALSELY.

PAGE (12)

STACK THE DECK AGAINST THE PLAINTIFF.

LEHIGH COUNTY DETECTIVE LEROY OSWALD, OSWALD WAS LEAD PROSECUTING OFFICER IN THIS ENTIRE SCHEME AGAINST THE PLAINTIFF.

DETECTIVE LEROY OSWALD ALSO BRIBED AND OR COERCED CHRIS ENGDAHL SR. AND REBECCA GUILIAN INTO COMMITING PERJURY UNDER OATH.

(25) ON SEPT. 28, 2005 PRELIMINARY HEARING CASE NO. 3729/2005 POLICE CHIEF DANIEL TREXLER PRESENTED EXTREMELY FABRICATED STATEMENT UNDER OATH COMMITING PERJURY STATEING THAT THE COOPERSBURG POLICE DEPARTMENT NOTICE PLACED ON THE INSIDE OF LANECO STORE WINDOW ON JUNE 16, 2001, TYPED OUT STATEING REQUESTS FOR WITNESSES TO THE JUNE 15, 2001 INCIDENT IN THE LANECO PARKING LOT AND IT STATES WE HAVE THE CRIMINAL BUT NEED WITNESSES TO CONVICT THAT PERSON, NOW OFFICER TREXLER ALREADY HAD A MOTHER AND DAUGHTER WRITE OUT BOTH VOLUNTARY STATEMENTS AND GIVE THEM TO OFFICER VANESSA CRUZ. BUT TREXLER DIDN'T WANT TO USE THESE STATEMENTS BECAUSE THESE (2) WITNESSES WERE PLAINTIFF'S WITNESSES IN HIS FAVOR, OFFICER TREXLER WAS LOOKING FOR WITNESSES TO HAVE THE PLAINTIFF CONVICTED, SO MUCH THAT HE PREMATURELY STATED IN THE POLICE NOTICE THAT WE HAVE THE CRIMINAL, I'M CONFUSED ISN'T A PERSON INNOCENT UNTILL PROVEN GUILTY, IN THIS CASE 3941/2001 THE PLAINTIFF WAS FOUND NOT GUILTY ON ALL OF THE (3) CHARGES BY A JURY.

NOW AT THIS SEPT, 28, 2001 PRELIMINARY HEARING OFFICER TREXLER FALSELY TESTIFIED THAT THE POLICE NOTICE WAS FORGED THAT WAS PLACED ON THE LANECO WINDOW ON JUNE 16, 2001, HE TESTIFIED THAT ON PAGE (11) LINES 19 THROUGH 25 OF THE TRANSCRIPT, OFFICER TREXLER COMMITS PERJURY BY STATEING THE POLICE NOTICE IS A FORGERY AND NO WHERE DO WE HAVE BUREAU OF POLICE AND AT NO TIME HAVE WE EVER USED THE NATIONAL ASSOCIATION OF CHIEFS OF POLICE, OFFICER TREXLER ALSO STATED THAT OUR LETTERHEADS HAVE MY NAME ON TOP AS POLICE CHIEF AND THE MAYORS NAME, THIS OF COURSE IS NOT TRUE BECAUSE ON JUNE 16, 2001 OFFICER TREXLER WAS NOT POLICE CHIEF, JAMES LAWERENCE WAS POLICE CHIEF AND THELMA KIESS WAS THE MAYOR SO NOW POLICE CHIEF DANIEL TREXLER CHARGED THE PLAINTIFF WITH FORGING THE COOPERSBURG POLICE NOTICE

PAGE (13)

THAT WAS ON THE LANECO STORE WITH (2) CHARGES OF FORGERY AND IMPERSONATE A POLICE OFFICER. NOW THE PLAINTIFF WAS ARRESTED ON JUNE 15,2001 AND BAILED OUT OF PRISON ON JUNE 18,2001 IN THE EVENING HOURS & THE PLAINTIFF SEEN THE POLICE NOTICE ON JUNE 19,2001 WHEN I HAD TAKEN HIS (91) YEAR OLD MOTHER SHOPPING AT THE LANECO STORE AND PHOTOGRAPHED THE POLICE NOTICE WITH HIS 35MM CAMERA. <u>PLEASE REMEMBER THE JUNE 19,2001 PHOTOGRAPH FOR IT WILL SURFACE AGAIN IN A FORGERY CHARGE.</u>

(26) POLICE CHIEF DANIEL TREXLER MANUFACTURED EVIDENCE IN ORDER TO STACK THE DECK AGAINST THE PLAINTIFF AND ALSO CONCEALED EVIDENCE , OFFICER DANIEL TREXLER HAD A MOTIVE, HE WAS AFRAID IF THE COMMUNITY EVER GOT NEWS OF THE SEPT,3,1999 HOMICIDE HIT AND RUN ACCIDENT WHERE A LITTLE BOY WAS KILLED AND COVERED UP BY OFFICER TREXLER, HE WOULD LOOSE HIS POSITION AS POLICE CHIEF AND HATED BY TOWNS PEOPLE.

(27) ON SEPT,28,2005 PRELIMINARY HEARING POLICE OFFICER BRIAN Mc LAUGHLIN OF THE UPPER SAUCON TOWNSHIP POLICE DEPARTMENT ALSO PRESENTED FALSE TESTIMONY OF THE JAN,29,2001 ATTEMPED HOMICIDE AND HIT & RUN ACCIDENT IN BUCKS COUNTY WHERE THE PLAINTIFF WAS ALMOST PUSHED AND SMASHED INTO AN ONCOMING TRACTOR TRAILER, THE DRIVER A FRIEND OF OFFICER Mc LAUGHLIN AND OFFICER DANIEL TREXLER FLED THE SCENE OF THE ATTEMPTED HOMICIDE IN BUCKS COUNTY AND INTO LEHIGH COUNTY (3) MILES NORTH ON RT#309, THIS IS WHERE THE PLAINTIFF'S (2)  OF HIS WITNESSES COME INTO PLAY. TRAVEL LODGE MANAGER CHRIS ENGDAHL SR. AND STEVEN REISS A PAINTING CONTRACTOR WORKING AT THE MOTEL AT THE TIME THE HIT AND RUN DRIVER PULLED INTO THE TEXACO SERVICE CENTER TO CHECK OUT HIS DAMAGED VEHICLE AND OFFICER TREXLER DROVE IN TO CHECK HIS DAMAGED VEHICLE AND ASKED WHY HIS MISSION WAS NOT ACCOMPLISHED ON THE PLAINTIFF( GENE C. BENCKINI) THE INTENDED VICTIM AND ALL THIS TIME THE PLAINTIFF'S (2) WITNESSES WERE STANDING ON THE MOTEL BALCONY WATCHING THE ENTIRE SCENE UNFOLD WHILE THEY WERE HAVING A CIGARETTE AND ON JAN,30,2001 INFORMED THE PLAINTIFF AND FRIENDS OF THE PLAINTIFF LEGITIMATELY WROTE OUT AND SIGNED BOTH VOLUNTARY STATEMENTS IN THE PRESENCE OF THE PLAINTIFF.

PAGE (14)

JAN.29,2001 WITNESS ADMITTED TO THE DETECTIVE OSWALD THAT HE DID WRITE OUT THE VOLUNTARY STATEMENT AND SIGNED IT AS STEVEN REISS AND INFORMED OSWALD THAT CHRIS ENGDAHL SR. ALSO WITNESSED THE EVENT AND DID WRITE OUT A VOLUNTARY STATEMENT, BUT DETECTIVE OSWALD HAD WENT TO CHRIS ENGDAHL SR. AND BRIBED HIM TO DENIE SIGNING THE VOLUNTARY STATEMENT, CLAIMING IT WAS A FORGERY.

NOW ON JAN,30,2001 AS SOON AS THE PLAINTIFF LEARNED THAT HE HAD (2) WITNESSES OF THIS COVERUP HIT AND RUN ACCIDENT. THE PLAINTIFF QUICKLY OBTAINED (2) VOLUNTARY STATEMENTS AND HAD HIS (2) WITNESS WRITE THEM OUT AND GIVE THEM A COPY BEFORE THE OFFICERS DANIEL TREXLER AND BRIAN Mc LAUGHLIN GOT WIND OF THE PLAINTIFF'S WITNESS AND STOPPED THEM BY BRIBING THEM INTO NOT SIGNING ANYTHING AGAINST THEIR CORRUPT ACTS.

ON FEB.3,2001 THE PLAINTIFF WROTE OUT AN ACCIDENT REPORT PROVIDED BY OFFICER BRIAN Mc LAUGHLIN AND ALSO FILED A PERSONAL VOLUNTARY STATEMENT OF THE JAN,29,2001 ACCIDENT ALONG WITH COPIES OF BOTH OF THE PLAINTIFF'S WITNESSES ALONG WITH A CERTIFICATION OF SERVICE AND SENT THEM ALL TO OFFICER Mc LAUGHLIN OF THE SPRINGFIELD POLICE DEPARTMENT INFORMING OF THE (2) WITNESSES AND ALSO PLACED A FOLLOW UP (2) PHONE CALLS TO THE BUCKS COUNTY POLICE STATION TO LOCK IN THE INFORMATION AND DEMANDED OFFICER Mc LAUGHLIN ARREST THE DRIVER STEPHEN J. HUJSA JR. FOR ATTEMPTED HOMICIDE AND FLEEING THE SCENE OF AN ACCIDENT, BUT OFFICER Mc LAUGHLIN NEVER ARRESTED THE DRIVER BECAUSE HE WAS PART OF THE ORIGINAL PLAN TO GET RID OF THE PLAINTIFF IN THE FIRST PLACE.

ON DEC.14,2006 POLICE OFFICER BRIAN Mc LAUGHLIN PRESENTED FALSE TESTIMONY AND COMMITED PERJURY UNDER OATH STATEING THAT HE NEVER RECEIVED AND VOLUNTARY STATEMENTS FROM THE PLAINTIFF AND NEVER DID INTERVIEW CHRIS ENGDAHL SR. OR STEVEN REISS BECAUSE HE DIDN'T HAVE ANY REASON TO, CLAIMING HE KNEW NOTHING OF THE WITNESSES. NOW ON FEB.8,2005 WHEN DETECTIVE OSWALD ILLEGALLY SEARCHED THE PLAINTIFF HOME HE STOLE THE FILE OF PLAINTIFF'S 2001 PHONE BILLS CONNECTING THE TRUE FACTS OF THE VOLUNTARY STATEMENTS ON JAN.29,2001 ATTEMPT ON THE PLAINTIFF'S LIFE. DETECTIVE OSWALD KNEW WELL IN ADVANCE OF THE NEED TO ILLEGALLY STEAL THE PLAINTIFF'S EVIDENCE OF THE PHONE CALLS OF FEB.1/ FEB.3,2001 THAT WOULD CONNECT OFFICER Mc LAUGHLIN TO THE ATTEMPT ON THE PLAINTIFF'S LIFE.

THE DETECTIVE OSWALD STOLE MANY FILES OF THE PLAINTIFF, I SAY STOLE BECAUSE NONE OF THE PLAINTIFF'S FILES WERE EVER LISTED ON THE SEIZED ITEMS. IN ORDER TO COVER FOR OFFICER Mc LAUGHLIN IN THIS JAN,29,2001 ATTEMPT ON THE PLAINTIFF'S LIFE.

(28) UPPER SAUCON TOWNSHIP POLICE OFFICER BRIAN Mc LAUGHLIN MANUFACTURED EVIDENCE AND SUPRESSED EXCULPATORY EVIDENCE AND COMMITED PERJURY WHILE AIDDING AND ABETTING A CRIMINAL.

## Manufacturing Evidence

Where a person has been deprived of liberty as a result of false evidence that is manufactured by law enforcement officers, there is a deprivation of liberty without due process of law. "Evidence" refers not only to physical evidence, but also to testimony by witnesses. Mooney v. Holohan, 294 U.S. 103, 112, 55 S. Ct. 340, 79 L. Ed. 791, 98 A.L.R. 406 (1935); Napue v. People of State of Ill., 360 U.S. 264, 269, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959); Miller v. Pate, 386 U.S. 1, 6, 87 S. Ct. 785, 17 L. Ed. 2d 690 (1967); Kingsland v. City Of Miami, 369 F.3d 1210 (11th Cir. 2004), opinion withdrawn and superseded, 2004 WL 1925602 (11th Cir. 2004) and cert. denied, 2004 WL 2068362 (U.S. 2004); Limone v. Condon, 372 F.3d 39 (1st Cir. 2004); Rowe v. City of Fort Lauderdale, 279 F.3d 1271 (11th Cir. 2002); Devereaux v. Abbey, 263 F.3d 1070, 1074-1075 (9th Cir. 2001).

## Suppressing Exculpatory Information

Exculpatory evidence is evidence which tends to suggest the innocence of a person suspected of or charged with a crime. It includes evidence which tends to prove that the defendant did not commit the crime, evidence which suggests that the crime might have been committed by someone else, and evidence which might be used to impeach witnesses who would testify against the person accused. A defendant has a constitutional right in a criminal case to be furnished with material exculpatory evidence in the hands of the prosecution and the police. Exculpatory evidence is "material" when it would undermine confidence in a conclusion that the defendant was guilty of the crime. Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963); Kyles v. Whitley, 514 U.S. 419, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995).

### Officer's Obligation to Furnish Exculpatory Evidence to Prosecutor

A law enforcement officer is constitutionally required to promptly furnish material exculpatory information in his possession to the prosecutor's office. If you find that an officer knowingly and willfully ignored material exculpatory evidence and failed to promptly furnish it to the prosecutor in the criminal case against the plaintiffs, then you should find that the officer violated the plaintiff's constitutional rights. Newsome v. McCabe, 256 F.3d 747, 753 (7th Cir. 2001); McMillian v. Johnson, 101 F.3d 1363 (11th Cir. 1996); Sanders v. English, 950 F.2d 1152 (5th Cir. 1992) (rejected by, Schneider v. Simonini, 163 N.J. 336, 749 A.2d 336 (2000)); Brady v. Dill, 187 F.3d 104, 114 (1st Cir. 1999); Jones v. City of Chicago, 856 F.2d 985 (7th Cir. 1988).

(29) THE ALLEGATIONS OF PARAGRAPHS (20) THROUGH (28) INCLUSIVE ARE INCORPORATED HEREIN AS IF FULLY SET FORTH AT LENGTH.

(30) POLICE CHIEF DANIEL TREXLER RETALIATED AGAINST THE PLAINTIFF FOR (4) REASONS AND MOTIVES.

  (1) POLICE CHIEF DANIEL TREXLER KNEW THE PLAINTIFF ( BLEW THE WHISTLE) ON THE COOPERSBURG SEWAGE PLANT VIOLATIONS AND WERE FORCED TO CLOSE THE POLLUTED PLANT AND FORCED TO BUILD A NEW $12,500,000.00 SEWAGE TREATMENT PLANT.

  (2) OFFICER DANIEL TREXLERS SEPT,3,1999 HOMICIDE, HIT & RUN COVERUP.

  (3) PLAINTIFF FILED (5) CRIMINAL CHARGES AGAINST POLICE CHIEF DANIEL TREXLER FOR OBSTRUCTION OF JUSTICE,DERELICTION OF DUTY, ADDING AND ABETTING A CRIMINAL,FALSIFING POLICE REPORTS , JAN,29,2001 ATTEMPTED HOMICIDE COVERUP OF THE ATTEMPT ON THE PLAINTIFF'S LIFE.

  (4) PLAINTIFF'S REFILING OF THE SECOND ORIGINAL VOLUNTARY STATEMENT AS A WITNESS OF THE HOMICIDE, HIT & RUN ACCIDENT ON SEPT,3,1999 THAT WAS UNSOLVED AND THE KNOWN DRIVER WAS RUNNING FREE PROTECTED BY OFFICER TREXLER AND A

AND A COPY OF THE REGISTRATION CERTIFICATION BY THE PENNSYLVANIA DEPARTMENT OF TRANSPORTATION.

(31) NOW POLICE CHIEF DANIEL TREXLER RETALIATED AGAIN ON MAY,9,20 WHEN THE PLAINTIFF AGAIN PRESENTED THE SECOND ORIGINAL VOLUN--TARY STATEMENT OF THE HIT & RUN ACCIDENT ON MARCH 16,2006 TO OFFICER WILLIAM C. NAHRGANG BOTH OFFICERS FORMED A CONSPIRACY TO AVOID EXPOSURE OF THE COVERUP BY SWITCHING DOCUMENTS AND CLAIMING THAT THE MARCH 16,2006 STATEMENT WAS THE COPY OF THE FIRST SEPT,4,1999 STATEMENT. THE PLAINTIFF DELIBERATELY CHANGED THE WORDING ON THE SECOND ORIGINAL STATEMENT AND ALSO PRINTED OFFICER TREXLERS NAME ON BOTH PLACES AND PRINTED THE OFFICER WILLIAM C. NAHRGANG NAME ON THE VERY BOTTOM WITH THE DATE MARCH 16,2006 AND ALSO THE REGISTRATION PLATE NUMBER IS PLACED AT 8:00 O'CLOCK AND ON LINE (9) WHERE AS THE FIRST ORIGINAL OF SEPT,4,1999 PLATE NUMBER WAS AT 4:00 O'CLOCK AND ON LINE (11).

(32) THE PLAINTIFF IN CASE NO. 2240/2006 WAS FALSELY CHARGED WITH PRESENTING THE FIRST VOLUNTARY STATEMENT OF SEPT,4,1999 NOT THE SECOND VOLUNTARY STATEMENT THAT WAS AN ORIGINAL ON MARCH ,16,2006, the BOTH OFFICERS SWITCHED THE DOCUMENTS TO AVOID EXPOSURE OF THE REAL TRUTH.

( THEREFORE THE PLAINTIFF WAS INNOCENT OF THAT CHARGE)
AND THE ONLY EYE WITNESS, THE PLAINTIFF WAS SEVERELY PUNISH AS A WITNESS FOR THE COMMONWEALTH OF PENNA. BY INTERFERING WITH THIS CRIMINAL COVERUP.

(33) THERE IS A CONFLICT OF INTEREST HERE REGARDING THE DISTRICT ATTORNEY'S OFFICER KENNETH HILBERT WHO IN FEB,15,2002 HAD PLACED THE PLAINTIFF ON THE WITNESS PROTECTION PROGRAM AS AN INMATE INFORMANT WHO PROVIDED A LETTER OF EVIDENCE, NAMES OF INMATES WITH STATEMENTS ON HOW THE MURDER WAS DONE IN NOV.20 2001 BY JULIO ORTIZ IN THE COLD BLOODED ROBBERY HOMICIDE WHO DIVULGED THE EVIDENCE AFTER THE PLAINTIFF MADE GOOD FRIENDS WITH THE KILLER OF BLANCHE R. SWOYER AT THE HESS EXPRESS IN OREFIELD,PA. A FRIEND OF THE PLAINTIFF, SHE HAD (2) CHILDREN.

## Retaliatory prosecution

Retaliatory prosecutions may be subject to remedy under § 1983. In order to establish a prima facie case of First Amendment retaliation, a plaintiff must demonstrate that (1) the plaintiff's conduct was constitutionally protected; and (2) the plaintiff's conduct was a "substantial factor" or "motivating factor" in the defendant's challenged actions.[1] Where an officer attempts to punish a person for the exercise of First Amendment rights by filing a criminal charge against him, there is a potential cause of action under the Fourth and First Amendments.[2]

In *Hartman v. Moore*,[3] the Supreme Court held that a plaintiff in a retaliatory prosecution claim must plead and prove the absence of probable cause for the prosecution in order to have a cause of action. Justice Souter's opinion for the Court argued that it is difficult to prove that retaliatory animus caused a criminal charge to be brought, because the charge is actually filed by a prosecutor, not the officer who is alleged to be engaged in retaliation. The absence of any probable cause may help prove the link between the retaliatory animus of the officer and the filing of the charge by the prosecutor, and so the Court held it is a required element of a prima facie case. Justice Souter reached this conclusion even though he acknowledged that the presence or absence of probable cause is actually not dispositive of whether a prosecution was initiated for the purpose of retaliation. He reasoned that since probable cause will be relevant to proof of causation in most cases, the law should make it a requirement in all cases.

an abuse of process, where officers actually sought to have plaintiff convicted of criminal charges).

[2]Jennings v. Shuman, 567 F.2d 1213, 1219 (3d Cir. 1977).

[3]Cook v. Sheldon, 41 F.3d 73 (2d Cir. 1994).

**[Section 2:16]**

[1]Abrams v. Walker, 307 F.3d 650, 654 (7th Cir. 2002) (abrogated on other grounds by, Spiegla v. Hull, 371 F.3d 928, 21 I.E.R. Cas. (BNA) 577, 150 Lab. Cas. (CCH) P 59878 (7th Cir. 2004)), citing Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 471, 1 I.E.R. Cas. (BNA) 76 (1977).

(34) THE POLICE OFFICERS, DANIEL TREXLER AND WILLIAM C. NAHRGANG PERPETRATED THE MALICIOUS PROSECUTION AGAINST THE PLAINTIFF. (AND ALL OTHER DEFENDANTS)

### Malicious prosecution

In Albright v. Oliver,[1] the Supreme Court held that there is no cause of action for malicious prosecution under § 1983 for a violation of substantive due process rights. A majority of the justices concluded that the availability of a malicious prosecution claim under § 1983 must be analyzed under the Fourth Amendment. Because plaintiff had not made a Fourth Amendment claim, the Court explicitly stopped short of determining this issue. Permitting a Fourth Amendment claim for malicious prosecution would be consistent with the rationale expressed by five of the Justices for rejecting the more general due process claim.

The various opinions of the Supreme Court in Albright left other issues open as well. In order to establish a Fourth Amendment claim for malicious prosecution, a plaintiff would have to prove that he had been "seized." The Court did not resolve the issue of what would constitute a Fourth Amendment seizure for these purposes. Justice Ginsburg's concurring opinion is premised on the notion that one remains "seized" in Fourth Amendment terms for trial as long as the prosecution remains pending.[2] Hence, she concludes that the time to file a § 1983 action based

---

[8]Johnson v. Hawe, 388 F.3d 676 (9th Cir. 2004), cert. denied, 544 U.S. 1048, 125 S. Ct. 2294, 161 L. Ed. 2d 1088 (2005) (plaintiff was arrested without probable cause because the Washington state Privacy Act did not criminalize recording a "police officer in the performance of an official function on a public thoroughfare"). See also, Walker v. City of Pine Bluff, 414 F.3d 989 (8th Cir. 2005) (no probable cause for arrest of lawyer for merely observing officers questioning young black men from across the street with arms folded in disapproving manner; officers' assertion that he created a distraction that obstructed a traffic stop was characterized by court as "preposterous").

[Section 2:14]

[1]Albright v. Oliver, 510 U.S. 266, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994).

[2]See DiBella v. Borough of Beachwood, 407 F.3d 599 (3d Cir. 2005) (distinguishing Gallo, infra, concluding that mere requirement that defendant

on malicious prosecution should begin to run only upon dismissal of the criminal charges.[3] Justice Souter's concurring opinion analyzes the injuries and damages which flow from a malicious prosecution and concludes that they all flow equally from the arrest or other Fourth Amendment seizure. Were a majority of the Court to recognize a Fourth Amendment cause of action for malicious prosecution under § 1983, it is unclear from the views thus far expressed whether the Court would adopt either Justice Ginsburg's view with respect to the statute of limitations, or Justice Souter's view with regard to the scope of available damages.

For the most part, the Courts of Appeals which have considered the issue have recognized a Fourth Amendment malicious prosecution action subsequent to Albright.[4] Theoretically, Albright leaves open the possibility that a malicious prosecution action

---

restee not leave state and that he make court appearances constituted a seizure); Riley v. Dorton, 115 F.3d 1159, 1162 (4th Cir. 1997) (rejecting continuing seizure theory); Reed v. City of Chicago, 77 F.3d 1049, 1052 n.3 (7th Cir. 1996) (noting that court had earlier rejected theory of continuing seizure).

[3]See Whiting v. Traylor, 85 F.3d 581 (11th Cir. 1996) (statute of limitations begins to run when prosecution has terminated; court notes but does not decide, questions of whether "continuing seizure" theory is valid); Brooks v. City of Winston-Salem, N.C., 85 F.3d 178 (4th Cir. 1996) (statute begins to run upon favorable termination); Calero-Colon v. Betancourt-Lebron, 68 F.3d 1, 4 (1st Cir. 1995) (statute of limitations began to run with acquittal). See § 7:16.

[4]Gregory v. City of Louisville, 444 F.3d 725, 2006 FED App. 0127P (6th Cir. 2006), petition for cert. filed, 75 U.S.L.W. 3065 (U.S. July 31, 2006) (court recognizes 4th Am cause of action for continued detention without probable cause, but says it should not be styled as a "malicious prosecution" action); Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003) (plaintiff must prove a violation of Fourth Amendment right to be free from unreasonable *seizures*, in addition to the elements of the common law tort of malicious prosecution, to establish a viable constitutional tort cognizable under § 1983); Britton v. Maloney, 196 F.3d 24, 30 (1st Cir. 1999) (absent any evidence that plaintiff was arrested, detained, restricted in travel, or otherwise deprived of liberty, mere fact that he was required to appear in court was not sufficient to establish a Fourth Amendment seizure); Ricciuti v. N.Y.C. Transit Authority, 124 F.3d 123 (2d Cir. 1997);