under § 1983 could be based on a procedural due process claim, or a different explicit constitutional right.[5]

In *Castellano v. Fragozo*,[6] the Fifth Circuit sitting en banc engaged in a major reconceptualization of its analysis of constitutional malicious prosecution claims. The court concluded that "malicious prosecution" standing alone is not a violation of the United States Constitution, although some elements of what have been viewed by some courts as constituting malicious prosecution may constitute other constitutional violations. It is worth quoting at some length the court's characterization of its own precedent and that of other circuits with respect to malicious prosecution, because it accurately summarizes many of the problems of the law in this area:

> We have been inexact in explaining the elements of a claim for malicious prosecution brought under the congressional grant of the right of suit under 42 U.S.C. § 1983. We are not alone. Other circuits have been facing similar difficulties and share with us a common shortcoming—either not demanding that this genre of claims identify specific constitutional deprivations or struggling in their efforts to do so. This laxness has tolerated claims in which specific constitutional violations are often embedded, but float unspecified, undefined, and hence unconfined inside a general claim of malicious prosecution. Its characteristic weak discipline has permitted the blending of state tort and constitutional principles, inattentive to whether the court is adopting state law as federal law in a process of federal common law decision-making, such as detailing remedial responses to a constitutional deprivation, or whether the court is creating a freestanding constitutional right to be free of malicious prosecution. On examination, the latter appears to rest on a perception that the sum of elements borrowed from state tort law by some synergism is a constitutional right itself—in its best light, that the elements of the state law tort of malicious prosecution, when proved, inevitably entail constitutional deprivation. While sometimes this is so, it is not inevitable, and the price of cutting the tether from constitutional text is too great to permit it to continue.
>
> We are persuaded that we must return to basics. And in doing so we conclude that no such freestanding constitutional right to be free from malicious prosecution exists. This conclusion in turn

---

[5]See *Awabdy v. City of Adelanto*, 368 F.3d 1062 (9th Cir. 2004) (malicious prosecution action under § 1983 could be grounded on violation of First Amendment rights by unlawfully interfering with plaintiff's campaign for reelection; plaintiff's right to equal protection under the Fourteenth Amendment by intentionally causing prosecutor to bring an unfounded charge because of racial animus towards Arab Americans; and plaintiff's Thirteenth Amendment rights by using a criminal prosecution to coerce him into repaying a debt); *Torres v. McLaughlin*, 163 F.3d 169 (3d Cir. 1998) (post-trial incarceration malicious

The court limited the effect of *Albright* on Fourteenth Amendment claims to "eschewing reliance upon substantive due process to create a requirement of probable cause to initiate a prosecution."[8] The court held that the manufacturing of evidence and knowing use of that evidence along with perjured testimony to obtain a wrongful conviction deprives a defendant of his long recognized right to a fair trial secured by the Due Process Clause.[9] As noted by the dissent, the court did not follow through on its insistence on clarity, however, and failed to specify whether it was speaking about substantive or procedural due process, despite its further conclusion that this due process claim could be made whether or not there was an adequate state remedy and would not be barred by the *Parratt* doctrine.

The court declared that the reading given both the Fourth and Fourteenth Amendments after *Albright* was: "deeply flawed. It swept too wide in two directions: simultaneously holding that *Albright* closed the door to any claim of a deprivation of due process and that the protections of the Fourth Amendment extended to events at trial."[10] In addition to recognizing the viability of some due process claims, the *Castellano* court also held that the Fourth Amendment does not protect against misconduct that occurs at trial, such as the use of manufacture evidence or perjury.

Prior to Albright, a number of courts had indicated that malicious prosecution might form the basis for an action under § 1983.[11] The continuing validity of these cases will depend upon resolution of the Fourth Amendment malicious prosecution theory. Other courts had put substantial limitations on malicious prosecution actions under § 1983.[12] It is unclear whether the strictures imposed by courts which employed a substantive due

---

[7]352 F.3d at 945. The court discusses the law from other circuits in detail at 949-953.

[8]352 F.3d at 948.

[9]See § 2.30, fn. 13 for further discussion of this theory of liability.

[10]352 F.3d at 955.

[11]See Cook v. Sheldon, 41 F.3d 73 (2d Cir. 1994); Brummett v. Camble, 946 F.2d 1178, 1180 n.2 (5th Cir. 1991); Strength v. Hubert, 854 F.2d 421 (11th Cir. 1988); Raysor v. Port Authority of New York and New Jersey, 768 F.2d 34, 19 Fed. R. Evid. Serv. 211 (2d Cir. 1985); Losch v. Borough of Parkesburg, Pa., 736 F.2d 903 (3d Cir. 1984); Dunn v. State of Tenn., 697 F.2d 121 (6th Cir. 1982); Jennings v. Shuman, 567 F.2d 1213 (3d Cir. 1977); Dellums v. Powell, 566 F.2d 167, 24 Fed. R. Serv. 2d 20 (D.C. Cir. 1977); Hampton v. Hanrahan, 600 F.2d 600 (7th Cir. 1979), cert. granted in part, judgment rev'd in part, 446 U.S. 754,

process analysis would be applicable under Fourth Amendment principles.

Malicious prosecution has four elements:

1. The defendant must be found to have instituted a criminal action against the plaintiff;[13]

2. The prosecution must have ended in the plaintiff's favor;[14]

---

Torres v. Superintendent of Police of Puerto Rico, 893 F.2d 404 (1st Cir. 1990) (malicious prosecution must be so egregious as to violate substantive or procedural due process); Ayala-Martinez v. Anglero, 982 F.2d 26 (1st Cir. 1992) (egregiousness standard not met, despite the fact that defendant fabricated charges against plaintiff in order to justify injuries police officers gave him in a beating); Morales v. Ramirez, 906 F.2d 784 (1st Cir. 1990) (egregiousness standard not met); Whatley v. Philo, 817 F.2d 19 (5th Cir. 1987) (for cause of action under § 1983, misuse of legal process must be egregious); Johnson v. Barker, 799 F.2d 1396 (9th Cir. 1986) (for constitutional claim of abuse of process or malicious prosecution, conduct of officers must be so egregious as to "shock the conscience"); Friedman v. Village of Skokie, 763 F.2d 236 (7th Cir. 1985) (malicious prosecution not a sufficient basis for a constitutional wrong under § 1983); Bretz v. Kelman, 773 F.2d 1026, 1031 (9th Cir. 1985) (rejected by, Easter House v. Felder, 910 F.2d 1387 (7th Cir. 1990) (en banc) (malicious prosecution generally not a federal constitutional tort, unless conducted with intent to deprive person of equal protection of the laws or otherwise intended to subject person to denial of constitutional rights); Lusby v. T.G. & Y. Stores, Inc., 749 F.2d 1423 (10th Cir. 1984), cert. granted, judgment vacated, 474 U.S. 805, 106 S. Ct. 40, 88 L. Ed. 2d 33 (1985) (in light of City of Oklahoma City v. Tuttle, 471 U.S. 808, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985)); Cramer v. Crutchfield, 648 F.2d 943 (4th Cir. 1981); Dellums v. Powell, 660 F.2d 802 (D.C. Cir. 1981).

[13]It has been held that a false arrest without probable cause is not a sufficient basis for a malicious prosecution action, but that the officer must have committed some wrongdoing after the arrest. Snodderly v. R.U.F.F. Drug Enforcement Task Force, 239 F.3d 892 (7th Cir. 2001); Meehan v. Town of Plymouth, 167 F.3d 85 (1st Cir. 1999); Sneed v. Rybicki, 146 F.3d 478, 481 (7th Cir. 1998).

[14]Where termination of the underlying criminal charge is achieved without a determination on the merits, an issue arises as to whether the disposition was sufficiently consistent with innocence to permit an action for malicious prosecution. See generally Restatement of Torts (Second) § 660. Where there is a pretrial disposition short of acquittal, the claim of malicious prosecution may be barred. See Evans v. Ball, 168 F.3d 856 (5th Cir. 1999) (abrogated on other grounds by, Castellano v. Fragozo, 352 F.3d 939 (5th Cir. 2003)) (favorable termination requires a disposition affirmatively indicating a lack of guilt, negotiated dismissal in return for consideration, e.g. waiver of future speedy trial rights, is not favorable termination); Washington v. Summerville, 127 F.3d 552, 559 (7th Cir. 1997) (bare nolle prosequi, with no explanation for its entry, is insufficient to show termination in favor of accused); Davis v. Chubb/Pac. Indem. Group, 493 F. Supp. 89 (E.D. Pa. 1980) ("accelerated rehabilitative disposition" not a "favorable termination"). The Second Circuit has visited this issue a number of times. See Rogers v. City of Amsterdam, 303 F.3d 155 (2d Cir. 2002) (dismissal on speedy trial grounds was termination in favor of accused); Russell v. Smith, 68 F.3d 33 (2d Cir. 1995) (dismissal of murder indictment with leave

3. There must have been no probable cause to initiate the criminal proceeding; and

4. The defendant must have acted maliciously.[15]

Under one view of the common law understanding of malicious prosecution, an arrest on a warrant should be analyzed as akin to a malicious prosecution, because it begins with the issuance of legal process contemplating a prosecution.[16] Similarly, it may be reasoned that a false arrest without a warrant is not part of a malicious prosecution Fourth Amendment seizure, because malicious prosecution requires the issuance of legal process.[17]

A police officer may be liable under a malicious prosecution theory for filing false charges or providing false information to the prosecuting attorney, but only if the officer advised, assisted, ratified or directed the prosecution.[18] Further, it has been held that where an officer withholds exculpatory evidence from the prosecutor during the course of criminal proceedings, the continu-

---

was dismissed with the consent of the district attorney due to a delay in prosecution, plaintiff would be entitled to a trial to determine whether the termination was sufficiently favorable to him or her to form the basis of civil rights action on a malicious prosecution theory); Russo v. State of N. Y., 672 F.2d 1014 (2d Cir. 1982), decision modified on reh'g, 721 F.2d 410 (2d Cir. 1983) (where the termination of criminal prosecution was not based on the merits, dispositive inquiry is whether failure to proceed in the criminal case implied a lack of reasonable grounds for the prosecution); Singleton v. City of New York, 632 F.2d 185 (2d Cir. 1980) (termination of a criminal proceeding after adjournment in contemplation of dismissal was not equivalent to an acquittal for the purpose of bringing a civil rights claim on malicious prosecution theory). See § 9:5. It is not required that a malicious prosecution plaintiff establish that he was actually innocent of the criminal charge against him. All that is required is a favorable termination of the prosecution. See Donahue v. Gavin, 280 F.3d 371 (3d Cir. 2002) (nolle pros of charges after retrial ordered due to faulty jury instructions was not a termination in plaintiff's favor); Posr v. Court Officer Shield No. 207, 180 F.3d 409 (2d Cir. 1999) (speedy trial dismissal is a favorable disposition); Smith v. Holtz, 87 F.3d 108, 113 (3d Cir. 1996) (dismissal of charges on double jeopardy grounds is favorable termination).

[15]Biddle v. Martin, 992 F.2d 673 (7th Cir. 1993) (existence of probable cause for arrest is absolute bar to claim for malicious prosecution); Dellums v. Powell, 566 F.2d 167, 191, 24 Fed. R. Serv. 2d 20 (D.C. Cir. 1977); Sullivan v. Choquette, 420 F.2d 674, 676 (1st Cir. 1969); Jennings v. Shuman, 567 F.2d 1213 (3d Cir. 1977); Harper & James, The Law of Torts § 4.6 at 321 (1956). Plaintiff must also have suffered an injury, as in any tort case.

[16]See, Snodderly v. R.U.F.F. Drug Enforcement Task Force, 239 F.3d 892 (7th Cir. 2001).

[17]Nieves v. McSweeney, 241 F.3d 46 (1st Cir. 2001).

[18]Awabdy v. City of Adelanto, 368 F.3d 1062 (9th Cir. 2004); Reed v. City of Chicago, 77 F.3d 1049 (7th Cir. 1996); Eubanks v. Gerwen, 40 F.3d 1157

ation of the criminal case establishes malicious prosecution against that officer.[19]

As in false arrest and detention cases, police officers may argue that the decision of a prosecuting attorney, judge or grand jury to file or approve charges should insulate them from liability for malicious prosecution.[20] In Wheeler v. Cosden Oil and Chemical Co.,[21] the court held that the "break in the causal chain" argument is applicable only to false arrest and imprisonment cases and would not bar an action for malicious prosecution. In addition, it has been held that the intervening action by a prosecuting attorney or a court only creates a rebuttable presumption that an independent judgment as to probable cause has been made, and that the plaintiff may demonstrate that the police officer's deliberate misrepresentation of certain facts caused the charges to be filed.[22] Prosecutors are absolutely immune from malicious prosecution suits, since the very act of filing charges falls directly within the ambit of their prosecutorial responsibilities.[23]

## § 2:15   Abuse of process

In an action for abuse of process, probable cause is irrelevant and the issue is whether the defendant employed legal process for some unlawful object, i.e., not a purpose which it was intended by the law to effect.[1] The court in Jennings v. Shuman,[2] explained the difference as follows:

---

[19]Sanders v. English, 950 F.2d 1152 (5th Cir. 1992); Goodwin v. Metts, 885 F.2d 157 (4th Cir. 1989).

[20]Jones v. Cannon, 174 F.3d 1271 (11th Cir. 1999) (holding that grand jury indictment broke causal chain, despite defendant officer's false testimony before grand jury, reasoning that absolute immunity for grand jury testimony precludes finding liability based in part on that testimony); Taylor v. Meacham, 82 F.3d 1556, 1564 (10th Cir. 1996) (chain of causation is broken by an indictment, absent allegation of pressure or influence by police, or knowing misstatements made to prosecutor); Reed v. City of Chicago, 77 F.3d 1049, 1053 (7th Cir. 1996) (same); Russo v. State of N. Y., 672 F.2d 1014 (2d Cir. 1982), decision modified on reh'g, 721 F.2d 410 (2d Cir. 1983); Dellums v. Powell, 660 F.2d 802 (D.C. Cir. 1981).

[21]Wheeler v. Cosden Oil and Chemical Co., 744 F.2d 1131 (5th Cir. 1984). See Hand v. Gary, 838 F.2d 1420 (5th Cir. 1988).

[22]McClellan v. Smith, 439 F.3d 137, 146 (2d Cir. 2006); Gonzalez Rucci v. U.S. I.N.S., 405 F.3d 45 (1st Cir. 2005) (grand jury indictment does not definitively establish probable cause if defendants wrongfully obtained indictment by knowingly presenting false testimony to grand jury); Robinson v. Maruffi, 895 F.2d 649 (10th Cir. 1990); White v. Frank, 855 F.2d 956 (2d Cir. 1988); Jones v. City of Chicago, 856 F.2d 985 (7th Cir. 1988); Russo v. State of N. Y., 672 F.2d 1014 (2d Cir. 1982), decision modified on reh'g, 721 F.2d 410 (2d Cir. 1983).

PAGE (26)

(35)   ON FEB.8,2005 COOPERSBURG POLICE OFFICER JASON LEINDECKER STOPPED
THE PLAINTIFF ON HIS WAY THROUGH COOPERSBURG,PA. FOR NO REASON
AND ORDERED THE PLAINTIFF TO RETURN TO HIS RESIDENCE, AND THE
(3) OTHER MEN IN A RED VAN ALSO ORDERED THE PLAINTIFF TO TURN
AROUND, AND RETURN HOME, THE PLAINTIFF ASKED WHAT FOR, WHAT
IS THIS ALL ABOUT, NO ONE ANSWERED, THE PLAINTIFF RETURNED TO
HIS HOME IN THE DRIVEWAY AFTER THINKING ABOUT THIS EVENT THE
PLAINTIFF DEMANDED TO KNOW WHAT THIS IS ABOUT,LEHIGH COUNTY
DETECTIVE LEROY OSWALD SAID OPEN THE DOOR WE HAVE A WARRANT,
BUT SHOWED NO WARRANT, THE PLAINTIFF OBJECTED TO THEM ENTERING
HIS HOME, DETECTIVE OSWALD TURNED AND LOOKED BACK TO OFFICER
JASON LEIDECKER AND TOLD HIM TO BRING K-9 (GRIM) WHO BROUGHT
THE BLACK GERMAN SHEPHERD GROWLING AND LEAD HIM DIRECTLY TO
THE PLAINTIFF, THE PLAINTIFF, YELLED GET THAT DOG AWAY FROM
ME, OFFICER LEIDECKER KEPT THE DOG WITHIN HANDS REACH, THE
DETECTIVE OSWALD RESPONDED NOW OPEN UP YOUR DOOR OR WE'LL
ARREST YOU HERE NOW, THE PLAINTIFF, YELLED BACK FOR WHAT? FOR
WHAT? THE PLAINTIFF OBJECTED AGAIN AND SAID I WANT TO KNOW
FOR WHAT REASON,BY THIS TIME EVERYONE OF THE (6) OFFICERS WERE
DEMANDING, YOU BETTER OPEN UP IF YOU KNOW WHATS GOOD FOR YOU.
THE OFFICERS THREATENED THE PLAINTIFF, THE PLAINTIFF WAS A LITTLE
SCARED AND KNEW HE HAD NOTHING TO HIDE OPENED THE DOOR AND
LEAD OFFICER OSWALD PUSHED THE PLAINTIFF THROUGH THE DOOR ALMOST
HAVEING THE PLAINTIFF TRIP ON THE LAST STEP INTO THE DOORWAY
THE (6) OFFICERS PUSHED THEIR WAY INTO THE PLAINTIFF'S HOME
AND OFFICER LEIDECKER PUSHED HIS DOG DIRECTLY TO THE PLAINTIFF
AND SAID DON'T TOCH THE DOG HE'LL BITE, THE PLAINTIFF WELL
THEN KEEP HIM AWAY FROM ME.

THE DETECTIVE OSWALD SAID WHERE IS YOUR OFFICE, THE PLAINTIFF
OBJECTED AGAIN AND SAID YOU ARE NOT ENTERING MY HOME WITHOUT
PERMISSION. THE (2)POLICE OFFICERS KEPT THE PLAINTIFF ON THE
SUN PORCH AND OFFICER NAHRGANG AND THE (3) LEHIGH COUNTY DETECTIVE
PUSHED THEIR WAY PAST THE PLAINTIFF AND RUSHED THROUGH THE
PLAINTIFF'S HOME AS IF IT WAS A HOSTAGE CRISIS, THE PLAINTIFF
COULD HEAR THEM RIPPING SHELVES OFF THE WALLS AND THROWING
BOXES OUT OF THE CLOSETS, THE PLAINTIFF YELLED OUT, YOU BETTER
NOT BE WREAKING MY HOME OR YOU'LL PAY FOR IT, AS THE PLAINTIFF
HAD YELLED THE BLACK GERMAN SHEPHERD LUNGED AT THE PLAINTIFF
ALMOST BITING THE FACE OF THE PLAINTIFF.

PAGE (27)

(36) THE ILLEGAL SEARCH WENT ON FOR (2) FULL HOURS, THE PLAINTIFF OBJECTIONS TO ENTER WERE IGNORED AND UNREASONABLE ALSO A VIOLATION OF THE PLAINTIFF'S CONSTITUTIONAL RIGHTS.

LEHIGH COUNTY DETECTIVE ANDY MEDELLIN CAME OUT TO THE PLAINTIFF AFTER (1) HOUR AND SAID LISTEN WE NEED TO KNOW WHERE YOU KEEP YOUR CHILD PORNOGRAPHY AND OTHER OBSCENE PHOTO'S THE PLAINTIFF RESPONDED, WHAT, I DON'T HAVE ANY CHILD PORNO- GRAPHY AND NEVER EVER WOULD CONSIDER THAT GARBAGE IN MY HOME THEN DETECTIVE SCOTT PARRY CAME OUT, HE SAID YOU CAN MAKE IT EASIER ON YOURSELF IF YOU TELL US WHERE DO YOU KEEP IT, IS IT AT ANYONE ELSE'S HOME. THE PLAINTIFF STATED NO HONESTLY I DON'T AND WOULDN'T HAVE ANYTHING LIKE THAT IN MY HOME.

THE DETECTIVES STATED WE HAVE A GOOD LEAD ON YOU AND PEOPLE ARE WILLING TO TESTIFY AGAINST YOU. THE PLAINTIFF STATED THEN BRING THEM FORWARD, BECAUSE THEIR LIEING OR YOUR BOTH LIARS.

YOU WILL NEVER FIND ANYTHING HERE AND NO ONE THAT I KNOW WOULD ALSO NEVER CONSIDER THAT GARBAGE.

THE PLAINTIFF, STATED TO BE HONEST WITH YOU, I HAVE ALWAYS LOVED KIDS, BUT NEVER ONCE HAD THAT EVER CROSSED MY MIND I HAVE FOR OVER (9) YEARS HELPED POOR FAMILY'S WITH POOR OR UNDERPRIVILEGED CHILDREN WITH CLOTHES, FOOD, SHELTER, I HAD A PROGRAM WITH THE LOCAL CHURCHES THAT PROVIDE CARE FOOD BOXES, I LOVE BEING LOVED BY THESE CHILDREN AND FAMILIES. I ASKED NOTHING IN RETURN FOR MY WORK OF KINDESS. I ALSO HAVE TAKEN UNDERPRIVILEGED CHILDREN ON ALL DAY TRIPS TO ZOO'S SEA SHORE OVER NIGHT, DORNEY PARK, LAKE WALLENPAULPAC TO MY CABIN, SOME TIMES (3) TO (6) KIDS, BOATING, FISHING, HIKING ONE TIME IN 1997 WE TOOK (12) UNDERPRIVILEGED AND POOR KIDS FROM (5) FAMILIES AROUND ALLENTOWN, BETHLEHEM, QUAKERTOWN WHICH I PLANNED FOR (2) MONTHS BUYING PROVISIONS AND A BIG WINDOWED VAN AND HEADED TO NEW ENGLAND STATES AND MAINE WHERE I RENTED A LARGE CABIN THE SAME CABIN I TOOK MY CHILDREN TO WITH (6) BEDS IN A ROW RIGHT BY THE LAKE, THIS ALSO WAS THE SAME CABIN WE RENTED IN 1990 WHEN CBS ASKED US IF WE WOULD MIND MOVING TO A SMALLER CABIN, WE AGREED AND NBC WAS THERE IT WAS THE FINISHING OF A GOD GIVEN AND RELIGIOUS GATHERING OF HUNDREDS OF CARS, VANS MOBILE UNITS TO SEE AND WELCOME BILL ERVIN THE BLIND MAN THAT WALKED THE ENTIRE APPALACHIAN

PAGE (28)

TRAIL RIGHT UP TO THE TOP CHIMNEY PEAK AND KISSED THE SIGN ON TOP OF MT. KATAHDIN THE HIGHEST MT. IN MAINE. I HAD THE PLEASURE OF MEETING BILL ERVIN IN PERSON THAT NIGHT AT THE MOOSEHEAD LODGE OVER DINNER AND HE GAVE ME A PHOTOGRAPH OF HIM KISSING THE FINISH LINE SIGN.

DETECTIVE OSWALD CAME OUT WITH MY ORIGINAL VOLUNTARY STATEMENTS IN HIS HAND AND SAID I TALKED TO ALL (4) OF YOUR ALLEDGED WITNESSES AND THEY SAID IT IS A FORGERY AND NEVER WROTE ANYTHING OUT FOR YOU THE PLAINTIFF ANSWERED AND SAID THAT IS A DOWN RIGHT LIE AND YOUR A LIAR. THE PLAINTIFF STATED I'M NOT ANSWERING ANY QUESTIONS UNTIL I TALK TO AN ATTORNEY, THE DETECTIVE OSWALD KEPT POUNDING QUESTIONS AT THE PLAINTIFF MAKEING FALSE STATEMENTS, THE PLAINTIFF KEPT QUIET AND IGNORED THE HARSH STATEMENTS, DETECTIVES ANDYMEDELLIN & SCOTT PARRY WERE WALKING OUT CARRYING BOXES OF PHOTOGRAPHS,VIDEOS MY SLIDE PROJECTOR AND PHOTO ALBUM OF ALL MY KIDS PICTURES SINCE BIRTH AND (40) YEARS OF PHOTOGRAPHING, THE PLAINTIFF, YELLED HOLD ON HERE THERE IS NOTHING IN THERE THAT IS IMMORAL OR WRONG, I WANT THOSE PHOTOGRAPHS BACK, I'M TELLING YOU ,YOUR BARKING UP THE WRONG TREE, THERE'S NOTHING HERE.

DETECTIVE NEVER SHOWED ANY OTHER DOCUMENTS OF EVIDENCE AS HE HAD CLAIMED HE SAID I SHOWED EVERYTHING OF EVIDENCE, THIS DETECTIVE OSWALD IS THE MOTHER AND FATHER OF ALL LIARS.

OSWALD ON FEB.8,2005 ASKED THE PLAINTIFF, WHEN DID YOU PURCHASE THAT BROTHERS SX 4000 TYPE WRITER, THE PLAINTIFF REACHED INTO THE SIDE COMPARTMENT AND PULLED OUT THE SALES RECEIPT AND WARRANTEE STATEING DEC.7,2004, DETECTIVE OSWALD SAID I'M TAKING IT, THE PLAINTIFF OBJECTED, BECAUSE HE NEEDED IT AND ASKED WHY ARE YOU TAKING IT, FOR EVIDENCE OSWALD CLAIMED. THE PLAINTIFF WAS SUSPICIOUS OF THIS ENTIRE ILLEGAL SEARCH AND SEIZURE, THE PLAINTIFF HAD NOTHING TO HIDE. ON FEB,15,2005 DETECTIVE OSWALD PULLED INTO THE PLAINTIFF'S DRIVEWAY, GOT OUT AND TOLD THE PLAINTIFF, WE FORGOT THE PANSONIC TYPEWRITER, HE WALKED RIGHT INTO THE OFFICE AND TOOK THE TYPEWRITER HE HAD NO WARRANT TO ENTER AND NO PERMISSION TO ENTER, THERE WERE NO ONE ELSE WITH HIM, HE FALIFIED THE REPORT AND SAID THAT THERE WERE (3) OTHER POLICE OFFICERS ALONG, THIS IS NOT TRUE, THE TRUTH OF THE FACT HE WAS BY HIMSELF, BEFORE LEAVING HE ASKED HOW LONG HAVE YOU USED OR WHEN DID YOU PURCHASE THE PANASONIC TYPE WRITER THE PLAINTIFF STATED (9) OR (10) YEARS AGO.I USED IT IN MY BUSINESS FOR YEARS, BACK IN 1996 WHEN I STARTED REMODELING MY NEW OFFICE.

(29)

(36)   ON FEB, 14,2005 THE PLAINTIFF WAS WALKING OUT OF THE LAW
LIBRARY IN THE LEHIGH COUNTY COURT HOUSE ON THE 4th. FLOOR
WHEN DETECTIVE OSWALD CAME WALKING OUT OF THE ELEVATOR
CARRYING A BOX OF MY SX BROTHERS TYPE WRITER THE SX 4000
AND MY GREEN FILE FOLDERS WITH THE FAMILY RED ALBUM, WHEN
HE SPOTTED THE PLAINTIFF STANDING BY THE SIDE OF THE ELEVATOR
HE WAS IN SHOCK AND QUICKLY PULLED THE BOX AWAY FROM MY VIEW

THIS LEHIGH COUNTY DETECTIVE NOW KNEW HE DID NOT HAVE ANY
PROBABLE CAUSE TO ILLEGALLY SEARCH THE PLAINTIFF'S HOME ON
FEB.8,2005, OSWALD TOOK THIS SEIZED DOCUMENTS OUT OF THE
COURT HOUSE IN ORDER TO MANUFACTURE EVIDENCE TO COVER THEM
-SELFS FOR THE ILLEGAL SEARCH AND SEIZURE. OSWALD KNEW HE
HAD NO PROBABLE CAUSE IN THE FIRST PLACE EXCEPT A HUNCH THAT
THE PLAINTIFF WAS DOING SOME IMMORAL THINGS WITH THESE KID
HE DIDN'T WANT TO SEE THE LOVE AND BEAUTY OF KINDESS, HE
WANTED TO CREATE AN EVIL CASE AGAINST THE PLAINTIFF, BECAUSE
OF THE UNGOING CIVIL SUIT, DETECTIVE ALSO KNEW DETECTIVES
ANDY MEDELLIN AND SCOTT PARRY NEVER FOUND ANY EVIDENCE OF
ANY CHILD PORNOGRAPHY AND OBSENE PHOTOGRAPHS ANYWHERE IN
THE PLAINTIFF'S HOME.AS THEY ORIGINALLY THOUGHT.

(37)   THE PLAINTIFF'S CAN PROVE HOW THE DEFENDANTS MANUFACTURED
THE EVIDENCE THAT DETECTIVE OSWALD PRESENTED AT TRIAL.

DETECTIVE OSWALD WANTED TO CARRY THE TORCH AGAINST THE
PLAINTIFF AND CREATE A CASE OF MANUFACTURED EVIDENCE FIRST
THE COMPOSITE DOCUMENT OF THE COOPERSBURG POLICE DEPARTMENT
NOTICE OF JUNE19,2001 THAT WAS PLACED ON THE LANECO STORE
WINDOW, WHEN THE PLAINTIFF NOTICED IT ON JUNE 19,2001 HE
PHOTOGRAPHED THE POLICE NOTICE AGAINST THE PLAINTIFF WITH
HIS 35MM CAMERA (4) DIFFERENT SHOTS IN COLOR OF COURSE.
NOW DETECTIVE(OSWALD HUNG HIMSELF) BY MANUFACTUREING THE
COMPOSITE POLICE LETTERHEAD WITH SCOTCH TAPE AND CLAIMING
HE FOUND IT IN THE PLAINTIFF'S HOME. FIRST OF ALL OSWALD
NEVER KNEW THAT THE PLAINTIFF PHOTOGRAPHED THE POLICE
NOTICE. IF YOU LOOK CLOSE AT THE COLORED PHOTOGRAPH AND
THEN LOOK AT THE COMPOSITE DOCUMENT, YOU WILL SEE THERE IS
NO LINES OF ALTERATION.

PAGE (30)

NOW DETECTIVE OSWALD AND POLICE CHIEF DANIEL TREXLER BOTH USED
MANUFACTURED EVIDENCE BY CLAIMING THE JUNE 19,2001 POLICE LETTER-
-HEAD WAS PRESENTED AT THE DEPOSITION ON MARCH 17,2004, THIS OF
COURSE WAS NOT TRUE FACT. IF THE POLICE REPORT WOULD HAVE BEEN
PRESENTED AT THE DEPOSITION IT CERTAINLY WOULD HAVE BEEN LABELED
AS AN EXHIBIT. THE PLAINTIFF NEVER PRESENTED THE COPY OF THE PHOTO-
-GRAPH OF THE POLICE NOTICE, THEREFORE THE PLAINTIFF WAS FALSELY
CHARGED BY DETECTIVE OSWALD AND INOCENT OF THAT CHARGES. CASE NO.
3729/2005, COUNT (1) AND COUNT (4) CONSISTED OF THE ALLEDGED FORGED
OF THE POLICE NOTICE ON THE LANECO STORE WINDOW ON JUNE 19,2001,
THE PLAINTIFF WAS FOUND GUILTY OF COUNT (1) & (4) BECAUSE THE PHO
-GRAPH OF JUNE 19,2001 POLICE NOTICE WAS NEVER OFFERED AS AN EXHIBIT
FOR THE JURY TO ANALYZE THE TRUE FACTS.

   NOW THE SECOND MANUFACTURED COMPOSITE DOCUMENT WAS THE LETTER &
AND ENVOLOPE ALLEDGED TO HAVE BEEN SENT FROM THE DISTRICT ATTORNEY
OFFICE TO THE SUPREME COURT INVOLVEING THE PLAINTIFF AS THE PERSON
WHO THEY CLAIM SENT THE LETTER AND ENVOLOPE ON SEPT,9,2004 ALSO
CLAIM THAT THE SX BROTHERS TYPE WRITER 4000 TYPE THOSE DOCUMENTS&
ALSO THE JUNE 19,2001 POLICE NOTICE. NOW KEEP IN MIND THAT THE SX
BROTHERS TYPE WRITER #4000 WAS PURCHASED ON DEC.7,2004 AND THEREFORE
COULDN'T HAVE BEEN USED TO FORGE THE (2) MAJOR DOCUMENTS.

(38)

## Manufacturing Evidence

   Where a person has been deprived of liberty as a result of false
evidence that is manufactured by law enforcement officers, there
is a deprivation of liberty without due process of law. "Evidence"
refers not only to physical evidence, but also to testimony by
witnesses. Mooney v. Holohan, 294 U.S. 103, 112, 55 S. Ct. 340,
79 L. Ed. 791, 98 A.L.R. 406 (1935); Napue v. People of State of
Ill., 360 U.S. 264, 269, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959);
Miller v. Pate, 386 U.S. 1, 6, 87 S. Ct. 785, 17 L. Ed. 2d 690
(1967); Kingsland v. City Of Miami, 369 F.3d 1210 (11th Cir.
2004), opinion withdrawn and superseded, 2004 WL 1925602
(11th Cir. 2004) and cert. denied, 2004 WL 2068362 (U.S. 2004);
Limone v. Condon, 372 F.3d 39 (1st Cir. 2004); Rowe v. City of
Fort Lauderdale, 279 F.3d 1271 (11th Cir. 2002); Devereaux v.
Abbey, 263 F.3d 1070, 1074-1075 (9th Cir. 2001).

PAGE (31)

THE FEB.8,2005 ILLEGAL SEARCH AND SEIZURE BY LEHIGH COUNTY DETECT LEROY OSWALD, ANDY MEDELLIN AND SCOTT PARRY WITH (3) COOPERSBURG POLICE OFFICERS WILLIAM C. NAHRGANG, CHARLES WYCKOFF,JASON LEIDEC AND K-9 GRIM( GERMAN SHEPHERD.

## Illegal search and seizure and the right to privacy—Search and seizure

Searches and seizures conducted in violation of the Fourth and Fourteenth Amendments are actionable under the Civil Rights Acts.[1] An unlawful search or seizure infringing upon either personal liberty or property rights creates a cause of action.[2] Search and seizure problems are presented in a wide variety of circumstances.[3]

Where an individual has consented voluntarily to a search it will not violate his constitutional rights even if the officers had no warrant and no probable cause for the search.[4] An entry is constitutionally permissible when the police obtain the voluntary consent of an occupant who shares, or who they reasonably believe shares, common authority over premises and any co-occupants are absent or do not object.[5] Where co-occupants are present, however, an objection by one will ordinarily render entry unreasonable and unconstitutional, even though another co-occupant consents to the search.[6]

A search conducted pursuant to a warrant generally may not be challenged unless the lack of probable cause was so apparent that the officer should have known it was absent.[7] If it is proved that the defendant purposely falsified material aspects of the

[Section 2:24]

[1] Monroe v. Pape, 365 U.S. 167, 81 S. Ct. 473, 5 L. Ed. 2d 492 (1961) (over-ruled on other grounds by, Monell v. Department of Social Services of City of New York, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611, 17 Fair Empl. Prac. Cas. (BNA) 873, 16 Empl. Prac. Dec. (CCH) P 8345 (1978)) (search of house without warrant); Soldal v. Cook County, Ill., 506 U.S. 56, 113 S. Ct. 538, 121 L. Ed. 2d 450 (1992) (plaintiffs stated cause of action for unconstitutional seizure of their rented mobile home, alleging that sheriff's deputies had conspired with landlord to illegally remove trailer and evict plaintiffs). Cf. Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971).

[2] Lynch v. Household Finance Corp., 405 U.S. 538, 92 S. Ct. 1113, 31 L. Ed. 2d 424 (1972).

THE FEB.8,2005 ILLEGAL SEARCH AND SEIZURE WHICH LEAD TO THE SEPT.1, 2005 FALSE ARREST OF MANUFACTURED EVIDENCE AND WITHOUT PROBABLE CAUSE TO DO SO.

## Illustrative specific violations—Probable cause for arrest

A police officer may not arrest a person without an arrest warrant unless he has probable cause to believe that a crime has been committed and that the person in question has committed that crime. Probable cause exists if the facts and circumstances known to the officer, and of which he had reasonably trustworthy information, are sufficient to warrant a prudent person in believing that the suspect probably has committed a crime. A mere possibility that the person has committed a crime is not enough. The hunch, guess, conjecture, or surmise of an officer is not enough, and there must be enough actual evidence to reasonably lead to the conclusion that the suspect has committed a crime. If you find that the defendant arrested the plaintiff without probable cause, you must find the defendant liable for a violation of the plaintiff's constitutional rights.[1]

The burden of proof on a claim of false arrest is on the defendant officer to demonstrate that there was probable cause for the arrest and detention. That is to say that since the plaintiff was deprived of her liberty interest, the defendants must justify their

_____

[2] Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

[3] Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); Adams v. Williams, 407 U.S. 143, 145-48 (1972); Minnesota v. Dickerson, 508 U.S. 366, 372-76, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993); Smith v. Ohio, 494 U.S. 541, 542, 110 S. Ct. 1288, 108 L. Ed. 2d 464 (1990); Bond v. U.S., 529 U.S. 334, 337, 120 S. Ct. 1462, 146 L. Ed. 2d 365 (2000).

[Section 12:13]

[1] Dunaway v. New York, 442 U.S. 200 (1979); Brown v. Texas, 443 U.S. 47 (1979); Henry v. United States, 361 U.S. 98 (1959); Brinegar v. United States, 338 U.S. 160, 175–76 (1949). See generally §§ 2:3, 2:8.

PAGE (33)

(39) LEHIGH COUNTY DETECTIVE LEROY OSWALD ON FEB.8,2005 OR LATER DESTROYED THE PLAINTIFF'S RECEIPT AND WARRANTEE FROM THE SX 4000 BROTHERS TYPE WRITER, DETECTIVE OSWALD KNEW THAT EVIDENCE WOULD EXONERATE THE PLAINTIFF. ON AROUND JULY 2006 AFTER (4) LETTERS OF REQUESTS TO COPY THE PROSECUTIONS EVIDENCE UNDER RULE 573 OF DISCLOSURE, OSWALD FINALLY CALLED TO LET THE PLAINTIFF SEE THE EVIDENCE, BUT DENIED THE PLAINTIFF THE RIGHT TO COPY THE EVIDENCE, ONLY PHOTOGRAPH IT. THE PLAINTIFF WENT TO PHOTOGRAPH THE SX 4000 BROTHERS TYPE WRITER RECEIPT AND WARRANTEE AND IT WAS MISSING, THEN OSWALD SAID I DON'T KNOW WHAT HAPPENED TO IT, AND ALSO THE (2) COMPOSITE DOCUMENTS WERE MISSING, THE PLAINTIFF DEMANDED TO SEE THE EVIDENCE,PLAINTIFF RELIZED THE DEFENSE EVIDENCE WAS DELIBERITLY DESTROYED. THE PLAINTIFF QUICKLY DROVE TO THE STABLES OFFICE STORE AND ASKED THE SALESMEN IF HE WOULD BE WILLING TO SIGN A DECLARATION STATEING THE FACTS OF THE DEC.7,2005 PURCHASE OF THE SX 4000 BROTHERS TYPE WRITER HE AGREED TO SIGN AT A NOTARY AND HAVE IT CERTIFIED. .

DEBORAH KRAMER, THE EXWIFE OF CHRIS ENGDAHL SR. ALSO SIGNED A DECLARATION STATING THAT THE CHRIS ENGDAHL SR. SIGNATURE WAS IN FACT HIS SIGNATURE AND DEBORAH KRAMER ALSO IDENIFIED THE HAND WRITING ON THIS VOLUNTARY STATEMENT OF FEB.1,2001 AS BEING REBECCA GUILIAN'S HAND WRITING. DEBORAH KRAMER ALSO PROVIDED (9) DOCUMENTS OF CHRIS ENGDAHL SR. HANDWRITING ON SCHOOL DOCUMENTS, SUPPORT, PAYMENTS AND ALSO MONEY ORDERS SIGNED BY REBECCA GUILIAN AND ALSO AN ENVOLOPE COPY PROVIDED BY DETECTIVE OSWALD SENT TO HIM FROM REBECCA GUILIAN WHICH ALSO MATCHES HER OTHER HAND WRITING, SHE HAD A POSSITIVE WAY SHE WROTE HER LETTER (R) THEY ALL LOOKED LIKE THE NUMBER (5) AND ALSO HER (Y) & (G) ALSO MATCHED THE VOLUNTARY STATEMENT OF FEB.1,2001 AGAINST THE OFFICER DANIEL TREXLER'S COVERUP OF THE JAN,29,2001 ATTEMPTED HOMICIDE ON THE PLAINTIFF'S LIFE.

IN CASE NO. 3729/2005 THE JURY FOUND THE PLAINTIFF NOT GUILTY ON COUNT (3) AND COUNT (6) WAS NEVER PRESENTED TO THE JURY, SO THAT WILL BE PURGED.

LEHIGH COUNTY DETECTIVE LEROY OSWALD KNEW HE DIDN'T HAVE A CASE AGAINST THE PLAINTIFF SO HE MANUFACTURED ONE AFTER THE ILLEGAL SEARCH AND SEIZURE ON FEB.8,2005.

( THIS MANUFACTURED EVIDENCE AND BRIBED OR COERCED OF BOTH) THESE (2) DEFENSE WITNESSES LEAD TO THE SEPT.1,2005 ARREST.

PAGE (34)

(39) CONTINUED.

## Officer's Obligation to Furnish Exculpatory Evidence to Prosecutor

A law enforcement officer is constitutionally required to promptly furnish material exculpatory information in his possession to the prosecutor's office. If you find that an officer knowingly and willfully ignored material exculpatory evidence and failed to promptly furnish it to the prosecutor in the criminal case against the plaintiffs, then you should find that the officer violated the plaintiff's constitutional rights. Newsome v. McCabe, 256 F.3d 747, 753 (7th Cir. 2001); McMillian v. Johnson, 101 F.3d 1363 (11th Cir. 1996); Sanders v. English, 950 F.2d 1152 (5th Cir. 1992) (rejected by, Schneider v. Simonini, 163 N.J. 336, 749 A.2d 336 (2000)); Brady v. Dill, 187 F.3d 104, 114 (1st Cir. 1999); Jones v. City of Chicago, 856 F.2d 985 (7th Cir. 1988).

## Obtaining False Statements

Where an officer knowingly induces or coerces a witness to make a false statement or to commit perjury, the officer has manufactured false evidence. The mere fact that a witness testifies falsely does not by itself require a finding that the officer who identified or obtained that witness manufactured evidence. If, however, you find that an officer has rewarded or threatened a witness to encourage him to make a statement that the officer knows is false, you should conclude that the officer has manufactured evidence. Similarly, if you find that an officer has planted information in the mind of the witness that the witness in fact had no knowledge of, you should conclude that the officer has manufactured evidence. In addition, if you find that an officer used investigative techniques that were so coercive and abusive that he knew or should have known that those techniques would yield false information, you should conclude that the officer has manufactured evidence, even if he did not know that the evidence was false. Pyle v. State of Kansas, 317 U.S. 213, 63 S. Ct. 177, 87 L. Ed. 214 (1942); Limone v. Condon, 372 F.3d 39 (1st Cir. 2004); Manning v. Miller, 355 F.3d 1028 (7th Cir. 2004); Zahrey v. Coffey, 221 F.3d 342 (2d Cir. 2000); Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001).

The court limited the effect of *Albright* on Fourteenth Amendment claims to "eschewing reliance upon substantive due process to create a requirement of probable cause to initiate a prosecution."[8] The court held that the manufacturing of evidence and knowing use of that evidence along with perjured testimony to obtain a wrongful conviction deprives a defendant of his long recognized right to a fair trial secured by the Due Process Clause.[9] As noted by the dissent, the court did not follow through on its insistence on clarity, however, and failed to specify whether it was speaking about substantive or procedural due process, despite its further conclusion that this due process claim could be made whether or not there was an adequate state remedy and would not be barred by the *Parratt* doctrine.

The court declared that the reading given both the Fourth and Fourteenth Amendments after *Albright* was: "deeply flawed. It swept too wide in two directions: simultaneously holding that *Albright* closed the door to any claim of a deprivation of due process and that the protections of the Fourth Amendment extended to events at trial."[10] In addition to recognizing the viability of some due process claims, the *Castellano* court also held that the Fourth Amendment does not protect against misconduct that occurs at trial, such as the use of manufacture evidence or perjury.

Prior to *Albright*, a number of courts had indicated that malicious prosecution might form the basis for an action under § 1983.[11] The continuing validity of these cases will depend upon resolution of the Fourth Amendment malicious prosecution theory. Other courts had put substantial limitations on malicious prosecution actions under § 1983.[12] It is unclear whether the strictures imposed by courts which employed a substantive due

---

[7]352 F.3d at 945. The court discusses the law from other circuits in detail at 949-953.

[8]352 F.3d at 948.

[9]See § 2.30, fn. 13 for further discussion of this theory of liability.

[10]352 F.3d at 955.

[11]See Cook v. Sheldon, 41 F.3d 73 (2d Cir. 1994); Brummett v. Camble, 946 F.2d 1178, 1180 n.2 (5th Cir. 1991); Strength v. Hubert, 854 F.2d 421 (11th Cir. 1988); Raysor v. Port Auth., 768 F.2d 34 (2d Cir. 1985); Losch v. Borough of Parkesburg, 736 F.2d 903 (3d Cir. 1984); Dunn v. Tennessee, 697 F.2d 121 (6th Cir. 1982); Jennings v. Shuman, 567 F.2d 1213 (3d Cir. 1977); Dellums v. Powell, 566 F.2d 167 (D.C. Cir. 1977); Hampton v. Hanrahan, 600 F.2d 600 (7th Cir. 1979); Hand v. Gary, 838 F.2d 1420 (5th Cir. 1988) ("bad faith prosecution" violates constitutional rights); Nesmith v. Alford, 318 F.2d 110 (5th Cir. 1963).

[12]For pre-*Albright* cases either limiting or failing to recognize a cause of action for malicious prosecution, see Sanders v. Sears, Roebuck & Co., 984 F.2d

PAGE (36)

CONTINUED (39)

## Suppressing Exculpatory Information

Exculpatory evidence is evidence which tends to suggest the innocence of a person suspected of or charged with a crime. It includes evidence which tends to prove that the defendant did not commit the crime, evidence which suggests that the crime might have been committed by someone else, and evidence which might be used to impeach witnesses who would testify against the person accused. A defendant has a constitutional right in a criminal case to be furnished with material exculpatory evidence in the hands of the prosecution and the police. Exculpatory evidence is "material" when it would undermine confidence in a conclusion that the defendant was guilty of the crime. Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963); Kyles v. Whitley, 514 U.S. 419, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995).

(40)   STATE POLICE OFFICER STEPHEN BEDOR OF THE BUREAU OF FORENSIC SERVICES IN HARRISBURG, PA. FILED THE REPORTS AND HIS ANALYSIS OF THE  SX 4000 BROTHERS TYPE WRITER AND BROUGHAM # 10 TYPESTYLE AND THE PANASONIC R-545 TYPE WRITER, COURIER #10 TYPESTYLE.

( THESE TYPE WRITERS WERE ILLEGALLY SEIZED ON FEB.8,2005 FROM THE PLAINTIFF'S RESIDENCE.

OFFICER FEDOR'S TYPEWRITER EXAMINATION OF BOTH THE SX 4000 BROTHER TYPEWRITER AND THE R-545 ELECTRONIC PANASONIC TYPEWRITER CLEARLY SHOWED THAT THE PRINT AND CORRECTION RIBBONS TEXT WAS NOT FOUND ON EITHER TYPEWRITER, ALSO REMEMBER THE PANASONIC WAS USED FOR (9) TO (10) YEARS BEFORE THE PLAINTIFF PURCHASED THE SX 4000 BROTHERS TYPEWRITER ON DEC,7,2004 THEREFORE THE SX 4000 BROTHERS TYPEWRITER COULD NOT HAVE BEEN USED TO FORGE THE DOCUMENTS OF SEPT,2004 and JUNE 19,2001, also THIS OFFICER FEDOR DOES NOT STATE ANY REPORT OR ANALYSIS OF THE PRINTWHEEL ON THE R-545 PANASONIC TYPEWRITER HE DELIBERITLY OBSCURED THAT EVIDENCE THAT WOULD PROVE THE PLAINTIFF DID NOT FORGE THE (2) DOCUMENTS. BUT NOW OFFICER FEDOR STATES THAT THE TYPESTYLE FOUND ON BOTH OF THE FORGED DOCUMENTS IS CONSISTENT WITH THE PRINTWHEEL ON THE SX 4000 BROTHERS TYPEWRITER, BUT HE COULD NOT SAY WITH CERTAINTY OR WITH ANY FACTS THAT SHOWED THE PRINTWHEEL

PAGE (37)

CONTINUED (40)

ON THE SX 4000 BROTHERS TYPEWRITER ACTUALLY PRINTED THE (2) FORGED DOCUMENTS OF SEPT,9,2004 and JUNE19,2001.

OFFICER FEDOR EXPLAINED TO THE JURY HOW HE TESTS AND WHAT HE HAD LOOKED FOR WHEN HE ANALYZED A PRINTWHEEL, HE SAID HE LOOKED FOR CHIPS IN THE LETTERS, OR ONE LETTER IS FAINT OR DARKER, OR PERHAPS A CRACK IN THE LETTERS, BUT HE NEVER STATED ANY OF THIS EVIDENCE ON THE SX4000 BROTHERS TYPEWRITER, BECAUSE IT WAS BRAND NEW AND HAD NO VISIBLE EVIDENCE. IT IS THE PLAINTIFF.S BEST GUESS THAT THE OFFICER FEDOR SUPPRESSED THE EVIDENCE THAT WOULD EXONERATE THE PLAINTIFF FROM WRONG DOING OF THE FORGED DOCUMENTS AND ALSO EVEN A PERSON WITH HALF A BRAIN COULD SEE THAT THE PLAINTIFF'S HAND WRITING AND THAT OF CHRIS ENGDAHL SR. AND REBECCA GUILIAN WERE SO EXTREMELY DIFFERENT TO THE NAKED EYE.

OFFICER LEROY OSWALD COERCED THIS OFFICER FEDOR TO FALSIFY THE EVIDENCE IN ORDER TO CONVICT THE PLAINTIFF. SINCE THE (6) MAJOR CHARGES OF FORGERY COUNT(3) AND COUNT(6) WERE FOUND NOT GUILTY, OFFICER OSWALD KNEW THOSE CHARGES WERE BOGUS FROM DAY ONE.

(41) THE ALLEGATIONS OF PARAGRAPHS (30) THROUGH (40) INCLUSIVE ARE INCORPORATED HEREIN AS IF FULLY SET FORTH AT LENGTH.

(42) THE UPPER SAUCON TOWNSHIP AND ITS POLICE OFFICERS RETALIATED AGAINST THE PLAINTIFF BECAUSE HE BLEW THE WHISTLE ON THEM FOR THE ILLEGAL SEWAGE DISCHARGES UNTO THE PLAINTIFF'S PROPERTY WITH CONTAMINATED SEWAGE THAT FLOWED INTO THE SAUCON CREEK FOR YEARS KILLING FISH AND TURTLES, THE PLAINTIFF PLEADED WITH THE UPPER SAUCON TOWNSHIP OFFICIALS TO STOP THIS ILLEGAL DISCHARGES UNTO THE PLAINTIFF'S PROPERTY DESTROYING THE VALUE OF HIS COMMERICAL PROPERTY AND LEAVING POLLUTED SEWAGE DUST THE PLAINTIFF WAS FORCED TO FILE AN OFFICIAL COMPLAINT WITH THE DEPARTMENT OF ENVIRONMENTAL PROTECTION IN HARRISBURG,PA. MR LEE OBERDICK HEAD OF THE DEPARTMENT FOR SEWAGE TREATMENT PLANTS IN PENNSYLVANIA DIRECTED (2) INSPECTORS TO INVESTIGATED THE PLAINTIFF'S COMPLAINTS OF ILLEGAL DISCHARGES UNTO HIS COMMERCIAL PROPERTY.

PAGE (38)

The court held that abuse of process will support a claim under § 1983 in Cook v. Sheldon.[3]

## § 2:16   Retaliatory prosecution

Retaliatory prosecutions may be subject to remedy under § 1983. In order to establish a prima facie case of First Amendment retaliation, a plaintiff must demonstrate that (1) the plaintiff's conduct was constitutionally protected; and (2) the plaintiff's conduct was a "substantial factor" or "motivating factor" in the defendant's challenged actions.[1] Where an officer attempts to punish a person for the exercise of First Amendment rights by filing a criminal charge against him, there is a potential cause of action under the Fourth and First Amendments.[2]

In *Hartman v. Moore*,[3] the Supreme Court held that a plaintiff in a retaliatory prosecution claim must plead and prove the absence of probable cause for the prosecution in order to have a cause of action. Justice Souter's opinion for the Court argued that it is difficult to prove that retaliatory animus caused a criminal charge to be brought, because the charge is actually filed by a prosecutor, not the officer who is alleged to be engaged in retaliation. The absence of any probable cause may help prove the link between the retaliatory animus of the officer and the filing of the charge by the prosecutor, and so the Court held it is a required element of a prima facie case. Justice Souter reached this conclusion even though he acknowledged that the presence or absence of probable cause is actually not dispositive of whether a prosecution was initiated for the purpose of retaliation. He

---

an abuse of process, where officers actually sought to have plaintiff convicted of criminal charges).

[2]Jennings v. Shuman, 567 F.2d 1213, 1219 (3d Cir. 1977).

[3]Cook v. Sheldon, 41 F.3d 73 (2d Cir. 1994).

**[Section 2:16]**

[1]Abrams v. Walker, 307 F.3d 650, 654 (7th Cir. 2002) (abrogated on other grounds by, Spiegla v. Hull, 371 F.3d 928, 21 I.E.R. Cas. (BNA) 577, 150 Lab Cas. (CCH) P 59878 (7th Cir. 2004)), citing Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 471, 1 I.E.R. Cas (BNA) 76 (1977).

PAGE (39)

(43)   ON JAN.21,2004 THE PLAINTIFF WAS RELEASED FROM PRISON IN
LEHIGH COUNTY. ON FEB.15,2004 THE PLAINTIFF WENT TO HIS
NURSERY AT 5516 VERA CRUZ RD., CENTER VALLEY TO DO INVENTORY
LISTING OF AVALIBLE LARGE TREES FOR LANDSCAPING. THE PLAINTIFF
HAD SOLD 135 SECOND GRADE LARGE TREE SURPLUS TO A NEW YORK
LANDSCAPER BY THE NAME OF MIKE LEMCKE, BUT AFTER TAKING MY
INVENTORY FIND ABOUT 142 ADDITIONAL LARGE TREES MISSING AND
WHEN THE LARGE TREE FOLIAGE CAME IN MAY OF 2004 THE PLAINTIFF
WITNESSED (9) LARGE TREES PLANTED AT THE FARMERS DAUGHTERS
HOME ADJACENT TO THE PLAINTIFF'S NURSERY, THE PLAINTIFF HAD
DRIVEN OVER TO THE RICES HOME TO CHECK FOR SURE ABOUT THE
(9) LARGE TREES, THEY DEFINITELY WERE THE TREES STOLEN FROM
THE PLAINTIFF'S SPECIMEN STOCK TREE BLOCK. WHEN JAMES RICE
CAME HOME THE PLAINTIFF CONFRONTED THAT MIKE LEMCKE DUG
THE TREES AND PLANTED THEM AT HIS HOME, THE PLAINTIFF SAID
 WHAT RIGHT DO YOU HAVE TRESPASSING IN MY NURSERY AND TAGGED
MY SPECIMEN STOCK WHEN I HAVE TWO SIGNS BY THE DRIVEWAY
ENTRANCE WAY STATEING (NO TRESPASSING) JAMES RICE WALKED
INTO HIS HOME AND THOUGHT THAT HE COULD GET AWAY WITH IT
BECAUSE FOR (3) MONTHS HE NOR HIS WIFE ANITA EVER SAID A
WORD ABOUT THE TREES, SO I KNEW THEY HAD NO INTENDIONS
TO PAY FOR THEM AT ALL.

(44)   IN AROUND MAY 20,2004 THE PLAINTIFF WENT TO THE UPPER SAUCON
TOWNSHIP POLICE AND REQUESTED TO TALK TO THE DETECTIVE THEN
THOMAS J. NICOLETTI CAME IN AND ASKED WHAT THE PROBLEM IS,
THE PLAINTIFF STATED HE HAD (142 ) LARGE SPECIMEN TREES
THAT HAD BEEN STOLEN BY MIKE LEMCKE AND JAMES AND ANITA
RICE WORTH OVER $35,600.00 STOLEN WHILE I WAS INCARCERATED
DURING 2003, I INFORMED THE DETECTIVE THAT JAMES RICE HAD
ADMITTED HAVING MIKE LEMCKE DIG THEM AND PLANT THEM IN HIS
NEW HOME PROPERTY AT 5520 VERA CRUZ RD., CENTER VALLEY, THE
PLAINTIFF TOOK THE DETECTIVE OVER TO HIS NURSERY AND SHOWE
THE DETECTIVE WHERE THE TREES WERE DUG OUT OF AND (9) LARGE
TREES PLANTED AT THE RICES. THE PLAINTIFF DEMANDED THAT THEY

PAGE (40)

(44) CONTINUED:

BE CHARGED ALONG WITH MIKE LEMCKE OF NEW YORK. THE DETECTIVE
STATED HE WOULD COMPLETE A INVESTIGATION AND CALL YOU BACK WITH-
-IN A WEEK, WELL A WEEK PASSED, AN A MONTH PASSED, THE PLAINTIFF
DROVE BACK TO THE UPPER SAUCON TOWNSHIP POLICE DEPARTMENT AND
AGAIN REQUESTED TO SEE DETECTIVE NICOLETTI AND HE STATED HE IS
ALMOST FINISHED, THE PLAINTIFF ASKED HIM WELL WHAT HAVE YOU DONE
SO FAR, HE AVOIDED THE ANSWER AND SAID I'LL CALL YOU BACK OK.
(5) MONTHS PASSED AND EVERY TIME I WOULD CALL, THEY WOULD GET
 HIS VOICE MAIL, THE PLAINTIFF CALLED (7) TIMES AND LEFT THE
MESSAGES AND HE NEVER RETURNED ANY CALLS, I COMPLAINTED TO THE
POLICE CHIEF ROBERT COYLE AND DEMANDED  THEY BE CHARGED HE SMILED
AND SAID WE'LL GET RIGHT ON IT. BUT NEVER A WORD.

   ( THIS IS DERELICTION OF DUTY AND ABETTING A CRIMINAL)


(45)  IN, MAY,20,2005  THE PLAINTIFF CONTRACTED (2) LANDSCAPERS
WHICH PURCHASED OVER 450 LARGE SURPLUS TREES, BOTH MEN TAGGED
THEIR TREES WITH RED,BLUE AND YELLOW . THE PLAINTIFF TAGGED ALL
OF HIS ORDERED SPECIMEN TREES WITH DOUBLE PINK TAGS SO THEIR
WOULD BE NO MIXUP OF TREES.

     THE CONTRACTORS HAD LOADED UP (12) LARGE PINK WEEPING CHERRIES
THAT WERE DUG BY THE PLAINTIFF WITH DOUBLE PINK TAGS WHILE  HE
WAS AWAY. ONLY BY LUCK THE PLAINTIFF WITNESSED THE CONTRACTORS
HAULING A TRUCK LOAD OF TREES TO A SITE IN BETHLEHEM TOWNSHIP
AND FOLLOWED THE TRUCKER, THE PLAINTIFF LOCATED HIS LARGE WEEPING
PINK CHERRIES PLANTED ON THAT SITE WITH DOUBLE PINK TAGS STILL ON
THEM. THE PLAINTIFF DROVE RIGHT TO UPPER SAUCON TOWNSHIP TO TALK
AGAIN TO THOMAS J. NICOLETTI AND FILED A COMPLAINT WITH HIM ABOUT
THE THEFT OF THE (12) LARGE JAPANESE PINK WEEPING CHERRIES AND
ASKED HIM TO FOLLOW ME TO THE BETHLEHEM TOWNSHIP SITE. HE REFUSED
TO GO, SO THE PLAINTIFF GAVE HIM DIRECTIONS TO SEE THE TREES AND
ALSO PROVIDED PHOTOGRAPHS. OFFICER NICOLETTI NEVER INVESTIGATED