PAGE (41)

(45) CONTINUED:

THE THEFT OR CHARGED ANYONE, MONTHS PASSED AND NEVER HEARD A
WORD OF ACTION ON HIS PART, SO THE PLAINTIFF AGAIN COMPLAINED
TO POLICE CHIEF ROBERT COYLE EXPLAINING THE THEFTS AND CHIEF
ROBERT COYLE NEVER DID ANYTHING EITHER ABOUT THE STOLEN TREES
THE (12) LARGE WEEPING CHERRIES WORTH $6,000.00.

( THIS IS DERELICTION OF DUTY AND AIDING AND ABETTING A CRIMINAL

(46) ON JAN.12,2006 WHILE THE PLAINTIFF WAS TAKING INVENTORY AT
HIS NURSERY AT 5516 VERA CRUZ RD.,CENTER VALLET,PA. 18034
IN UPPER SAUCON TOWNSHIP, (2) UPPER SAUCON TOWNSHIP POLICE
VEHICLES PULLED INTO THE PLAINTIFF'S NURSERY WHERE HE HAD
PLACED NO TRESPASSING SIGNS ON BOTH SIDES OF THE ENTRANCE
WAY, OFFICERS BRIAN HAWK AND AMEY L. GETZ APPROCHED THE PLAIN-
-TIFF AND ASKED WHAT ARE YOU DOING HERE, THE PLAINTIFF SAID
TAKING INVENTORY OF MY NURSERY STOCK FOR SALES, OFFICER HAWK
SAID YOUR NOT WANTED HERE SO LOAD UP AND LEAVE, YOUR TRESPASSING
THE PLAINTIFF, NO I'M NOT TRESPASSING I HAVE A LEASE SIGNED
BY THE FARMER, LLOYD LICHTENWALNER WHICH IS PAID UP UNTILL
NOV.23,2009  THE PLAINTIFF SHOWED THE OFFICERS A COPY OF THAT
EXTENDED LEASE. THE OFFICERS LOOKED AT THE LEASE AND SAID
REGUARDLESS, WE'LL GIVE YOU (10) MINUTES TO LOADUP AND LEAVE
, THE PLAINTIFF STATED I'M NOT DOING ANYTHING WRONG AND I HAVE
LEGAL RIGHT TO BE HERE. OFFICER BRIAN HAWK YELLED OUT IF YOU
DON,T LEAVE WE WILL FORCEFULLY DRAG YOU OUT AND ARREST YOU,
DO YOU HEAR ME MR. BENCKINI. THE PLAINTIFF DIDN'T WANT ANY
PROBLEMS SO HE LOADED HIS TOOLS AND DROVE OUT OF HIS NURSERY.

THE PLAINTIFF DROVE RIGHT OVER TO TALK TO POLICE CHIEF ROBERT
COYLE AND SHOWED HIM THE LEASE AGREEMENT AND ANOTHER CHECK
$2,500.00 TO EXTEND THE LEASE FOR ANOTHER (3) YEARS UNTILL
THE END OF NOV.23,2009, THE PLAINTIFF EXPLAINED HE MUST TAKE
INVENTORY IN ORDER TO LIST FUTURE SALES OF MY NURSERY STOCK
FOR SPRING CONTRACTS TO MAKE A LIVING AND PAY MY BILLS, THE
POLICE CHIEF STATED I'LL HAVE A TALK WITH THE OFFICERS AND
CALL YOU BACK TOMORROW AND LET YOU KNOW.

THE PLAINTIFF NEVER RECEIVED ANY CALL BACK FROM THE CHIEF
ROBERT COYLE, THE PLAINTIFF CALLED THE CHIEF ON JAN.15,2006

PAGE (42)

(46) CONTINUED:

AND DEMANDED THAT THE POLICE STAY OUT OF MY NURSERY, IF THERE
IS ANY PROBLEM THEN ITS A CIVIL ISSUE NOT A CRIMINAL ISSUE
THE POLICE HAVE NO LEGAL RIGHT TO FORCE ME OUT OF MY NURSERY
AND PREVENT ME FROM OPERATING MY BUSINESS AND HARASSING ME.

(THE POLICE OFFICERS HAD NO PROBABLE CAUSE TO PREVENT)

(47) ON MARCH 1,2006 AFTER NOT RECEIVEING AND INFORMATION FROM
THE UPPER SAUCON TOWNSHIP POLICE CHIEF, THE PLAINTIFF DROVE
OVER AGAIN TO HIS NURSERY AT 5516 VERA CRUZ RD., CENTER VALLEY
THE PLAINTIFF FIGURED IT MUST BE OK TO START TUNING UP HIS
EQUIPMENT AND TRUCKS AND SHARPEN THE DIGGER BLADES, THE PLAIN-
-TIFF WAS HAPPY TO GET BACK TO WORK AGAIN. ABOUT 1:30 PM.

(2) UPPER SAUCON TOWNSHIP POLICE OFFICERS, BRIAN HAWK AND
STEPHEN KUEBLER DROVE IN TO THE PLAINTIFF'S NURSERY THEY
APPROACHED THE  PLAINTIFF AND SAID ALRIGHT BENCKINI, WHAT
ARE YOU DOING HERE AGAIN, THE PLAINTIFF STATED I NEVER DID
HEAR ANYTHING FROM CHIEF COYLE ABOUT THE LEASE. WELL WHEN
YOU DIDN'T HEAR ANYTHING THEN YOU SHOULD STAY OUT OF HERE.

THE PLAINTIFF SAID LISTEN I'VE GOT ALOT OF BILLS AND I
NEED INCOME FROM MY BUSINESS AND YOU POLICE HAVE NO LEGAL
RIGHT  TO PREVENT ME FROM OPERATING MY BUSINESS HERE, THIS IS A
CIVIL ISSUE NOT A CRIMINAL ISSUE, IF YOU WANT TO ARREST
ANYONE ARREST JAMES AND ANITA RICE FOR STEALING $9,000.00
WORTH OF LARGE TREES OUT OF MY NURSERY. THE OFFICERS SAID
THATS NOT OUR CASE THIS IS, THE PLAINTIFF STATED YOU ARE
MAKING A BIG MISTAKE IN PREVENTING ME FROM OPERATING MY
BUSINESS. THE BOTH OFFICERS STATED YOU MUST LEAVE OR WE WILL
DRAG YOU OUT, BENCKINI. THE OFFICERS STATED YOU HAVE NO
LEGAL DOCUMENT ALLOWING YOU PERMISSION TO BE HERE AND UNTIL
YOU DO, YOU'VE GOT TO GO NOW, PERIOD, THE PLAINTIFF DROVE
OUT OF HIS NURSERY, THE PLAINTIFF THOUGHT WHAT I'M I GOING
TO DO FOR INCOME. ( I'M BROKE EXCEPT FOR SS CHECK.

(48) ON MAY 22,2006 THE PLAINTIFF OUT OF DESPERATION FOR INCOME
DROVE UP TO ALLENTOWN TO OBTAIN  PERMISSION FROM THE FARMERS
ATTORNEY BRUCE W. WEIDA REPRESENTING LLOYD LICHTENWALNER IN
HIS LEGAL AFFAIRS. THE PLAINTIFF EXPLAINED THE PROBLEMS HE

PAGE (43)

(48) CONTINUED:

    HAD ENCOUNTERED WITH THE UPPER SAUCON TOWNSHIP POLICE AND
NEEDED WRITTEN PERMISSION FROM YOU TO ENTER MY NURSERY.
ATTORNEY BRUCE W. WEIDA TYPED OUT A DOCUMENT OF PERMISSION
FOR GENE C. BENCKNI THE PLAINTIFF TO REMOVE HIS EQUIPMENT
FROM LLOYD LICHTEN WALNERS PROPERTY DURING THE WEEK OF MAY
,22,2006. THE PLAINTIFF WAS HAPPY, AND MADE COPIES TO KEEP
ON HAND TO SHOW THE POLICE IF THEY COME AGAIN.


(49) ON THE MORNING OF MAY 22,2006 QUICKLY DROVE TO HIS NURSERY
AT 5516 VERA CRUZ RD., CENTER VALLEY WITH HAPPINESS TO FINALLY
GET BACK TO WORK OF LANDSCAPING WHICH HE LOVED AND OPERATED
FOR OVER (35) YEARS WHILE HE RAISED HIS (5) CHILDREN WITHOUT
A WIFE. THE PLAINTIFF LOADED (4) LARGE SPECIMEN TREES THAT
HE HAD ON INVENTORY IN A HOLDING AREA THAT HE DESIGNED INTO
A $12,000.00 LANDSCAPE DESIGN IN MAY 10,2006, AND LOADED THE
TREES ON HIS 23' LANDSCAPE TRUCK AND THEN HOOKED THE TRAILER
AND LOADED HIS 1845-C CASE LOADER SO HE COULD START THE JOB
OF EXCAVATION AND TREE INSTALLATION.

(50) ON MAY 22,2006 AROUND 10:30AM. (3) UPPER SAUCON TOWNSHIP
OFFICERS CAME SPEEDING INTO THE FARM ENTRANCE WAY BLOCKING
THE PLAINTIFF'S EXIT TO THE VERA CRUZ RD., THE OFFICERS WERE
REAL MAD AND DEMANDED TO KNOW WHAT IN HELL DO YOU THINK YOU
ARE DOING BENCKINI, THE OFFICERS, BRIAN HAWK, STEPHEN KUEBLER
AND EDWARD HARTMAN YELLED OUT, YOU WERE RESTRICTED FROM EVER
COMING HERE TO YOUR NURSERY, WE'VE TOLD YOU BENCKINI TIME,
AND TIME AGAIN STAY THE HELL OUT OF HERE. THE PLAINTIFF TRYED
TO CALM THE OFFICERS DOWN, THE PLAINTIFF STAYED IN HIS TRUCK
IN FEAR OF THEM ATTACKING AND STARTING A FIGHT, THE PLAINTIFF
SAID HOLD ON PLEASE I HAVE A WRITTEN DOCUMENT OF PERMISSION
FROM BRUCE W. WEIDA THE ATTORNEY REPRESENTING THE LICHTENWALTER
AND SHOWED A COPY TO THE OFFICERS. THEY LOOKED AT IT AND HAD
MADE CALLS AND AFTER (25) MINUTES CAME BACK AND SAID YOUR NO
GOING ANYWHERE, BENCKINI SO UNLOAD THE TREES RIGHT WHERE YOU
ARE, THE PLAINTIFF SAID NO I'M NOT UNLOADING ANY TREES, ITS
MY PROPERTY I GREW THESE TREES AND NEED THEM FOR A LANDSCAPING
DESIGN TODAY, THEY MUST BE PLANTED QUICKLY BECAUSE OF THIS
HEAT OR THEIR WILL SURELY DIE, OFFICER EDWARD HARTMAN YELLED
DID YOU HEAR ME, UNLOAD THE TREES NOW OR ELSE

PAGE (44)

CONTINUED FROM (50)

YOU ARE GOING TO JAIL, THE PLAINTIFF SAID FOR WHAT, I'M NOT DOING
ANYTHING ILLEGAL I HAVE DOCUMENTED PERMISSION TO BE HERE AND YOU
ARE ILLEGALLY INTERFERING IN A CIVIL ISSUE WHERE YOU HAVE NO PROBABLE
RIGHT TO BE HERE STOPPING ME FROM OPERATING MY LEGITIMATE BUSINES
, I NOW HAVE WITNESSES TO WHAT YOU ARE DOING.

    THE PLAINTIFF, BEING REALLY UPSET STATED MOVE OUT OF MY WAY, I'M
LEAVING, THE (3) OFFICERS CAME OVER TO THE TRUCK DOORS AND OPENED
THEM, YOU BETTER UNLOAD THOSE TREES RIGHT NOW, THE PLAINTIFF YELL
MR. WHAT RIGHT DO YOU HAVE FORCING ME TO UNLOAD MY TREES. THE (3)
OFFICERS WOULD NOT ANSWER, WHAT REASON DO YOU HAVE ANSWER ME. THE
OFFICERS REFUSED TO ANSWER OR SAY ANYTHING. THE OFFICERS DEMANDED
AGAIN TO UNLOAD THE TREES, THE PLAINTIFF WAS AFFRAID TO GET INTO
A FIGHT WITH THEM SO HE UNLOADED THEM, THE PLAINTIFF SAID YOU'LL
PAY THE $2,000.00 FOR THESE TREES WHEN THEY DIE IN THIS HEAT MR..

    THE PLAINTIFF UNLOADED THE TREES AND LOADED HIS LOADER BACK UP
AND THE OFFICERS YELLED OUT LOUD, HOLD ON BENCKINI YOU'RE NOT GOING
ANY WHERE SO BACK THAT TRUCK UP INTO YOUR NURSERY AND PARK IT AND
DON'T COME BACK HERE OR YOU WILL BE CHARGED WITH MORE THEN JUST
UNLAWFUL TREPASS, THE (3) OFFICERS FOLLOWED THE PLAINTIFF BACK TO
HIS NURSERY WHILE HE PARKED HIS TRUCK AND TRAILER AND LOCKED IT
UP. THE OFFICERS YELLED WHERE ARE YOU GOING I'M WALKING HOME AND
REST IS NONE OF YOUR BUSINESS, I CAN TELL YOU ONE THING YOU WILL
PAY FOR THIS ILLEGAL EPISODE OF EVENTS.

(51) THE PLAINTIFF AND HIS CHILDREN PLANTED OVER 4,200 TREES OVER (2)
YEARS OF HARD WORK, WORTH WELL OVER $1,250,000.00 TO BE SOLD OVER
THE NEXT (6) YEARS FOR BUSINESS INCOME.


(52) THE PLAINTIFF'S EQUIPMENT STILL IN THAT NURSERY OF HIS WAS
A FORD 23' LANDSCAPE TRUCK, ONE CHEVY DUMP TRUCK 10 TON,
ONE (10) TON NEW TRAILER, ONE (6) TON TRAILER, ONE 1845-C
CASE LOADER, ONE 975 BOBCAT LOADER, ONE 50" CARETREE DIGGER
ONE 36" CARETREE DIGGER, ONE IRRIGATION PUMP, ONE 250GAL.
SPRAYING TANK, 650 TREE BASKETS, 600'OF IRRAGATION LINES &

PAGE (45)

(52) CONTINUED:

OVER 950 LARGE SPECIMEN TREES, TOTAL $285,000.00 AND THE
EQUIPMENT WORTH$175,000.00 TOTAL $460,000.00 IN BUSINESS
ASSETS.

THE UPPER SAUCON TOWNSHIP ACTED AS IF I STOLE ALL THESE
TREES I PURCHASED AND PLANTED. THE FARMER LLOYD LICHTENWALNER
SAID THE POLICE ARE PUSHING HIM TO HAVE YOU CLOSED UP.

(53) ON JUNE 23,2006 THE PLAINTIFF DROVE OVER TO TALK TO DOCTOR
LOIS GADEK THE OWNER OF THE ANIMALS IN DISTRESS, WHICH USED
TO BE OWNED BY LLOYD LICHTENWALNER A TOTAL OF 44 ACRES, THIS
OLD FARM HAS BEEN THE FAMILY FOR OVER A 150 YEARS AND HAS
OLD FARM ROADS ALONG EACH CROP FIELD FOR ACCESS TO THE CROP
THE PLAINTIFF ACTING IN GOOD FAITH WENT AND ASKED DOCTOR
LOIS GADEK FOR PERMISSION TO USE HER FIELD ROADS TO REMOVE
HIS EQUIPMENT SINCE THE LLOYD LICHTENWALNER AND THE UPPER
SAUCON TOWNSHIP POLICE ARE PREVENTING ME FROM REMOVING MY
TREES AND EQUIPMENT. DOCTOR GADEK WALKED UP TO THE FIELD SO
SHE COULD SEE WHERE THE PLAINTIFF WOULD DRIVE HIS TRUCKS AN
SAID I DON'T SEE ANY PROBLEM IF YOU STAY RIGHT ON THE FARM
ROAD. SHE STATED THE LICHTENWALNERS ARE A MOTLEY GROUP, THEY
THINK THEY CAN TRESPASS AND HUNT ON THIS LAND ANY TIME THEY
WANT. THE PLAINTIFF SAID I WILL NEED SEVERAL WEEKS AS I HAVE
THE TIME TO REMOVE THE TREES AND EQUIPMENT, DOCTOR GADEK
SAID THAT WILL BE OK. WITH ME SHE SAID(PERMISSION GRANTED)

(54. ON JUNE 25,2006 THE UPPER SAUCON TOWNSHIP POLICE OFFICER
AMEY L GETZ CALLED THE PLAINTIFF AS HE WAS LEAVING FOR CHURCH
AND ASKED IS THAT YOUR TRAILER AND LOADER PARKED ON ANIMALS
IN DISTRESS PROPERTY, THE PLAINTIFF SAID WHY YES IT IS. THE
OFFICER GETZ DEMANDED THAT THE PLAINTIFF REMOVE IT, THE
PLAINTIFF RESPONDED AND WHY, THE OFFICER SAID BECAUSE YOUR
TRESPASSING, THE PLAINTIFF, SAID NO I'M NOT I REQUESTED TO
OBTAIN PERMISSION AND DR. LOIS GADEK GRANTED THAT PERMISSION
TO ME TO ACCESS HER PROPERTY ON JUNE 23,2006,

PAGE (46)

CONTINUED FROM (54)

STATED HE HAD SEEN DR. LOIS ON JUNE 24,2006 AS SHE WAS LEAVING
THE BUILDING AND NEVER SAID A WORD TO ME AS SHE AND I WAVED TO
EACH OTHER. OFFICER GETZ SAID SHE WANTS YOU OFF RIGHT NOW, THE
PLAINTIFF SAID THATS A LIE, SHES NOT LIKE THAT. THE OFFICER AGAIN
DEMANDED ,MR. BENCKINI YOU'VE GOT (1) HOUR TO REMOVE THIS EQUIPMENT
OR WE'LL CONSIDER IT ABANDONED AND TOW IT AWAY. THE PLAINTIFF SAID
LET ME TALK TO DR. LOIS GADEK, THE OFFICERS STRICT MANNER SAID
YOU ARE NOT TALKING TO ANYONE, JUST MOVE THIS EQUIPMENT, THE PLAI-
-NTIFF SAID NO NOT LEGAL THE OWNER MUST GIVE ME (24) HOURS SINCE
SHE ORIGINALLY GAVE ME PERMISSION TO ACCESS HER PROPERTY. THE
OFFICER SAID YOU ONLY HAVE (45) MINUTES LEFT, YOU BETTER GET GOING
MR. BENCKINI, THE PLAINTIFF IN FEAR OF LOOSING HIS EQUIPMENT HAD
TAKEN HIS TRUCK OVER TO THE ANIMALS IN DISTRESS TO LOAD HIS TRAILER
AND LOADER. (2) MORE UPPER SAUCON TOWNSHIP POLICE OFFICERS BRIAN
HAWK AND STEPHEN KUEBLER GOT RIGHT IN THE PLAINTIFF'S FACE AND SAID
YOU'VE GOT (10) MINUTES TO GET THAT EQUIPMENT OUT OF HERE, THE
PLAINTIFF SAID I WANT TO TALK TO DR. LOIS GADEK, THE OFFICERS YELLED
YOU ARE NOT GOING TO TALK TO ANYONE AT ALL ABOUT ANYTHING, MR.
BENCKINI, THE OFFICERS GOT RIGHT IN THE PLAINTIFF'S FACE AND OFFICER
BRIAN HAWK PUSHED THE PLAINTIFF BACK AND SAID, MAN YOUR LOOKING
TO GET YOURSELF HURT, HE SAID COME ON, BENCKINI START SOMETHING
AND YOU'LL BE REALLY SORRY. THESE (2) OFFICERS ARE (35) YEARS
YOUNGER THEN THE PLAINTIFF AND THREATING HIM HARM EVEN THOUGH THEY
KNOW THE PLAINTIFF HAS LEUKEMIA AND THIS WHOLE INCIDENT IS VERY
DEPRESSING AND TRESSFUL TO HIS HEALTH AND ALL WITH OUT ANY LEGAL
RIGHT TO FORCE THE PLAINTIFF OFF THIS PROPERTY.THE PLAINTIFF DID
NOT WANT TO FIGHT IN A LOOSING BATTLE, SO HE LOADED UP HIS TRUCK
AND LOADER AND GOT INTO HIS TRUCK AND OFFICER STEPHEN KUEBLER SAID
I DON'T WANT TO SEE YOU BACK HERE AGAIN, THE PLAINTIFF I HAVE (45 )
LARGE TREES ON DR.LOIS GADEK'S PROPERTY STOCKED THERE, THE OFFICER
SAID FORGET IT YOU ARE NOT TO COME BACK HERE FOR ANY REASON.

PAGE (47)

CONTINUED (54)

ON JUNE 25,2006 OFFICER BRIAN HAWK FOLLOWED THE PLAINTIFF FROM
THE ANIMALS IN DISTRESS PROPERTY FOR (8) MILES TO MY CHURCH
WHERE I HAVE PERMISSION TO PARK MY EQUIPMENT, BECAUSE I HELP OUT
WITH LANDSCAPE MAINTENCE, OFFICER HAWK ASKED WHAT ARE YOU DOING
HERE IN THIS PARKING LOT, THE PLAINTIFF RESPONDED THATS NOT OF
YOUR BUSINESS, THE PLAINTIFF PHOTOGRAPHED THE OFFICERS VEHICLE IN
THE CHURCH PARKING LOT, THEN THE OFFICER PULLED BY THE PLAINTIFF'
TRUCK AND SAID YOU HAVE A TAIL LIGHT OUT AND SITED THE PLAINTIFF
FOR A TAIL OUT, BUT THERE WAS NO TAIL LIGHT OUT AT ALL. THE OFFIC
WAS HARASSING THE PLAINTIFF AND SAID IF YOU GO BACK TO THAT PROPE
WE'LL ARREST YOU ON SITE FOR SURE, THE PLAINTIFF SAID YOU DON'T
HAVE ANY LEGAL RIGHT TO KEEP ME OUT OF MY NURSERY AND PREVENT ME
FROM OPERATING MY BUSINESS.

## Excessive force and physical brutality

The claim of excessive force by law enforcement or other state officials states a cause of action under § 1983. The nature and elements of the claim differ according to the status of the victim and the type of governmental activity involved.[1]

In Graham v. Connor,[2] the Supreme Court held that the use of excessive force during an arrest, an investigatory stop, or any other "seizure" of a person at liberty is judged by Fourth Amendment standards.[3] The Court also held there is no single generic standard for all § 1983 excessive force claims, noting that § 1983 is not a source of substantive rights. The Court's conclusion that

---

[Section 2:18]

[1]As with every cause of action discussed in this chapter, we emphasize that no conclusion can be reached about liability in a given case without analyzing the effect of qualified immunity, discussed in chapter 3. By way of example, consider Parks v. Pomeroy, 387 F.3d 949 (8th Cir. 2004), cert. denied, 544 U.S.

PAGE (48)

(55) ON JUNE 10,2007 AFTER THE PLAINTIFF WAS RELEASED AFTER (6) MONTHS
OF INCARCERATION IN LEHIGH COUNTY PRISON IN CASES, 3729.2005 AND
2240/2006 THE PLAINTIFF WENT TO HIS NURSERY AT 5516 VERA CRUZ RD.
CENTER VALLEY,PA.TO CHECK ON HIS NURSERY AND EQUIPMENT, ALL OF THE
EQUIPMENT WAS GONE, THE BIG 975 LOADER AND 50" TREE DIGGER, FORK
LIFT,LOADER BUCKET, THE 1845-C SKID LOADER WITH (3) HOLE DRILLS
FOR PLANTING TREES, THE 36" CARETREE DIGGER, THE 10TON TRAILER,
THE 10 TON DUMP TRUCK, THE 6 ton TRAILER, THE SPRAYING TANK AND
PUMP, THE IRRAGATION PUMP, ALL THE 600' OF IRRIGATION HOSES AND
OVER 300 HUNDRED WIRE TREE BASKETS OF ALL SIZES.

I GUESSED AT THE LARGE SPECIMEN TREES, PERHAPS 300/400 TREES THAT
WERE DUG OUT AND REMOVED VALUED AT MIN. PRICE OF $300/1,000 PER
TREE TOTAL AMOUNT $,120,000.00 TO $250,000.00 for the trees STOLEN
AND $175,000.00 FOR THE STOLEN EQUIPMENT TOTAL $375,000.00.

I BLAME THE UPPER SAUCON POLICE DEPARTMENT IN THEIR OBSTRUCTION
OF THE PLAINTIFF TO LEGALLY OPERATE HIS BUSINESS AND ALSO OBSTRUCTION
AND PREVENT THE PLAINTIFF FROM REMOVING HIS TREES AND EQUIPMENT
ON DATES JAN,12,2006, MARCH 1,2006, MAY 22,2006 THE WEEK THE PLAI-
-NTIFF HAD WRITEN PERMISSION FROM THE LAND OWNER LLOYD LICHTENWALNER
ATTORNEY WHO SAID THE POLICE HAVE NO RIGHT TO STOP YOU FROM OPERATING
YOUR LANDSCAPE AND NURSERY BUSINESS, THE LAND OWNER SAID HE WAS
NOT ENVOLVED IN THIS SCHEME TO RUIN THE PLAINTIFF'S BUSINESS, AND
JUNE 25,2006, (4) DIFFERENT DATES. ALSO THE FARMER AND LAND OWNER
SIGNED A DECLARATION STATING THAT THE UPPER SAUCON TOWNSHIP BULLIED
THEIR WAY INTO THE PLAINTIFF'S NURSERY TO DUMP OVER #150BIG TRUCK
LOADS OF FILL SOIL AND ROCKS BLOCKING ROADS AND DIGGING AREAS IN
SEPTEMBER AND OCTOBER OF 2005 AND WHEN THE PLAINTIFF DEMANDED THE
COME AND REMOVE THIS FILL SOIL THEY REFUSED AND HUNG UP.

( THE PLAINTIFF HAD THE DECLARATION NOTARIZED ON OCT.10,2005)

(ATTORNEY BRUCE W. WEIDA OF ALLENTOWN,PA. DOCUMENTED AN )
(AUTHORIZED PERMISSION FOR THE PLAINTIFF ON MAY 22,2006)

PAGE (49)

CONTINUED (55)

THE OCTOBER 10,2005 DECLARATION CLEARLY STATES FARMER AND LAND
OWNER LLOYD LICHTENWALNER NEVER GAVE THE UPPER SAUCON TOWNSHIP
PERMISSION TO DUMP ANY SOIL IN THE PLAINTIFF'S NURSERY BUSINESS
TO BLOCK HIS BUSINESS OPERATION, BECAUSE THE PLAINTIFF( BLEW THE
WHISTLE) ON THEIR ILLEGAL SEWAGE TREATMENT PLANT AND WAS FORCED
TO BUILD A NEW ONE FOR (12) MILLION DOLLARS.

## Retaliatory prosecution

Retaliatory prosecutions may be subject to remedy under § 1983. In order to establish a prima facie case of First Amendment retaliation, a plaintiff must demonstrate that (1) the plaintiff's conduct was constitutionally protected; and (2) the plaintiff's conduct was a "substantial factor" or "motivating factor" in the defendant's challenged actions.[1] Where an officer attempts to punish a person for the exercise of First Amendment rights by filing a criminal charge against him, there is a potential cause of action under the Fourth and First Amendments.[2]

In *Hartman v. Moore*,[3] the Supreme Court held that a plaintiff in a retaliatory prosecution claim must plead and prove the absence of probable cause for the prosecution in order to have a cause of action. Justice Souter's opinion for the Court argued that it is difficult to prove that retaliatory animus caused a criminal charge to be brought, because the charge is actually filed by a prosecutor, not the officer who is alleged to be engaged in retaliation. The absence of any probable cause may help prove the link between the retaliatory animus of the officer and the filing of the charge by the prosecutor, and so the Court held it is a required element of a prima facie case. Justice Souter reached this conclusion even though he acknowledged that the presence or absence of probable cause is actually not dispositive of whether a prosecution was initiated for the purpose of retaliation. He

_____

an abuse of process, where officers actually sought to have plaintiff convicted on criminal charges).

[2]Jennings v. Shuman, 567 F.2d 1213, 1219 (3d Cir. 1977).

[3]*Cook v. Sheldon*, 41 F.3d 73 (2d Cir. 1994).

PAGE (50)

CONTINUED (55)

[1]Abrams v. Walker, 307 F.3d 650, 654 (7th Cir. 2002) (abrogated on other grounds by, Spiegla v. Hull, 371 F.3d 928, 21 I.E.R. Cas. (BNA) 577, 150 Lab Cas. (CCH) P 59878 (7th Cir. 2004)), citing Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 471, 1 I.E.R. Cas (BNA) 76 (1977).

(56) ON DEC.11,2006 UPPER SAUCON TOWNSHIP POLICE OFFICER THOMAS J. NICOLETTI AND POLICE CHIEF ROBERT COYLE FORMED A CONSPIRACY TO PLANT OFFICER NICOLETTI ON THE JURY LIST TO TAMPER WITH THE JURY, OFFICER NICOLETTI WAS SITTING ALL THE BACK IN THE LAST ROW HIDING SO THE PLAINTIFF COULDN'T SEE HIM, BUT THE PLAINTIFF WAS SKEPTICAL OF HIM, SO THE PLAINTIFF CHECKED THE JURY LIST AND FOUND OUT IT WAS OFFICER THOMAS J. NICOLETTI FROM THE UPPER SAUCON TOWNSHIP POLICE DEPARTMENT, WHO WAS ALREADY SELECTED FOR THE JURY BY THE DEPUTY DA. AMANDA LOVETT. AFTER ABOUT (2) HOURS OF JURY SELECTION I INFORMED MY ATTORNEY THAT HE WAS PLANTED THERE AND MY ATTORNEY INFORMED DA.AMANDA LOVE OF THE CONFLICT OF INTEREST, WHEN THE OFFICER WAS TAKEN OFF THE DISTRICT ATTORNEY'S SELECTION, OFFICER YELLED OUT, HE'S GUILTY AND (27) JURORS HEARD THE STATEMENT AND THE JURY WAS DISMISSED BECAUSE OF IT AFTER (3)HOURS OF INTERVIEWING JURORS THIS WAS A CONSPIRACY TO DEPRIVE THE PLAINTIFF OF A FAIR TRIAL IN CASES 3729/2005 AND 2240/2006.

ON DEC. 2006 A NEW JURY WAS SELECTED WHICH CONSISTED OF ALL PRESENT OR PAST EMPLOYEES OF THE GOVERMENT OR RELATED TO PERSONS AFFILIATED WITH THEM IT DIDN'T LOOK GOOD FOR THE PLAINTIFF.

(57) ON AROUND OCTOBER 15,2006 THE DEPUTY DA.MATTHEW WEINTRAUB WAS PROSECUTING THESE CASES AND GOT CANNED BY THE CONDUCT BOARD FOR VIOLATIONS AGAINST THE PLAINTIFF IN A PRIOR CIVIL SUIT & COMPLAINT FILED WITH THE CONDUCT BOARD, WHEN HE SEEN THE PLAINTIFF IN THE HALL AT UNITED STATES DISTRICT HE CURSED THE PLAINTIFF

PAGE (51)

CONTINUED (57)

AND THE PLAINTIFF RESPONDED IF YOU WERE AN HONEST ATTORNEY YOU
WOULDN'T BE IN THIS MESS.


(58) DEPUTY AMANDA LOVETT VIOLATED THE PLAINTIFF'S RIGHTS BY
     SUPPRESSING THE MARCH 16,2006 ORIGINAL VOLUNTARY STATEMENT
     THAT THE PLAINTIFF PRESENTED TO OFFICER WILLIAM C. NAHRGANG
     OF THE COOPERSBURG POLICE DEPARTMENT, BECAUSE THE PLAINTIFF
     WAS FALSELY CHARGED BY CLAIMING IT WAS A COPY OF THE FIRST
     ORIGINAL VOLUNTARY STATEMENTS, WHICH WAS FALSE AND THE (3)
     DOCUMENTS ALSO PRESENTED TO OFFICER NAHRGANG WERE SUPPRESSED
     ENTIRELY BECAUSE THE DISTRICT ATTORNEY'S OFFICERS, OFFICER
     LEROY OSWALD AND DEPUTY DA. AMANDA LOVETT KNEW AFTER READING
     THE NEW ORIGINAL VOLUNTARY STATEMENT OF THE HOMICIDE HIT &
     RUN ACCIDENT ON SEPT,3,1999 THAT WAS NEVER SOLVED AND IF THEY
     PRESENTED THE NEW ORIGINAL VOLUNTARY STATEMENT IT WOULD HAD
     EXPOSED POLICE CHIEF DANIEL TREXLER OF HIS CRIMINAL ACTS.
      UNDER RULE 573 OF DISCOVERY THE PLAINTIFF WAS ENTITLED TO
     A COPY OF THE EVIDENCE TO DISPUTE THE REAL FACTS OF THE CASE
     NONE OF THE (3) DOCUMENTS WERE EVER PRESENTED TO THE PLAINTIFF
     OR HIS ATTORNEY AND OFFERED TO THE JURY AS EXHIBITS SO THE
     JURY COULD FORM AN HONEST VERDICT, THE PLAINTIFF WAS DEPRIVED
     OF A FAIR TRIAL ON CHARGES AND CRIMES THAT HE NEVER COMITTED.

     ( HIS CONSTITUTIONAL RIGHTS WERE VIOLATED AND DEPRIVED)
                (OF THE DUE PROCESS CLAUSE)
## Suppressing Exculpatory Information

Exculpatory evidence is evidence which tends to suggest the in-
nocence of a person suspected of or charged with a crime. It
includes evidence which tends to prove that the defendant did
not commit the crime, evidence which suggests that the crime
might have been committed by someone else, and evidence which
might be used to impeach witnesses who would testify against
the person accused. A defendant has a constitutional right in a
criminal case to be furnished with material exculpatory evidence
in the hands of the prosecution and the police. Exculpatory evi-
dence is "material" when it would undermine confidence in a
conclusion that the defendant was guilty of the crime. Brady v.
Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963)

PAGE (52)

CONTINUED (58)

DURING THE JURY TRIAL OF DEC.15,2006, THE PLAINTIFF TOOK NOTICE
THAT WHEN A DEFENSE EXHIBIT WAS PLACED ON THE COUNTER IN FRONT
OF THE COURT REPORTER AND WHEN THE DEPUTY D.A. AMANDA LOVETT PLACE
AN EXHIBIT ON THAT COUNTER SHE WOULD TURN THE DEFENSE EXHIBIT UP
SIDE DOWN. ALSO WHILE THE DEPUTY DA. AMANDA LOVETT QUESTIONED THE
PLAINTIFF, SHE WOULD ALWAYS INTERRUPT THE PLAINTIFF IN ORDER TO
PREVENT THE TRUTH FROM BEING HEARD, FOR INSTANTANCE THE FIRST ORIGINAL
VOLUNTARY STATEMENT THAT THE PLAINTIFF WAS CHARGED WITH, SHE HAD
SHOWED THE DOCUMENT FROM A DISTANCE OF (5/6') AWAY AND ASK IF YOU
RECOGNIZE THIS DOCUMENT, THE PLAINTIFF WOULD,I CAN'T SEE IT, WOUID
YOU COME FORWARD AND SHE WOULD MAKE (1) STEP FORWARD AND SWING AWAY
THE PLAINTIFF RESPONDED IS THAT THE FIRST ORIGINAL OR SECOND ORIGINAL
VOLUNTARY STATEMENT OF THE HOMICIDE HIT AND RUN ACCIDENT OF SEPT.
3,1999, she would QUICKLY SAY I OBJECT YOUR HONOR AND THE COURT
WOULD SUSTAIN THE OBJECTION, THE PLAINTIFF WAS PREVENTED FROM TESIFING
ABOUT THE DOCUMENTS OR THE HOMICIDE HIT AND RUN ACCIDENT, SHE HAD
DEPRIVED THE PLAINTIFF FROM HIS TESTIMONY BEING PRESENTED SO THE
JURY COULD FULLY UNDERSTAND THE REAL FACTS OF THE CASE. ALSO THE
FORGED DOCUMENT OF THE POLICE NOTICE THAT DETECTIVE OSWALD CLAIMED
HE HAD FOUND IN THE RESIDENCE OF THE PLAINTIFF, DA.AMANDA LOVETT
WALKED IN FRONT OF THE ENTIRE JURY SHOWING THE MANUFACTURED COMPOSITE
POLICE NOTICE OF JUNE 19,2001 AND ASKED ME IF I RECONIZED IT, I
SAID NO, I HAVE NEVER SEEN THAT BEFORE AND THAT DOCUMENT IS A FORGERY
AND I CAN PROVE IT, THE PLAINTIFF CALLED OVER TO HIS ATTORNEY JASON
GIVE ME PHOTOGRAPH #107, he BROUGHT IT OVER THE PLAINTIFF SAID NOW
LOOK AT THIS ,SHE OBJECTED TO THE PHOTOGRAPH, I RESPONDED YOU ARE
OBJECTING TO MY EVIDENCE, THE COURT OVER RULED, THE PLAINTIFF SAID
NOW LOOK HERE, I WILL PROVE TO YOU THAT COMPOSITE DOCUMENT WAS A
MANUFACTURED EVIDENCE BY DETECTIVE OSWALD, IF YOU TAKE NOTICE THE
IS (2) LINES ON THE COMPOSITE DOCUMENT AND THERE ARE NO LINES ON
THE JUNE 19,2001 COLORED PHOTOGRAPH, THAT PROVES THE ALTERED COMPOSITE
WAS LATER MANUFACTURED BY DETECTIVE OSWALD. THE PHOTOGRAPH HAD THE
DATE ON IT PLUS THE LANECO STORE SIGN RIGHT ASIDE OF IT TO BE SELF-
-IVIDENT, UNFORTUNATELY THAT PHOTOGRAPH OF DEFENSE EVIDENCE GOT
LOST IN THE SHUFFLE OF EXHIBITS TO THE JURY, THE PLAINTIFF COULD
HAVE EXPLAINTED TO THE JURY THE CHAIN OF EVENTS AND FACTS, BUT WAS
PREVENTED AND DEPRIVED BY DEPUTY DA. AMANA LOVETT.

PAGE (53)

CONTINUED (58)

THE DEPUTY DA. AMANDA LOVETT AND DETECTIVE OSWALD WERE BEND ON
CONVICTING THE PLAINTIFF. ON DEC.15,2006 CASES 3729/2005 and 2240/2006
THE PLAINTIFF DEMANDED TO KNOW WHERE ARE MY (5) WITNESSES THAT
I WANTED TO HAVE THEM TESTIFY, MY ATTORNEY LIED TO ME THE WEEK
BEFORE AND SAID THEY ARE SUBPOENAED BUT NEVER SHOWED, I PAID THE
ATTORNEY JASON JENKINS A $3,500.00 RETAINER AND ANOTHER $2,500.00
THE START OF THE TRIAL AND ANOTHER $3,500.00 for THE HAND WRITING
EXPERT AND TYPEWRITER EXPERT THAT SHOWED UP ON DEC,15,2006  TO
TESTIFY, WHEN ATTORNEY JASON JENKINS PRESENTED THE EXPERT, DEPUTY
DA. AMANDA LOVETT OBJECTED TO THE DEFENSE EXPERT, BECAUSE HE HAD
NEVER PRIOR TO TODAY PRESENTED ANY QUALIFICATIONS OR REPOTS AND
HIS ANALYSIS OF THE EVIDENCE AND THE COURT SUSTAINED IT. HE HAD
WALKED OUT OF COURT WITH MY $3,500.00 AND NEVER PRESENTED ANY OF
DEFENSE EVIDENCE, THIS WAS MY ATTORNYES FAULT, WHICH DID A LOUSEY
JOB OF DEFENSE, BUT I COULD SEE THERE WERE TWO MANY SECRET TALKS
WITH DETECTIVE OSWALD AND DA. AMANDA LOVETT, JENKINS SOLD ME OUT
FOR A RESON OR BRIBED BY THE PROSECUTION.

   ON DEC.15,2006 WHILE THE PLAINTIFF WAS WAITING FOR THE JURY TO
RETURN ON THE SECOND FLOOR BALCONY AT ABOUT 6;00P.M.DETECTIVE
LEROY OSWALD AND DEPUTY DA. AMANDA LOVETT CAME WALKING THROUGH THE
OLD COURT HOUSE ENTRANCE WAY, THEY NEVER SEEN THE PLAINTIFF AND
AS THEY WALKED THROUGH THE SECURITY CHECK POINT I COULD HEAR THEM
LAUGHING  THEY WERE HAPPY, DEPUTY DA.AMANDA LOVETT SAID THEY HAD
FOUND BENCKINI GUILTY ON MOST OF THE CHARGES, NOW I MUST KNOW JUST
HOW SHE TAMPERED WITH THIS JURY IN ORDER TO KNOW THE VERDICTS BEFORE
THE COURT EXCEPTED THE JURY BACK AND THE FOREMAN READ THE VERDICTS

TO THE COURT. THE PLAINTIFF TOOK NOTICE THE SMILES AND DEMEANOR
OF THE DEFENDANTS BEFORE THE VERDICTS WERE READ, THEY KNEW ALREADY
BECAUSE THIS WAS A GROUP CONSPIRACY TO PREVENT THE PLAINTIFF FROM
MEETING HIS DEC.22,2006 DEAD LINE FOR THE COURT ORDER OF THE UNITED
STATES DISTRICT COURT CASE NO.05-5122,

( 54 )

CONTINUED ( 58 )
## Conspiracy

Plaintiffs have also alleged that the defendants participated in a conspiracy to engage in a mass search of Plaintiffs, in violation of Plaintiffs' constitutional rights.

A civil rights conspiracy is an express or implied agreement between two or more persons to deprive Plaintiffs of their constitutional rights.

To sustain the conspiracy charges, you must find the following by a preponderance of the evidence: (1) the existence of an express or implied agreement among the defendant officers to deprive plaintiffs of their constitutional rights, and (2) an actual deprivation of those rights resulting from the agreement.

To be liable as a conspirator, a defendant must be a voluntary participant in the common venture, although he or she need not have agreed on the details of the plan or even know who the other conspirators are. It is enough if the person understands the general objectives of the plan, accepts them, and agrees, either explicitly or implicitly, to do his or her part to further them.

To be a member of the conspiracy, the defendant need not join at the beginning or know all the other members or the means by which its purpose was to be accomplished.

Because direct evidence of a conspiracy is usually impossible to obtain, absent the testimony of a co-conspirator, circumstantial evidence is the usual manner of proving a civil conspiracy.

If you find from your consideration of all the evidence by a preponderance of the evidence that there was an agreement by two or more defendants to search Plaintiffs in violation of their civil rights and that a defendant agreed to do his or her part, either explicitly or implicitly, to facilitate the searches, then you should find the defendant liable for conspiracy.

Each conspirator is responsible for everything done by co-conspirators that follows from the execution of the common design as one of its probable and natural consequences, even though it was not intended as a part of the original design. A defendant, therefore, who is proved to be a member of a civil conspiracy is liable for a plaintiff's injuries caused by the conspiracy, even if his own personal acts did not proximately contribute to that injury.[1]

--------

[Section 12:31]

[1]Jones v. City of Chicago, 856 F.2d 985, 992 (7th Cir. 1988); Hampton v. Hanrahan, 600 F.2d 600, 621 (7th Cir. 1979), cert. granted in part, judgment rev'd in part, 446 U.S. 754, 100 S. Ct. 1987, 64 L. Ed. 2d 670 (1980); Scherer v.

(55)

(59)  ON DEC.15,2006 LEHIGH COUNTY DETECTIVE LEROY OSWALD WANTED
      TO PREVENT THE PLAINTIFF FROM PURSUING HIS CIVIL ACTION
      DEADLINE ON DEC.22,2006 ORDERED BY THE UNITED STATES COURT.
      ON DEC.15,2006 AFTER THE JURY DELIBERATED OFFICER OSWALD
      AND DEPUTY DA. AMANDA LOVETT HAD A SECRET MEETING WITHOUT
      THE DEFENDANT PRESENT ( THE PLAINTIFF) OFFICER OSWALD
      PRESENTED FALSE AND MANUFACTURED STATEMENTS, VERBALLY BY
      THE PLAINTIFF'S WITNESSES IN HIS REPORTS, CLAIMING ALL OF
      DEFENSE WITNESSES WERE AFRAID OF THE PLAINTIFF FOR FEAR OF
      THEIR LIFES, STATEING THAT THE PLAINTIFF WAS GOING TO KILL
      PEOPLE IF THEY DIDN'T TESTIFY FOR HIM. THE THIS INFORMATION
      WAS PRESENTED TO THE JUDGE WILLIAM PLATT, AFTER THE JURY
      VERDICTS WERE READ AND THE JURY LEFT, JUDGE PLATT INFORMED
      THE PLAINTIFF THAT HE DIDN'T THINK THE PLAINTIFF WOULD SHOW
      UP FOR THE SENTENCING, SO JUDGE PLATT REVOKED HIS $100,000,00
      BAIL AND SAID MR. BENCKINI I'M VERY DISTURBED BY WHAT I HAVE
      HEARD IN THIS TRIAL ABOUT YOU AND I CONSIDER YOU A DANGER
      TO THE COMMUNITY AND REVOKE YOUR BAIL AND REMAND YOU TO
      LEHIGH COUNTY PRISON TO AWAIT SENTENCING.
         THE PLAINTIFF RESPONDED, YOUR HONOR I NEVER HURT ANYONE
      OR THREATENED ANYONE AND I HAVEN'T HEARD ANYTHING THAT WOULD
      CONSTITUTE THIS ACTION ON THE COURTS PART AND ALSO I HAVE
      NEVER MISSED ANY COURT HEARINGS AND OWN MY OWN HOME AND A
      LANDSCAPE AND NURSERY BUSINESS.

         THE PLAINTIFF WAS A NERVOUS WREAK, HE WAS DEPRESSED AND
      COULDN'T SLEEP AT NIGHTS, LOST HIS APPETITE AND COULDN'T
      UNDERSTAND WHY THEY WOULD DO ALL THESE HARSH THINGS AGAINST
      PLAINTIFF. ON MARCH 6,2007 THE PLAINTIFF'S HEART STOPPED
      BEATING AND RUSHED DOWN TO MEDICAL AND THEN RUSHED TO THE
      SACRED HEART HOSPITAL, WHERE I WAS FOR (3) DAYS TRYING TO
      GET MY HEART BACK ON NORMAL RHYTHM AND PLACED ME ON MEDICATION.

         THESE PEOPLE THAT OFFICER OSWALD CLAIMED WERE AFRAID OF THE
      PLAINTIFF ARE THE SAME DEFENSE WITNESSES AGAINST THE POLICE ON
      JAN,29,2001 AND ALSO THE SAME PARENTS OF THE (6) CHILDREN I
      HELPED SUPPORT WITH FOOD AND CLOTHES PLUS ALL DAY TRIPS TO
      ZOOS, PARKS, LAKES, JERSEY SHORE AND NOTHING EVER WENT WRONG.

                        ( THIS IS THE GODS TRUTH)

PAGE (56)

(60)   ON MAY 18,2007 THE DAY OF PLAINTIFF'S SENTENCING AFTER (6)
MONTHS IN PRISON FOR CRIMES THE PLAINTIFF NEVER COMITTED
IN THE FIRST PLACE.
   DEPUTY DA. AMANDA LOVETT PRESENTED FALSE AND MANUFACTURED
EVIDENCE CLAIMING THAT THE PLAINTIFF HAD (3) PROBATION VIOLATION
AND MR. BENCKINI, THE PLAINTIFF IS NOT ENTITLED TO PROBATION
AND SHOULD BE REMANDED TO STATE PRISON TO SERVE HIS SENTENCE
THESE FALSE STATEMENTS AND MANUFACTURED EVIDENCE WAS IN
ORDER TO OBSTRUCT JUSTICE AND PREVENT THE PLAINTIFF FROM
PURSUING HIS CIVIL ACTION AT HAND AND OTHER CIVIL ACTION
STEMMING FROM THIS ILLEGAL INCARCERATION AND PERJURY OF ALL
PROSECUTION WITNESSES, JUDGE WILLIAM PLATT REQUESTED HIS
COURT SECRETARY TO SEARCH THE PLAINTIFF'S RECORD AND FOUND
THE PLAINTIFF HAD ONLY (1) PROBATION VIOLATION AND THEREFORE
ENTITLED TO PROBATION.
   THE PLAINTIFF WAS INCARCERATED FROM DEC.15,2006 UNTILL
JUNE 8,2007 AND COMPENSATION MUST BE PAID PLUS PUNITIVE
DAMAGES.

(61)   THE DEFENDANTS FORMED A CONSPIRACY AGAINST THE PLAINTIFF SO
IN ORDER TO DEPRIVE THE PLAINTIFF OF HIS CONSTITUTIONAL RIGHTS
BOTH COOPERSBURG BOROUGH AND UPPER SAUCON TOWNSHIP ALONG WITH
THERE POLICE DEPARTMENTS CREATED A HOSTILE ENVIRONMENT FOR
THE PLAINTIFF EVER SINCE THE PLAINTIFF (BLEW THE WHISTLE) ON
THEIR ILLEGAL SEWAGE TREATMENT PLANT THAT WAS FORCED TO CLOSE
BECAUSE OF POLLUTION AND ILLEGAL SEWAGE DISCHARGES ON THE
PLAINTIFF'S PROPERTY AND INTO THE SAUCON CREEK CLEAR WATERWAYS
KILLING FISH AND TURTLES.

   THE DEFENDANTS PREVENTED THE PLAINTIFF FROM OPERATING HIS
LEGAL LANDSCAPE AND NURSERY BUSINESS IN ORDER THAT HE WOULDN'T
OBTAIN THE FUNDS TO FIGHT THE DEFENDANTS.

(62)   **Specific theories of municipal liability—Inadequate supervision and discipline—Derivative nature of liability**

In City of Los Angeles v. Heller,[1] the Court held that if there is no constitutional violation, there can be no liability on the part of the individual officer or the government body. "If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point."[2] However, some courts have not followed the general rule in situations presenting distinguishing

---

**[Section 4:24]**

[1] City of Los Angeles v. Heller, 475 U.S. 796, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986).

[2] Heller, 475 U.S. at 799 (emphasis in original). See, e.g., Hicks v. Moore, 422 F.3d 1246, 1251, (11th Cir. 2005) (where reasonable suspicion existed for strip search of plaintiff, no supervisory liability or municipal liability even assuming "that it was the practice of Habersham County to strip search every detainee who was to be placed in the general population of the Jail."); Bowman v. Corrections Corp. of America, 350 F.3d 537, 546, 547, 62 Fed. R. Evid. Serv. 1485, 2003 FED App. 0413P (6th Cir. 2003) ("Here, if we uphold the jury's findings as to [individual defendants], there was no violation of Bowman's rights by anyone, even if CCA's policy implicitly authorized such a violation."); Jarrett v. Town of Yarmouth, 331 F.3d 140, 151 (1st Cir. 2003) (per curiam) (determination that plaintiff suffered no constitutional injury is dispositive of his municipal liability claim); Grazier ex rel. White v. City of Philadelphia, 328 F.3d 120, 124 n.5 (3d Cir. 2003) (once jury found that officers did not cause any constitutional harm, it no longer made sense to ask whether City caused them to do it; Fagan confined to substantive due process claim arising from police pursuit); Brown v. Commonwealth of Pennsylvania, Dept. of Health Emergency Medical Services Training Institute, 318 F.3d 473, 482 (3d Cir. 2003) (for there to be municipal liability, there must be a violation of plaintiff's constitutional rights); Cuesta v. School Bd. of Miami-Dade County, Fla., 285 F.3d 962, 970 n.8, 163 Ed. Law Rep. 101 (11th Cir. 2002)("Because we hold that Cuesta suffered no deprivation of her constitutional rights, we need not decide the question of whether the County's policy, in which all felony arrestees are strip searched, might deprive others of their constitutional rights."); Curley v. Village of Suffern, 268 F.3d 65, 71 (2d Cir. 2001) ("Following Heller, we have recognized that a municipality cannot be liable for inadequate training or supervision when the officers involved in making an arrest did not violate the plaintiff's constitutional rights."); Trigalet v. City of Tulsa, Oklahoma, 239 F.3d 1150, 1156 (10th Cir. 2001) ("In sum, we hold that absent a constitutional violation by the individual police officers whose conduct directly caused plaintiffs' injuries, there can be no municipal liability imposed on the City of Tulsa on account of its policies, customs, and/or supervision with regard to the individual defendants."); Young v. City of Mount Ranier, 238 F.3d 567, 579, 49 Fed. R. Serv. 3d 582 (4th Cir. 2001) ("The law is quite clear in this circuit that a section 1983 failure-to-train claim cannot be maintained against a governmental employer in a case where there is no underlying constitutional violation by the employee."); Treece v. Hochstetler, 213 F.3d 360, 364, 54 Fed. R. Evid. Serv. 862 (7th Cir. 2000)

PAGE (58)

THE PLAINTIFF'S DEFENSE WITNESSES DISAPPERED AND THIS WAS VERY PREJUDICIAL
TO THE PLAINTIFF'S CASE.

## Missing Witness and Evidence

When a potential witness or potential evidence is available to only one of the parties to a trial, and if that witness or that evidence is not produced at the trial, then the fact finder may draw an inference that the witness or evidence would have been unfavorable to the party. This inference is permitted only when it appears the witness has special information which is material to the issue; the witness's testimony

**5.** Commonwealth v. Hudson, 489 Pa. 620, 414 A.2d 1381 (1980); Commonwealth v. Tervalon, 463 Pa. 581, 345 A.2d 671 (1975); Commonwealth v. Elliott, 292 Pa. 16, 140 A. 537 (1928).

**6.** Commonwealth v. Mouzon, 456 Pa. 230, 318 A.2d 703 (1974); Commonwealth v. Coades, 454 Pa. 448, 311 A.2d 896 (1973); Commonwealth v. Lapcevich, 364 Pa.Super. 151, 527 A.2d 572 (1987); Commonwealth v. Larew, 289 Pa.Super. 34, 432 A.2d 1037 (1981). See also § 27:25 concerning a judge's charge to the jury.

**7.** Commonwealth v. Mouzon, 456 Pa. 230, 318 A.2d 703 (1974).

**8.** Commonwealth v. Thomas, 479 Pa. 34, 387 A.2d 820 (1978). See § 27:25 for the judge's charge to the jury.

**9.** Commonwealth v. Jones, 490 Pa. 599, 417 A.2d 201 (1980); Commonwealth v. Russell, 477 Pa. 147, 383 A.2d 866 (1978); Commonwealth v. Kennedy, 309 Pa.Super. 300, 455 A.2d 169 (1983).

## EVIDENCE; DIRECT & CROSS–EXAMINATION

(61)

would not have been merely cumulative; and there is no excuse for the witness's not being called.[1]

When, for example, the defendant raises the defense of alibi and testifies as to the existence of named alibi witnesses, if these witnesses are not called, it is permissible for the jury to draw the inference that the testimony of such witnesses would be adverse to the defendant.[2] In one case, a Commonwealth witness in a murder trial was listed on the indictment and was a physician who operated on the victim. The district attorney permitted that witness to leave the state and not appear at the trial, and did not notify the defense of its action until it was too late for the defense to secure that witness. The trial court committed reversible error when it refused to charge the jury that it could infer that the witness would testify adversely to the prosecution.[3]

A "missing witness" charge is not appropriate unless the party requesting it establishes some attempt to secure the witness;[4] the person not producing the evidence or witness has the power to produce it;[5] and the witness is not equally accessible to both parties.[6] A missing witness charge may not be[7] required when the Commonwealth establishes that its reason for not calling the witness was that the witness was an informant whose identity was confidential.[8]

As discussed in an earlier section,[9] if the uncalled witness is the spouse of the defendant, the inference that his/her testimony would have been unfavorable is not permitted.[10]

### § 29:40

1. Commonwealth v. Gilman, 485 Pa. 145, 401 A.2d 335 (1979); Commonwealth v. Jones, 455 Pa. 488, 317 A.2d 233 (1974); Commonwealth v. Chamberlain, 442 Pa.Super. 12, 658 A.2d 395 (1995), appeal quashed 543 Pa. 6, 669 A.2d 877 (1995) (citing Commonwealth v. Sam, 535 Pa. 350, 635 A.2d 603 (1993)); Commonwealth v. Bright, 361 Pa.Super. 261, 522 A.2d 573 (1987); Commonwealth v. Sparks, 342 Pa.Super. 202, 492 A.2d 720 (1985); Commonwealth v. Felder, 233 Pa.Super. 163, 335 A.2d 827 (1975). See § 17:14 for missing alibi witness. See also § 17:10 concerning the names and addresses of Commonwealth witnesses; § 27:25 as to the judge's charge to the jury; and discussion in § 27:33, Public Trials and Gag Orders.

2. Commonwealth v. Wright, 444 Pa. 536, 282 A.2d 323 (1971); Commonwealth v. Hill, 378 Pa.Super. 562, 549 A.2d 199

3. Commonwealth v. Jones, 455 Pa. 488, 317 A.2d 233 (1974).

4. Commonwealth v. Gilman, 485 Pa. 145, 401 A.2d 335 (1979); Commonwealth v. Stafford, 307 Pa.Super. 278, 453 A.2d 351 (1982).

5. Commonwealth v. Newmiller, 487 Pa. 410, 409 A.2d 834 (1979); Farley v. Southeastern Pennsylvania Transp. Authority, 279 Pa.Super. 570, 421 A.2d 346 (1980).

6. Commonwealth v. Newmiller, 487 Pa. 410, 409 A.2d (34 (1979); Farley v. Southeastern Pennsylvania Transp. Authority, 279 Pa.Super. 570, 421 A.2d 346 (1980).

7. Commonwealth v. Evans, 444 Pa.Super. 545, 664 A.2d 570 (1995).

8. Commonwealth v. Delligatti, 371 Pa.Super. 315, 538 A.2d 34 (1988).

9. Section 28:14 deals with spouses as witnesses against each other.

PAGE (60)


(62)   THE ALLEGATIONS OF PARAGRAPHS (41) THROUGH (61) INCLUSIVE
       ARE INCORPORATED HEREIN AS IF FULLY SET FORTH AT LENGTH.


(63)  THE PLAINTIFF REQUESTS THE HONORABLE COURT TO ALLOW THE RIGHTS
      TO AMEND THIS COMPLAINT AS SEEN FIT IN THE NEAR FUTURE.


## COUNT ONE

(64)  THE DEFENDANTS AS A DIRECT AND DELIBERATE RESULTS OF
      MALICIOUS PROSECUTION, FALSE EMPRISONMENT, FALSE ARREST,
      FABRICATED POLICE REPORTS, MANUFACTURED EVIDENCE, BRIBED
      AND COERCED DEFENSE WITNESSES ALONG WITH PERJURED TESTIMONY
      UNDER OATH, THE DEFENDANTS VIOLATED THE PLAINTIFF'S RIGHTS
      UNDER THE FOURTH AND FOURTHTEEN AMENDMENT OF THE CONSTITUTION
      RIGHTS TO BE FREE, THE PLAINTIFF WAS DEPRIVED OF THE(DUE
      PROCESS CLAUSE)  AND A VIOLATION OF SIXTH AMENDED RIGHTS,
      OBSTRUCTION OF JUSTICE, INTERFERING WITH DUE PROCESS OF THE
      UNITED STATES DISTRICT COURT ORDERS, SWITCHING DOCUMENTS
      IN A COVERUP OF A HOMICIDE HIT AND RUN ACCIDENT, AIDDING
      AND ABETTING A CRIMINAL, PREVENTING THE PLAINTIFF FROM THE
      LEGAL AND CONSTITUTIONAL RIGHT TO OPERATE HIS BUSINESS WITH
      OBSTRUCTION OF THE DEFENDANTS, CREATING A HOSTILE ENVIRNMENT
      IN THE COMMUNITY AGAINST THE PLAINTIFF.
      ( PLAINTIFF SEEKS DAMAGES EXCEEDING 5.5 MILLION DOLLARS)


(65)                  ## COUNT TWO


      THE DEFENDANTS  AFORESAID ACTIONS WERE OUTRAGEOUS,EGREGIOUS
      INTENTIONAL, WILLFUL, WANTON,RECKLESS, AND DELIBERATE
      DISREGARD FOR THE PLAINTIFF'S CONSTITUTIONAL RIGHTS, THE
      DEFENDANTS ENCOURAGED, CONDONED, AIDED AND ABETTED WITNESSES
      TO COMITT PERJURY, KNOWINGLY THAT WAS BEARING FALSE WITNESS
      AGAINST THE PLAINTIFF, CREATING A HOSTILE ENVIRONMENT FOR
      PLAINTIFF AND RUINING HIS BUSINESS INCOME AND LIVELY HOOD.

      ( THE PLANITIFF SEEKS COMPENSATORY DAMAGES AND PUNITIVE )
        DAMAGES IN EXCEEDING 5.5 MILLION DOL

PAGE (61)

(66)                    _____ COUNT THREE _____

    THE DEFENDANTS  COMPLETE INDIFFERENCE TO THE PLAINTIFF HAS
    CAUSED THE PLAINTIFF'S INCARCRATION WHICH CAUSED MENTAL
    INJURIES ON MARCH 6,2007 OF HEART FAILURE WHICH LEAD TO HIS
    BRAIN DAMAGE WHICH IS PERMANENT CAUSING ILL HEALTH AND LOSS
    OF BUSINESS INCOME, PAIN AND SUFFERING, MENTAL ANXIETY,ANGUISH,
    HUMILIATION, DISTRESS,STRESS, INABILITY TO FUNCTION NORMALLY
    AS A HUMAN, THE ILLEGAL PUNISHMENT OF A COMMONWEALTH WITNESS
    IN A HOMICIDE CASE, MALICIOUS SLANDER, OBSTRUCTION OF JUSTICE

    ( THE PLAINTIFF SEEKS COMPENSATORY DAMAGES, PUNITIVE DAMAGES

      ( IN EXCESS OF 5.5 MILLION DOLLARS)


(67) WHEREFORE THE PLAINTIFF, GENE C. BENCKINI T/A BENCKINI NURSERIES
    DEMANDS JUDGEMENT AGAINST THE DEFENDANTS ALONG WITH THE LOSS
    OF HIS NURSERY PROPERTIES AND NURSERY STOCK AND EQUIPMENT IN
    EXCESS OF A TOTAL $16.5 MILLION DOLLARS.


                          PRO-SE LITIGANT

                          GENE C. BENCKINI

                          612 LOCUST ST.
                          COOPERSBURG,PA. 18036

CERTIFICATION OF SERVICE

I GENE C. BENCKINI, ACTING AS PRO-SE PLAINTIFF IN THIS CIVIL ACTI
COMPLAINT IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN
DISTRICT OF PENNSYLVANIA ON AUGUST 28,2007 HAVE SENT A TRUE AND
CORRECT COPY THE OF FORESAID CIVIL ACTION COMPLAINT TO ALL OF THE
INTERESTED DEFENDANTS LISTED BELOW, UNITED STATES POSTAL SERVICE
OR BY CONSTABLE SERVICE WITHIN THE LEGAL TIME PERIOD FOR SERVICE
PREPAID SERVICE.

DEFENDANTS LIST TO SEND:                    GENE C. BENCKINI

UPPER SAUCON TOWNSHIP,et,al.,               612 LOCUST ST.

OFFICERS: BRIAN HAWK                        COOPERSBURG,PA. 18036
          STEPHEN KUEBLER                             &
          AMEY GETZ
          EDWARD HARTMAN                     P.O. BOX 663
          THOMAS J. NICOLETTI                QUAKERTOWN,PA.!*(%!
          POLICE CHIEF ROBERT COYLE
          BRIAN MC LAUGHLIN
          5500 CAMP MEETING RD.
          -CENTER-VALLEY,PA.-18034          DATE: Aug. 28,2007

COOPERSBURG BOROUGH:,et,al.,

    POLICE OFFICERS: POLICE CHIEF DANIEL TREXLER
                     BOROUGH MANAGER DANIEL STONE HOUSE
                     WILLIAM C. NAHRGANG
                     CHARLES WYCKOFF
                     JASON LEIDECKER
                     GERMAN SHEPHERD K-9 GRIM
                     5.NORTH MAIN ST.
                     COOPERSBURG,PA. 18036


    LEHIGH COUNTY DISTRICT ATTORNEY'S OFFICE: ,et,al.,;

                     DETECTIVES:  ANDY MEDELLIN
                                  SCOTT PARRY
                                  LEROY OSWALD
                                  DEPUTY DA. AMANDA LOVETT
                                  LEHIGH COUNTY COURT HOUSE:
                                  455 HAMILTON ST.
                                  ALLENTOWNPA. 18101