## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GENE C. BENCKINI | : | CIVIL ACTION |
| t/a | : | |
| BENCKINI NURSERIES, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| BRIAN HAWK, et al., | : | NO. 07-3580 |
| Defendants | : | |

### MEMORANDUM

Pratter, J.                                                        September 14, 2009

Pro se Plaintiff Gene C. Benckini, a frequent litigant in this Court, again has sued a number of law enforcement personnel.  Considering the Complaint most indulgently in order to give him all benefits of the doubt, Mr. Benckini alleges that Upper Saucon Police Department officers wrongfully denied him access to the land he leased for his nursery business, shoved him on one occasion, and issued to him a traffic citation for a tail light that was functioning properly.

Cross motions for summary judgment on behalf of Mr. Benckini and Upper Saucon Police Officers Brian Hawk, Stephen Kuebler, Amey Getz and Edward Hartman are now pending.  For the reasons set forth below, the Court will deny Mr. Benckini's Motion for Summary Judgment and grant the Upper Saucon Defendants' Motion for Summary Judgment.

### I.      The Legal Standard

Upon motion of a party, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed. R. Civ. P. 56©.  Summary judgment may be granted only if the moving party persuades the district court that "there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988).   An issue is "genuine" if a reasonable jury could possibly hold in the non-movant's favor with regard to that issue.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A fact is "material" only if its resolution could affect the result of the suit under governing law.  Id.

Evaluating a summary judgment motion, the court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).  If, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine issue of material fact, summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. 217, 322 (1986); Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987). The party opposing summary judgment must support each essential element of that party's opposition with concrete evidence in the record.  Celotex, 477 U.S. at 322-23.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).  This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense." Walden v. Saint Gobain Corp., 323 F. Supp. 2d 637, 642 (E.D. Pa. 2004) (citing Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976)).

The same standards and burdens apply on cross motions for summary judgment.  See Applemans v. City of Phila., 826 F.2d 214, 216 (3d Cir. 1987); Peters Twp. Sch. Dist. v.

2

Hartford Accident and Indem. Co., 833 F.2d 32, 34 (3d Cir. 1987).  Cross motions for summary

judgment

> are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waived judicial consideration and determination whether genuine issues of material fact exist.

Transportes Ferreos de Venezuella II Ca v. NKK Corp., 239 F.3d 555, 560 (3d Cir. 2001)

(quoting Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)).  Of course, when

presented with cross motions for summary judgment, the Court must and does consider the

motions separately.  See Williams v. Phila. Hous. Auth., 834 F.Supp. 794, 797 (E.D. Pa. 1993),

aff'd, 27 F.3d 560 (3d Cir. 1994).

To describe the background of this case for the purposes of the pending motions, the

Court sets out here only those facts of record that are undisputed.  They are construed in the light

most favorable to the non-moving party.  The Court disregards those factual allegations that

either party makes without any evidentiary support from the record.  See Celotex, 477 U.S. at

322-23; Jones v. United Parcel Service, 214 F.3d 402, 407 (3d Cir. 2000) (requiring more than

"unsupported allegations" to defeat summary judgment).  During the summary judgment stage,

"a plaintiff [opposing summary judgement] cannot rely on unsupported allegations, but must go

beyond pleadings and provide some evidence that would show that there exists a genuine issue

for trial." Jones, 214 F.3d at 407 (citing Celotex, 477 U.S. at 324).

The following factual recitation separately notes those instances where a party disputes

factual contentions made by the opposing party, but provides no evidentiary basis from the

record for those disputes, and, in that case, the opposing party's factual contentions are treated as

undisputed.  See Blaylock v. City of Philadelphia, 504 F.3d 405, 413 (3d Cir. 2007) (citing

3

Anderson, 477 U.S. 242) (when the record contradicts a party's description of the facts, it does

not create a genuine dispute).  Moreover, the Court has made every appropriate indulgence of

Mr. Benckini in light of his pro se status throughout the entire time this case has been pending.[1]


## II.     Factual Background

Mr. Benckini commenced this action in August 2007 when he filed suit against 18

defendants, including Coopersburg Borough, Upper Saucon Township, and various individuals

from those communities and Lehigh County.  The Court dismissed most of the claims, save only

limited § 1983 claims for violations of due process rights, excessive force and unlawful seizure

alleged against Upper Saucon Police Officers Brian Hawk, Stephen Kuebler, Amey Getz and

Edward Hartman, and a § 1983 claim against Lehigh County Detective Leroy Oswald.  See

Benckini v. Upper Saucon Township, No. 07-3580, 2008 U.S. Dist. LEXIS 38723 (E.D. Pa. May

13, 2008).  The Court's May 13, 2008 Memorandum recites the extensive factual background of

this case.  Id. at *3-9.  On April 21, 2009, the Court dismissed the remaining claim against

Detective Oswald.  See Benckini v. Hawk, No. 07-3580, 2009 U.S. Dist. LEXIS 33583 (E.D. Pa.

April 21, 2009).

---

[1] Pro se litigations such as Mr. Benckini are held to "less stringent standards" than trained
counsel, Haines v. Kerner, 404 U.S. 519, 520 (1972), and the Court "will apply the applicable
law, irrespective of whether the pro se litigant has mentioned it by name."  Dluthos v. Strasberg,
321 F.3d 365, 369 (3d Cir. 2003) (citing Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002)).
Nonetheless, pro se litigants are not permitted to totally ignore all rules and standards, and even
though "district courts are counseled to liberally construe pro se pleadings, all parties must
follow the Federal Rules of Civil Procedure."  Thomas v. Norris, Civ. No. 02-1854, 2006 U.S.
Dist. LEXIS 64347, at *11 (M.D. Pa. Sept. 8, 2006); see also Zilich v. Lucht, 981 F.2d 694, 696
(3d Cir. 1992) (noting that despite liberal construction of the complaint, pro se plaintiff "still has
before him the formidable task of avoiding summary judgment by producing evidence 'such that
a reasonable jury could return a verdict for [him].'") (quoting Anderson, 477 U.S. 242).

A summary of the remaining claims against Upper Saucon Police Officers Hawk, Kuebler, Getz and Hartman is included in this Memorandum in order to facilitate an understanding of the assertions Mr. Benckini has made and the evidence presented to the Court in connection with the specific pair of motions presently before the Court.  The remaining claims against the officers focus on interactions the officers had with Mr. Benckini on January 12, March 1, May 22, and June 25, 2006 at or near the Lichtenwalner Farm, a piece of property Mr. Benckini once used for his nursery business.

     **i.**     **January 12, 2006**

Officers Hawk and Gezt responded to a call reporting trespassing at the Lichtenwalner Farm on January 12, 2006.  The officers met with Lloyd Lichtenwalner, who owns the property, and his daughter, Anita Rice.  Mr. Lichtenwalner and Ms. Rice told the officers that their attorney had instructed Mr. Benckini to remove his equipment from their property by December 31, 2005, and they showed the officers a copy of a letter from the attorney to Mr. Benckini so instructing Mr. Benckini.  Defendants' Response to Plaintiff's Motion, Ex. A (Hawk Affidavit) ¶¶ 3-6; (Getz Affidavit)  ¶¶ 3-6.  See Ex. A (Weida letter 12/9/04).

Having received this information from Mr. Lichtenwalner, the officers found Mr. Benckini on the Lichtenwalner Farm and asked him what he was doing there.  Mr. Benckini told the officers that he leased the land for his nursery business.  Hawk Affidavit  ¶ 7. Mr. Benckini showed Officer Hawk several documents he claimed demonstrated his right to use the property. Defendants' Motion, Ex. B at 30 (Benckini Deposition 10/15/08).  Officer Hawk informed Mr. Benckini that the property owner wanted him to leave and that if he refused, he would be

arrested.  The officer told Mr. Benckini that any dispute regarding the property should be resolved through civil litigation.  Hawk Affidavit ¶ 9.  Mr. Benckini left the property.  Id. ¶ 8.

### ii.    March 1, 2006

Having received no indication from the police or Mr. Lichtenwalner that he could return to the property, but assuming that the passage of time cured any problems, Mr. Benckini returned to the Lichtenwalner Farm on March 1, 2006.  Benckini Deposition 10/15/08 at 128-29, 131, 133.  When he was at the property, Officers Hawk and Kuebler[2] arrived and again informed Mr. Benckini that he had to stay off of the property because Mr. Lichtenwalner wanted him to leave.  Id. at 122-132.  Again, Mr. Benckini told the officers that he had a lease for the land.  Id. at 128.  However, Mr. Benckini acknowledges that he had not been present for any conversation between the police and the Lichtenwalners and was unaware of what Mr. Lichtenwalner previously had told the officers about the land.  Id. at 129-130.

### iii.    Ejectment

On April 17, 2006 a Lehigh County arbitrator ruled against Mr. Benckini, finding him liable to Mr. Lichtenwalner for $1,000 and ejecting him from the Lichtenwalner Farm. Defendants' Motion, Ex. F.  Such ruling resulted from Mr. Benckini's appeal of an order dated January 26, 2006.  Id.  Mr. Benckini concedes that he had been lawfully ejected from the Lichtenwalner Farm before his interactions with police officers on May 22, 2006.   Benckini Deposition 10/15/08 at 134-35.

---

[2] Officers Hawk and Kuebler deny working on March 1, 2006 or encountering Mr. Benckini on that day.  See Defendants' Response to Plaintiff's Motion, Ex. A (Hawk Affidavit ¶ 12; Kuebler Affidavit ¶ 5).  However, in considering the underlying Motions, the Court will consider the interaction in the light most favorable to Mr. Benckini and consider as fact his assertion that he interacted with Officers Hawk and Kuebler on March 1, 2006.

### iv.     May 22, 2006

Mr. Benckini again returned to the Lichtenwalner Farm on May 22, 2006.  He loaded a number of trees and his loader onto his trailer and drove toward the exit.  As Mr. Benckini was leaving the Lichtenwalner Farm and heading onto Vera Cruz Road, Officers Hawk, Kuebler and Hartman stopped his truck and demanded that he unload the trees and leave his equipment on the property.  Plaintiff's Response to Defendants' Motion at 21.  See also Benckini Deposition 10/15/08 at 139-40 .  Mr. Benckini says he presented the officers with a copy of a letter from Mr. Lichtenwalner which Mr. Benckini understood entitled him to remove trees and equipment from the farm during the week of May 22, 2006.  Benckini Deposition 10/18/08 at 139.  But see Defendants' Motion, Ex. I (Weida letter 5/22/06) (stating that "Gene Benckini has permission to remove his *equipment* from the Lloyd Lichtenwalner farm during the week of May 22, 2006.") (emphasis added).[3]

While Mr. Benckini was speaking with the police officers, Mr. and Mrs. Lichtenwalner, their daughter, and their son-in-law walked up to Mr. Benckini's truck.  Mr. Lichtenwalner did not say anything, but Mrs. Lichtenwalner, who was visibly agitated, told the police officers that Mr. Benckini was supposed to vacate the property and owed them money.  Benckini Deposition 10/18/08 at 141-42.  The officers again demanded that Mr. Benckini unload the trees.  He refused, instead leaving the trees on his trailer and abandoning his truck and trailer at the Lichtenwalner Farm.  Id. at 146.

---

[3] Mr. Lichtenwalner's attorney, Bruce Weida, spoke with one of the officers present at the Lichtenwalner Farm on this day and informed the officer that "Gene Benckini has permission to remove the equipment only, and not the trees, from the...property."  Mr. Weida "informed the officers that Gene Benckini could take his equipment at that time, but that he was to leave the Lichtenwalner property, and not return."  Defendants' Response to Plaintiff's Motion, Ex. A (Weida Affidavit) ¶ 13.

### v.      June 25, 2006

On June 24, 2006, Officer Getz received a call about a trespasser on the Animals in Distress property, which is located adjacent to the Lichtenwalner Farm.  Officer Getz spoke with Lois Gadek, the president of Animals in Distress, and he learned that Dr. Gadek had given Mr. Benckini permission to drive through her property one time, but had not given him permission to park on the property or use it to gain access to the Lichtenwalner Farm.  Getz Affidavit ¶¶ 12, 14-15.  Officer Getz observed Mr. Benckini's trailer on the Animal in Distress property and saw damage to the property that appeared to have been caused by the trailer.  Id. ¶¶ 16-17.

The following day, Officer Getz called Mr. Benckini and told him that he had to remove his equipment from the Animals in Distress property, but that he should call for a police escort prior to entering the property.  Getz Affidavit ¶ 18.  Later that day, Officer Hawk went to the Animals in Distress property at the request of Officer Getz, and he observed Mr. Benckini entering the property.  At that time, Officer Hawk was aware of the ejectment order the Lichtenwalners had secured against Mr. Benckini .  Hawk Affidavit ¶¶ 13-15.

Employees of Animals in Distress informed Mr. Benckini that he had been given one-time permission to enter the property and had not been given permission to use the Animals in Distress property to access the Lichtenwalner Farm.[4]  Getz Affidavit ¶ 23.  Mr. Benckini attempted to approach the Animals in Distress office in order to speak with Dr. Gadek. Plaintiff's Response to Defendants' Motion at 27.  The police officers repeatedly told Mr.

---

[4] Mr. Benckini admits that he intended to access the Lichtenwalner Farm through the Animals in Distress property because he was concerned about being arrested if he tried to access the Lichtenwalner Farm directly due to the ejectment order and ongoing civil litigation.  Benckini Deposition 10/18/09 at 149-50.  Mr. Benckini testified that the Lichtenwalners "didn't want [him] to be there (the Lichtenwalner Farm) at the time because there was a confusion of what the lease was and how much was paid....There was a civil issue."  Id. at 150.

Benckini not to approach the Animals in Distress staff or seek out Dr. Gadek.  Getz Affidavit ¶ 26.  Mr. Benckini ignored their instructions because he "purely in good fai[th] wanted to clear up the misconception of who said what on June 25, 2006."  Plaintiff's Response to Defendants' Motion at 27.  Mr. Benckini testified during his deposition that he did not believe the police officers and wanted to hear from Dr. Gadek herself that his permission to use the Animals in Distress land had been revoked.  Benckini Deposition 10/18/08 at 164.

As Mr. Benckini walked toward the Animals in Distress office contrary to the officers' instructions, Officer Hawk approached him, saying that he was not to talk to anyone.  Mr. Benckini claims that Officer Hawk pushed him "back with both fists closed which jolted" Mr. Benckini.  Plaintiff's Opposition to Defendants' Motion at 27.[5]  The shove did not injure Mr. Benckini or cause him to fall.  Benckini Deposition 10/18/08 at 161.  Officer Getz cited Mr. Benckini for trespass by motor vehicle and criminal mischief.  Getz Affidavit ¶ 29.[6]

Mr. Benckini claims that after he left the land on June 25, 2006, Officer Hawk followed him and cited him for having a burned out tail light on his truck, even though all the vehicle's lights were in working order.  Id. ¶ 54.  Details about that interaction between Mr. Benckini and Officer Hawk follows in Section III.D of this Memorandum.

---

[5] Officers Kuebler  and Getz state in their affidavits that Officer Hawk did not have physical contact with Mr. Benckini on June 25, 2006.  See Defendants' Response to Plaintiff's Motion, Ex. A (Kuebler Affidavit; Getz Affidavit).  However, in considering the underlying Motions, the Court will consider the interaction in the light most favorable to Mr. Benckini and take his assertions about physical contact as true.

[6] As a result of these citations, Mr. Benckini was fined.  Benckini Deposition 10/18/09 at 179.  He did not appeal the fine.  Id. at 180.

**III.    Discussion**

    **A.        Constitutional Violations and Qualified Immunity**

Officers Hawk, Kuebler, Getz and Hartman assert that 1) they did not violate Mr.

Benckini's constitutional rights on January 12, March 1, May 22, or June 25, 2006, and 2) even

if they somehow violated his constitutional rights, they are entitled to qualified immunity for all

of their actions.  Claims made under § 1983 for damages against government officials like police

officers typically raise issues concerning the availability of qualified immunity.  Under the

defense of qualified immunity, "[g]overnment officials performing discretionary functions are

'shielded from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known.'"

Sharrar v. Felsin, 128 F.3d 810, 826 (3d Cir. 1997) (quoting Harlow v. Fitzgerald, 457 U.S. 800,

818 (1982)).

The Supreme Court has established a two-step test for determining whether an officer's

actions may be shielded from liability under the doctrine of qualified immunity.  First, the Court

must consider whether an officer's actions violated a constitutional right.  If the officer's conduct

did not violate a constitutional right, the analysis ends here.  Saucier v. Katz, 533 U.S. 194, 201

(2001).  However, if an officer's conduct did violate a constitutional right, the Court must

proceed to the second part of the test.  The Court must determine whether the constitutional right

at issue was clearly established in light of the specific factual circumstances of the particular

case.  Id. at 201-202.  "The relevant, dispositive inquiry in determining whether a right is clearly

established is whether it would be clear to a reasonable officer that his conduct was unlawful in

the situation he confronted."  Id. at 202.  The second step of the test requires consideration of

10

whether the officer can establish that he "mistakenly but reasonably believed that his actions were constitutionally permissible." Hung v. Watford, 2002 U.S. Dist. LEXIS 23064, at *2 (E.D. Pa. Dec. 3, 2002). Accordingly, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

### B.   Denial of Access to Nursery Property

Mr. Benckini alleges that the Defendant officers violated his Due Process rights on January 12, March 1, May 22, and June 25, 2006 by forcing him to leave the Lichtenwalner Farm and the Animals in Distress property. The Court finds that the officers did not violate Mr. Benckini's constitutional rights by asking him to leave the Lichtenwalner Farm and the Animals in Distress property, and that even if the officers had violated Mr. Benckini's constitution rights, they are entitled to qualified immunity.

In the situation at issue, as early as January 2006, the police officers had heard from Mr. Lichtenwalner, the known owner of the Lichtenwalner Farm, that Mr. Benckini had been instructed to vacate the property. Further, the police officers received calls from Mr. Lichtenwalner and his family, as well as from their attorney, throughout 2006 informing the officers that Mr. Benckini repeatedly was trespassing on the Lichtenwalner Farm.

Police officers are entitled to rely on the statements of seemingly reasonable and reliable witnesses. Leonardi v. Philadelphia, No. 87-6721, 1989 U.S. Dist. LEXIS , at *12-13 (E.D. Pa. Sept. 28, 1998) (collecting cases); Walker v. Montrella, No. 92-6558, 1994 U.S. Dist. LEXIS 1465, at *8 (E.D. Pa. Feb. 10, 1994); Colbert v. Angstadt, 169 F. Supp. 2d 352, 360 (E.D. Pa. 2001). Accordingly, based on information from the Lichtenwalners and their attorney, the

11

officers could have had probable cause to arrest Mr. Benckini for trespassing, but instead they simply asked him to leave the property and seek any personal redress regarding the property through civil litigation against the Lichtenwalners.

Mr. Benckini contends that the temporary deprivation of his use of the Lichtenwalner Farm (a piece of property in which he claims to have had a legal interest through a lease) by being instructed to avail himself of the courts rather than remain on the property against the Lichtenwalner's wishes, amounts to an actionable claim.  However, where post-deprivation process through civil courts is available, such temporary deprivations do not amount to a Due Process claims.  See, e.g., Dittrich v. Seeds, No. 03-6128, 2005 U.S. Dist. LEXIS 22229, at *46-47 (E.D. Pa. Sept. 28, 2005) ("Because Plaintiff has a sufficient post-deprivation cause of action under Pennsylvania law, and the Third Circuit has held that such an action is a sufficient remedy for their alleged property deprivation, Defendants are entitled to summary judgment....")

As to Mr. Benckini's interactions with officers on the Animals in Distress property on June 25, 2006, Mr. Benckini has not presented the Court with any evidence that he had a viable legal claim to the property.  At most, Dr. Gadek orally granted Mr. Benckini limited access to property owned by Animals in Distress.  Mr. Benckini had no lease and no other binding legal document regarding his access to the property.  Without a legal right to protect, a plaintiff can not make a claim for violations of his Due Process rights.  See, e.g., Hickey v. Commandant of Fourth Naval Dist., 461 F. Supp. 1085, 1095 (E.D. Pa. 1978) (finding that a Due Process claim must be based on the existence of a legally cognizable liberty or property interest).  Accordingly, Mr. Benckini had no rights to be on the Animals in Distress property and cannot base a Due Process claim on his being forced from the property.

12

Even if the officers' conduct in directing Mr. Benckini to leave the Lichtenwalner Farm had violated Mr. Benckini's constitutional rights, however, the officers would be entitled to qualified immunity due to the reasonableness of their actions. Through qualified immunity, "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The standard for applying qualified immunity is an objective one. "Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." Id. Further, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has been declared unlawful, but it is to say that the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1982) (internal citation omitted).

"Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." Brosseau v. Haugen, 543 U.S. 194, 198 (2004). "A court presented with a claim of qualified immunity must examine both the law that was clearly established at the time of the alleged violation and the facts available to the officer at that time, and must then determine, in light of both, whether a reasonable official could have believed his conduct was unlawful." Paff v.

Kaltenbach, 204 F.3d 425, 431 (3d Cir. 1999).  The officer's subjective intent is irrelevant.

Showers v. Spangler, 182 F.2d 165, 171 (3d Cir. 2000).

Assuming, *arguendo*, the existence of a constitutional violation, the Court must

determine whether the constitutional right in question was "clearly established" such that a

reasonable law enforcement officer could have believed that his conduct was lawful under the

circumstances.  Blackhawk v. Pennsylvania, 381 F.3d 202, 215 (3d Cir. 2004); see also,

Brosseau, 543 U.S. at 199 ("The relevant dispositive inquiry in determining whether a right is

clearly established is whether it would be clear to a reasonable police officer that his conduct

was unlawful in the situation he confronted.").

As explained above, in the January, March and May 2006 interactions with Mr. Benckini,

the police officers reasonably relied on the statements of the known owner of the Lichtenwalner

Farm and his family unequivocally stating that Mr. Benckini was trespassing on their property.

The officers did not over-react and arrest Mr. Benckini, but, instead, simply asked him to vacate

the property and seek redress of any alleged violations of his rights to the property through civil

litigation.[7]  The Court finds that it would not be clear to a reasonable police officer that his

conduct was unlawful where, on a knowledgeable third party's explicit request, the officer asked

a person to vacate property the officer knew was owned by the third party.

The Court finds that here the Defendant officers did not violate Mr. Benckini's Due

Process rights, and that even if they had, the officers are protected by the doctrine of qualified

---

[7] Mr. Benckini has not filed suit or advanced any claim against Mr. Lichtenwalner or any
member of his family regarding the alleged violation of his rights to the Lichtenwalner Farm.
Benckini Deposition 10/18/09 at 189-190.

immunity with respect to Mr. Benckini's claims that his constitutional rights were violated when the officers required him to leave the Lichtenwalner Farm and the Animals in Distress property.

### C.       Excessive Force – June 25, 2006

Mr. Benckini also claims that on June 25, 2006 when the USPD officers were forcing him from the land adjacent to the place where he operated his nursery business, Officers Hawk and Kuebler "got right in the plaintiff's face and Officer Brian Hawk pushed the plaintiff back and said, 'man your [sic] looking to get yourself hurt.'"  Compl. ¶ 54.  See also Plaintiff's Motion ¶ 29.  Mr. Benckini alleges that Officer Hawk pushed him "back with both fists closed which jolted" Mr. Benckini.  Plaintiff's Opposition to Defendants' Motion at 27.[8]  The evidence reveals that the force used in the situation was both minimal and objectively reasonable.

"[A]ll claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard."  Graham v. Connor, 490 U.S. 386, 395 (1989); Rivas v. City of Passaic, 365 F.3d 181, 198 (3d Cir. 2004).  A plaintiff alleging an excessive force claim must demonstrate that the arresting officer's seizure of the plaintiff was unreasonable.  Bronstad v. Honeybrook Twp., 211 Fed. App'x 118, 123 (3d Cir. 2007).  The right to use a certain degree of physical coercion or threat may accompany the right to make an arrest or an investigatory stop.  "'[N]ot every push or shove, even if it may later seem

---

[8] Officers Kuebler  and Getz state in their affidavits that Officer Hawk did not have physical contact with Mr. Benckini on June 25, 2006.  See Defendants' Response to Plaintiff's Motion, Ex. A (Kuebler Affidavit; Getz Affidavit).  However, in considering the underlying Motions, the Court will consider the interaction in the light most favorable to Mr. Benckini and take his assertions about physical contact as true.

unnecessary in the peace of a judge's chambers' violates the Fourth Amendment." Graham, 490

U.S. at 394 (quoting Johnson v. Glock, 481 F.2d 1028, 1033 (2d Cir. 1973)).

In deciding whether challenged conduct constitutes excessive force, a court must

determine the objective "reasonableness" of the challenged conduct, from the "perspective of a

reasonable officer on the scene," which requires "careful attention to the facts and circumstances

of each particular case." Id. at 396.   The Third Circuit Court of Appeals has held that a court

should consider a number of factors in judging the reasonableness of the use of force,

specifically:

> 1) the severity of the crime at issue; 2) whether the suspect poses an immediate threat
> to the safety of the officer or others; 3) whether the suspect is actively resisting arrest
> or attempting to evade arrest by flight; 4) the duration of the officers' action; 5)
> whether the action takes place in the context of effecting an arrest; 6) the possibility
> that the subject may be armed; 7) the number of persons with whom the police
> officers must contend at one time, and 8) whether the force applied was of such an
> extent as to lead to injury.

McCracken v. Freed, 243 Fed. Appx. 702, 709 (3d Cir. 2007) (non-precedential) (citing Sharrar

v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997)).

"The reasonableness of the use of force is normally an issue for the jury." Rivas v. City

of Passaic, 365 F.3d 181, 198 (3d Cir. 2004).   Nonetheless, "defendants can still win on

summary judgment if the district court concludes, after resolving all factual disputes in favor of

the plaintiff, that the officer's use of force was objectively reasonable under the circumstances."

Kopec v. Tate, 361 F.3d 772, 777 (3d Cir. 2004) (citations omitted).

Only certain of the factors listed in McCracken and Sharrar apply in this case.   On June

25, 2006, Mr. Benckini was not resisting arrest.   In fact, he was not being arrested, was not

armed, and was acting alone.   The only crimes alleged to have been committed by Mr. Benckini

16

were trespass and misdemeanor criminal mischief.  See Getz Affidavit ¶ 29.  Thus, these factors

do not assist in resolving the issue.  However, other factors, such as whether Mr. Benckini posed

a threat to others, the duration of Officer Hawk's physical actions, and whether Mr. Benckini

was injured do provide guidance for the Court.

        Considering the facts in the light most favorable to Mr. Benckini, even as he described it

his interaction with the officers lasted only minutes, and any force exerted against him was

limited to a single shove that did not result in any injury.  During the months prior to this

incident, the officers had been informed by both the Lichtenwalners and Dr. Gadek that that Mr.

Benckini repeatedly had trespassed on their properties and approached them.  The prior day, Dr.

Gadek had informed the police that Mr. Benckini was continuing to use the Animals in Distress

property even though she had given him only one-time access to the land.  Mr. Benckini had

previously argued with Lichtenwalner family members and police officers about his right to

access the Lichtenwalner Farm, and again the day in question, he chose to deny the officers'

statements about the situation and ignore their direct instructions.  In response, in an attempt to

prevent Mr. Benckini from approaching the staff of Animals in Distress,[9] Officer Hawk

apparently pushed Mr. Benckini once.  Just as it is not unconstitutional for a police officer to

push someone attempting to interfere with an arrest, even when such a push results in bruising, it

is not unconstitutional for a police officer to physically prevent someone from approaching a

third party.  See Jones v. City of Jersey City, 45 Fed. Appx. 196, 198 (3d Cir. 2002).  A single

push is not an unreasonable response to someone who repeatedly ignores direct orders from

_____

[9] Although Mr. Benckini does not agree with the officers' decision not to allow him to talk
directly with Dr. Gadek about the situation, such disagreement has no bearing on the Court's
consideration of whether Officer Hawk's actions were reasonable.

police officers and attempts to harass innocent third parties who do not wish to be further involved.

### D.       Traffic Stop – June 25, 2006

Mr. Benckini also alleges that on June 25, 2006, Officer Hawk followed him to his church parking lot, asked Mr. Benckini what he was doing at the church, and issued Mr. Benckini a traffic citation for a burned out tail light.  Complaint ¶ 54.  See also Plaintiff's Motion ¶ 34.  Mr. Benckini asserts that at the time his tail light was in working order.  Id. Officer Hawk avers that he had probable cause to stop Mr. Benckini for operating a commercial trailer "with a malfunctioning turn signal / tail light in the right rear."  Def. Motion, Ex. 1 ¶ 18 (Hawk affidavit).  Officer Hawk issued Mr. Benckini a warning rather than a citation for the alleged moving violation.  Id. ¶ 23.

An automobile stop is a Fourth Amendment "seizure" although "the purpose of the stop is limited and the resulting detention quite brief," so any stop must be reasonable under the circumstances to pass constitutional muster.  Delaware v. Prouse, 440 U.S. 648, 653 (1979).  "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."  Whren v. U.S., 617 U.S. 806, 810 (1996). "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."  Orsatti v. New Jersey State Police, 71 F.3d 480 , 483 (3d Cir. 1995).  "The temporary detention of individuals during an automobile stop by the police, even if only for a brief period, constitutes a seizure within the meaning of the Fourth Amendment.  Therefore, an automobile stop is subject to the Constitutional requirement

that the seizure not be 'unreasonable' under the circumstances." <u>Litzenberger v. Vanim</u>, No. 01-5454, 2002 U.S. Dist. LEXIS 13843 (E.D. Pa. July 31, 2002) (citing <u>Whren v. U.S.</u>, 517 U.S. 806, 809-10 (1996)).

Because qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law," <u>Blackhawk</u>, 381 F.3d at 215, a determination that probable cause was lacking does not require a finding that the arresting officer is liable for damages. <u>Paff</u>, 204 F.3d at 436. As the Supreme Court has explained, "it is inevitable that law enforcement officials will mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials – like other officials who act in ways they reasonably believe to be lawful – should not be held personally liable." <u>Anderson v. Creighton</u>, 483 U.S. 635, 641 (1987).[10]

With respect to the initial inquiry under qualified immunity, the standards of which are discussed above, Mr. Benckini has presented sufficient evidence to, at a minimum, raise a genuine issue as to whether a constitutional violation occurred. Officer Hawk asserts that he observed Mr. Benckini pulling a trailer with a malfunctioning light, but Mr. Benckini claims that his lights were in working order. Considered in the light most favorable to Mr. Benckini, the evidence reveals a material fact in dispute, namely, whether or not Mr. Benckini's tail light was in working order. Accordingly, the Court will look to the second part of the test for qualified immunity, that is, whether the constitutional right to be free from unlawful seizures was clearly established in light of the specific factual circumstances of the present case.

In this case, there is no question that the right at issue, namely, the right to be free from seizure through traffic stops except when made with probable cause, was clearly established at

---

[10] The issue of qualified immunity must be resolved at the earliest possible time because the privilege will be effectively lost if the case is erroneously permitted to go to trial. <u>Bennett v. Murphy</u>, 274 F.3d 133, 136 (3d Cir. 2001).

the time Officer Hawk stopped Mr. Benckini's truck.  See Prouse, 440 U.S. at 653.  However, after determining that a right was clearly established at the time in question, the Court must consider whether Officer Hawk reasonably, albeit mistakenly, concluded that he had probable cause to make the traffic stop.  Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995).

Officer Hawk asserts that he conducted the traffic stop after "he observed Gene Benckini operating a 1988 International Trailer Pa. license #XK-78495 with a malfunctioning turn signal / tail light in the right rear."  Hawk Affidavit ¶ 18.  "The vehicle Gene Benkcini was operating at the time was a commercial vehicle."  Id. ¶ 19.  Further, at the time of the stop, Officer Hawk was Motor Carrier Enforcement certified, and, accordingly, he "was authorized as a matter of state law to stop any commercial vehicle for an inspection" with or without cause beyond the driver's operation of a commercial vehicle.  Id.  ¶¶ 20-21.  See 75 Pa. C.S. § 4704.  Accordingly, Officer Hawk based his traffic stop on first-hand observations, his experience as a police officer, and the specialized certification that entitled him to inspect any commercial vehicle.  Mr. Benckini asserts that Officer Hark acted, at least in part, in order to harass Mr. Benckini, but, as reiterated above, the officer's subjective intent is irrelevant.  Showers, 182 F.2d at 171.

This is unavailing to Mr. Benckini however.  Although Mr. Benckini believes that Officer Hawk was not entitled to stop him on June 25, 2006, Officer Hawk has provided an affidavit expressing his belief that he had probable cause to conduct the traffic stop because of a malfunctioning light, or, in the alternative, to conduct a stop of a commercial vehicle for a safety inspection.  See Hawk Affidavit ¶¶ 18-23.  Officer Hawk's affidavit supports a finding that, if placed in his position, a reasonable official could have believed his conduct was lawful.  The Court finds that Officer Hawk is protected by the doctrine of qualified immunity with respect to

20

Mr. Benckini's Fourth Amendment claim and may not be held personally liable for the presumed constitutional violation.


**III.     Conclusion**

For the foregoing reasons, the Court will grant Defendants' Motion for Summary Judgment and deny Mr. Benckini's Motion.  An appropriate Order consistent with this Memorandum follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E. K. PRATTER
UNITED STATES DISTRICT JUDGE